**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **JAMES BERMAN, Chapter 7 Trustee for the Substantively Consolidated Estate of Michael S. Goldberg, LLC and Michael S. Goldberg,** | **Case No. 19-cv-1533 (VLB)** |
| **Plaintiff,** | |
| **v.** | |
| **SCOTT A. LABONTE *et al*.,** | **November 15, 2019** |
| **Defendants.** | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY DISCOVERY**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................. 1

BACKGROUND FACTS ........................................................................ 3

LEGAL STANDARD ............................................................................. 5

GOOD CAUSE EXISTS FOR A STAY OF DISCOVERY ........................................ 7

I.    The Defendants Have Meritorious Grounds For Dismissal of The
      Complaint ............................................................................... 7

      A.    The Trustee's Lost Debt Claim is Unripe or Barred by the Statute
            of Limitations .................................................................... 8

      B.    The Trustee's Claim for Collection Expenses Is Largely Barred by
            the Applicable Statute of Limitations ....................................... 13

      C.    The Trustee Has Failed to State a Cognizable RICO Claim ................... 14

            1.    The Trustee Has Failed to Allege Any Predicate Acts of
                  Racketeering ............................................................. 15

                  (a)    The Asset Transfers Do Not Constitute Bankruptcy
                         Fraud .............................................................. 16

                  (b)    The Asset Transfers Do Not Constitute Obstruction of
                         Justice ............................................................ 18

                  (c)    The Asset Transfers Do Not Constitute Wire Fraud ............ 20

                  (d)    The Asset Transfers Do Not Constitute Money
                         Laundering ........................................................ 21

            2.    The Trustee Has Failed to Allege an Enterprise Distinct from
                  the Alleged Acts of Racketeering ...................................... 23

            3.    The Alleged Conduct Does Not Amount to or Pose a Threat
                  of Continuing Criminal Activity ....................................... 25

                  (a)    The Alleged Predicate Acts Do Not Demonstrate Open-
                         Ended Continuity ................................................. 25

                  (b)    The Alleged Predicate Acts Do Not Demonstrate
                         Closed-Ended Continuity ......................................... 27

i

**II.     The Scope and Burden of Discovery Warrant a Stay** ...................................... **29**

**III.    The Trustee Will Not Be Prejudiced By A Stay of Discovery** .......................... **31**

**CONCLUSION** ............................................................................................... **33**

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.,*
    483 U.S. 143 (1987)...................................................................... 10

*Apollon Waterproofing & Restoration, Inc. v. Bergassi,*
    No. 01-cv-8388, 2003 WL 1397394 (S.D.N.Y. 2003) ............................ 15

*Bankers Trust Co. v. Rhoades,*
    859 F.2d 1096 (2d Cir. 1988) ............................................................ 9, 13

*Burke v. Dowling,*
    944 F. Supp. 1036 (E.D.N.Y. 1995)..................................................... 17

*Cuartero v. United States,*
    No. 3:05CV1161 , 2006 WL 3190521 (D. Conn. Nov. 1, 2006).......... 1, 7, 29, 30, 32

*D'Addario v. D'Addario,*
    901 F.3d 80 (2d Cir. 2018) ............................................................ 8, 9, 13

*DeFalco v. Bernas,*
    244 F.3d 286 (2d Cir. 2001) .............................................................. 15

*Democratic Nat'l Comm. v. Russian Federation,*
    392 F. Supp.3d 410 (S.D.N.Y. 2019) ............................................... 15, 25

*FD Prop. Holding, Inc. v. U.S. Traffic Corp.,*
    206 F. Supp.2d 362 (E.D.N.Y. 2002) ................................................. 27

*First Cap. Asset Mgmt., Inc. v. Brickellbush, Inc.,*
    219 F. Supp.2d 576 (S.D.N.Y. 2002) .............................................. 17, 29

*First Capital Asset Management, Inc. v. Satinwood, Inc.,*
    385 F.3d 159 (2d Cir. 2004) ....................................... 24, 25, 26, 27, 28

*First Nationwide Bank v. Gelt Funding Corp.,*
    27 F.3d 763 (2d Cir. 1994) ............................................................. 8, 9

*Gandler v. Nazarov,*
    No. 94 Civ. 2272, 1994 WL 702004 (S.D.N.Y. Dec. 14, 1994) ............... 30

*GICC Cap. Corp. v. Tech. Fin. Grp., Inc.,*
    67 F.3d 463 (2d Cir. 1995) ....................................................... 25, 26, 27

iii

*Goldfine v. Sichenzia*,
118 F. Supp. 2d 392 (S.D.N.Y. 2000) ...................................................................... 7

*Grimes v. Fremont Gen. Corp.*,
785 F.Supp.2d 269 (S.D.N.Y. 2011) ...................................................................... 7

*H.J. Inc. v. Nw. Bell. Tel. Co.*,
492 U.S. 229 (1989)............................................................................................ 29

*Hemi Grp., LLC v. City of New York, N.Y.*,
559 U.S. 1 (2010)................................................................................................ 14

*In re First Constitution Shareholders Litig.*,
145 F.R.D. ..................................................................................................... 30, 32

*In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*,
731 F.2d 1032 (2d Cir. 1984) .............................................................................. 19

*In re Merrill Lynch Ltd. P'Ships. Litig.*,
154 F.3d 56 (2d Cir. 1998) ............................................................................ 11, 13

*Integrated Sys. and Power, Inc. v. Honeywell Int'l Inc.*,
No. 09-cv-5874, 2009 WL 2777076 (S.D.N.Y. Sept. 1, 2009) ................................ 6

*ITT Corp. v. Travelers Cas. and Sur. Co.*,
No. 3:12CV38, 2012 WL 2944357 (D. Conn. July 18, 2012) ....................... 6, 7, 29

*Katzman v. Victoria's Secret Catalogue*,
167 F.R.D. 649 (S.D.N.Y. 1996) ....................................................................... 2, 6

*Major, Lindsey & Africa, LLC v. Mahn*,
No. 10-cv-4239, 2010 WL 3959609 (S.D.N.Y. Sept. 7, 2010) ........................... 2, 7

*McNally v. United States*,
483 U.S. 350 (1987)............................................................................................ 20

*Miranda v. Ponce Fed. Bank*,
948 F.2d 41 (1st Cir. 1991) ................................................................................... 7

*Motorola Credit Corp. v. Uzan*,
322 F.3d 130 (2d Cir. 2003) ............................................................................ 9, 10

*Niv v. Hilton Hotels Corp.*,
No. 06-cv-7839, 2007 WL 510113 (S.D.N.Y. Feb. 15, 2007).................................. 8

*Picard v. Fairfield Greenwich Ltd.*,
762 F.3d 199 (2d Cir. 2014) ................................................................................ 16

iv

*Ritter v. Klisivitch*,
   No. 06-CV-5511, 2008 WL 2967627 (E.D.N.Y. July 30, 2008) ......................... 25, 26

*Rivera v. Heyman*,
   No. 96-cv-4489, 1997 WL 86394 (S.D.N.Y. Feb. 27, 1997) ............................ 6, 8, 30

*Rotella v. Wood*,
   528 U.S. 549 (2000) ................................................................................. 12

*Shamis v. Ambassador Factors Corp.*,
   No. 95-cv-9818, 1997 WL 473577 (S.D.N.Y. Aug. 18, 1997) .................................. 28

*Skilling v. United States*,
   561 U.S. 358 (2010) ................................................................................. 18

*Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*,
   206 F.R.D. 367 (S.D.N.Y. 2002) ................................................................. 30

*Stein v. N.Y. Stair Cushion Co., Inc.*,
   04-cv-4741, 2006 WL 319300 (E.D.N.Y. Feb. 10, 2006) ................................... 15, 24

*Stochastic Decisions, Inc. v. DiDomenico*,
   995 F.2d 1158 (2d Cir. 1993) ..................................................................... 9

*Targum v. Citrin Cooperman & Co., LLP*,
   No. 12 Civ. 6909, 2013 WL 6087400 (S.D.N.Y. Nov. 19, 2013) ............................. 20

*Thai Airways Int'l Ltd. v. United Aviation Leasing B.V.*,
   842 F. Supp. 1567 (S.D.N.Y. 1994) ............................................................. 26

*United States v. Brennan*,
   395 F.3d 59 (2d Cir. 2005) ......................................................................... 20

*United States v. Hale*,
   762 F.3d 1214 (10th Cir. 2014) ................................................................... 16

*United States v. Henry*,
   29 F.3d 112 (3d Cir. 1994) ......................................................................... 20

*United States v. Howard*,
   569 F.2d 1331 (5th Cir. 1978) ................................................................. 19, 20

*United States v. Knight*,
   800 F.3d 491 (8th Cir. 2015) ....................................................................... 17

*United States v. Peters*,
   732 F.3d 93 (2d Cir. 2013) ......................................................................... 22

*United States v. Sabbeth*,
    262 F.3d 207 (2d Cir. 2001) ............................................................ 17

*United States v. Savage*,
    67 F.3d 1435 (9th Cir. 2011) .......................................................... 22

*United States v. Turkette*,
    452 U.S. 576 (1981)......................................................................... 23

*Weizmann Institute of Science v. Neschis*,
    229 F. Supp.2d 234 (S.D.N.Y. 2002) ............................................. 27

**Statutes**

**11 U.S.C. § 541** ......................................................................................... 16

**18 U.S.C. § 152(1)** ............................................................................... 16, 17

**18 U.S.C. § 152(7)** .......................................................................... 16, 17, 18

**18 U.S.C. § 1503** ....................................................................................... 19

**18 U.S.C. § 1512(c)(2)** ............................................................................. 18

**18 U.S.C. § 1956** .................................................................................. 21, 22

**18 U.S.C. § 1957** ....................................................................................... 21

**18 U.S.C. § 1962(c)** .................................................................................... 3

**18 U.S.C. § 1962(d)** .................................................................................... 3

**Rules**

**FED. R. CIV P. 26(c)**.................................................................................. 5, 6

Defendants Scott LaBonte, Sally LaBonte, Marilyn LaBonte, Roland LaBonte, Joseph W. Sparveri, Jr., Lawrence J. Marks, Esq., Juliano & Marks, LLC, Paul Bourdeau, Esq., and Robert A. Landino (collectively, the "Defendants") respectfully submit this memorandum of law in support of their Motion to Stay Discovery pending the adjudication of their forthcoming motions to dismiss.

## PRELIMINARY STATEMENT

This action is a baseless attempt by the Trustee to contrive a RICO case out of a patchwork of alleged fraudulent conveyances that are governed by state law civil remedies and do not constitute criminal predicate acts for the purposes of the RICO statute.  In fact, the Trustee has been pursuing four separate fraudulent conveyance actions for the past five years, and he now seeks to backburner those actions in an effort to threaten treble damages under RICO— against not only the previously-named defendants but also new defendants, including attorneys, whom he perceives as convenient deep pockets.  The Trustee's RICO claims are deficient on their face and subject to dismissal as a matter of law under well-established precedent in the Second Circuit.  This is precisely the type of situation in which good cause exists for a stay of discovery until the Court can rule on the legal sufficiency of the Trustee's claims.  *See Cuartero v. United States*, No. 3:05CV1161 (RNC), 2006 WL 3190521, at *2 (D. Conn. Nov. 1, 2006) (granting stay of discovery where "the defendant's memorandum of law does appear to raise substantial issues based on statutes, caselaw and the facts of this case").

As discussed below, the Defendants have multiple independent and meritorious arguments to dismiss the Trustee's Complaint ("Compl.") in its

entirety, including on the grounds of subject matter jurisdiction and the Complaint's failure to satisfy RICO pleading requirements.  The Complaint is deficient because (i) the alleged acts do not constitute the commission of criminal predicate acts of racketeering as defined by the RICO statute, (ii) the Complaint fails to allege the existence of an "enterprise," and (iii) the alleged conduct—fraudulent conveyances to avoid a creditor—does not amount to or pose a threat of continuing criminal activity.  In addition, the breadth and burden of discovery would be substantial, as the Complaint addresses transactions that date back as far as 2010 and involve numerous parties.  Finally, the Trustee will not be prejudiced by a short stay, as the Trustee has been aware of the transactions at issue for years and has already obtained voluminous discovery in the four fraudulent conveyances actions that he previously brought and are still pending.

A stay of discovery is particularly appropriate here because the Trustee asserts only claims under the RICO statute, and courts in the Second Circuit have repeatedly cautioned that civil RICO claims are subject to strict scrutiny and should be "flush[ed] out" at early stages of the litigation because of the "stigmatizing effect on those named as defendants."  *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996).[1]

Accordingly, the Defendants respectfully request that the Court grant a stay of discovery until 30 days after the Court decides the Defendants'

---

[1] Indeed, at least one court in the Southern District of New York stays discovery in *all* RICO actions as a matter of course "until the 'thermonuclear' allegations of racketeering are addressed as a pleading matter."  *Major, Lindsey & Africa, LLC v. Mahn*, No. 10-cv-4239, 2010 WL 3959609, at *2 (S.D.N.Y. Sept. 7, 2010).

forthcoming motions to dismiss, which are currently scheduled to be filed on December 2, 2019.

<u>BACKGROUND FACTS</u>

The Trustee commenced this action on September 27, 2019 seeking treble damages under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO") for Defendants' alleged participation in, or conspiracy with, an association-in-fact enterprise whose alleged purpose was to prevent the Trustee from collecting a judgment he obtained against Scott LaBonte in 2017 (the "SAL Judgment"). The Trustee asserts (i) civil RICO claims, pursuant to 18 U.S.C. § 1962(c), against Defendants Scott LaBonte, Sally LaBonte, Roland LaBonte, and Joseph W. Sparveri, Jr., and (ii) RICO conspiracy claims, pursuant to 18 U.S.C. § 1962(d), against Defendants Bourdeau, Landino, and Marks.

The Trustee's complaint alleges, at bottom, that the Defendants were involved, in varying roles and to varying degrees, in one or more of the following transactions: (1) In August and September 2010, shortly after learning that the Trustee had filed a fraudulent conveyance action against his cousin Ed Malley seeking to recover the proceeds of a Ponzi scheme, but before the Trustee had threatened or filed suit against him, Scott LaBonte transferred substantially all of his assets, which were largely in the form of ownership interests in a number of limited liability companies holding commercial real estate, to the Scott A. LaBonte Dynasty Trust (the "SALDT"), Compl. ¶¶ 71-81; (2) in exchange, the SALDT issued a note to Scott LaBonte that allegedly undervalued the transferred assets, and restated a prior note issued to Scott LaBonte for previously

3

transferred assets to extend its duration, *id.* at ¶¶ 82-100; (3) over the course of subsequent years, Scott LaBonte allegedly retained the benefit of the transferred interests, in the form of direct payments and payments on his behalf by the SALDT, *id.* at ¶¶ 101-134; (4) Scott LaBonte, as manager of the LLCs transferred to the SALDT, caused the SALDT to sell certain of the LLC interests to Landino in 2012 and 2013 in exchange for cash paid to the SALDT, *id.* at ¶¶ 135-194; (5) in 2015, Scott and Roland LaBontes' real estate development company, Devcon Enterprises, Inc. ("Devcon"), transferred its assets to a new entity, DEI Property Management, LLC ("DEIPM"), allegedly to avoid attachment of Devcon's assets in a pending fraudulent transfer action filed by the Trustee, *id.* at ¶¶ 214-249; and (6) DEIPM took over certain real estate management contracts to which Devcon was previously party and, pursuant to the amended contracts, received certain refinancing fees in 2015 and 2016 from LLC interests held by the SALDT, *id.* at ¶¶ 268-82.

There are at least four pending fraudulent conveyance actions filed by the Trustee that seek to recover assets in satisfaction of the SAL Judgment, three of which are premised on the transactions that are the subject of this case:  (1) the "SALDT Action," wherein the Trustee sued the trustees of the SALDT—Sally LaBonte (Scott LaBonte's wife) and Roland LaBonte (Scott LaBonte's father)— and individuals and entities that allegedly received voidable transfers from the SALDT, including Scott LaBonte, Sally LaBonte, Devcon, and three other

entities;[2] (2) the "Landino Action," in which the Trustee sued Robert Landino, Scott LaBonte, and the LLCs sold by the SALDT to Landino in 2012 and 2013;[3] (3) the "DEIPM Action," in which the Trustee sued DEIPM, Roland LaBonte, and Marilyn LaBonte (Scott LaBonte's mother), in their individual capacities and as trustees of trusts that own DEIPM;[4] and (4) the "Pavano Action," in which the Trustee sued various individuals to whom Scott LaBonte allegedly transferred assets prior to the transactions at issue in this case.[5]

In an effort to treble his potential recovery and avoid the need to prosecute the pending fraudulent conveyance actions, the Trustee has now filed a spurious civil RICO claim based on the same facts that form the basis for the SALDT, Landino, and DEIPM Actions.  This attempt to contrive a racketeering conspiracy fails, and the Defendants should not be subjected to costly, burdensome, and possibly unnecessary discovery while their meritorious challenges to the claims are adjudicated.  Accordingly, the Defendants move for a stay of discovery until 30 days after the Court decides the Defendants' forthcoming motions to dismiss.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(c) empowers the Court to stay discovery "for good cause[] . . . to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  FED. R. CIV. P. 26(c)(1)(A).  Under Rule 26(c), the Court has "considerable discretion" to impose

---

[2] Complaint, *Berman v. Sally A. LaBonte et al.*, No. 14-cv-2026 (Bankr. D. Conn. May 31, 2014).

[3] Complaint, *Berman v. Landino et al.*, 16-cv-2042 (Bankr. D. Conn. May 16, 2016).

[4] Complaint, *Berman v. DEI Property Management, LLC et al.*, 17-cv-2029 (Bankr. D. Conn. June 2, 2017).

[5] Complaint, *Berman v. Pavano et al.*, No. 11-2071 (Bankr. D. Conn. Aug. 29, 2011).

a stay of discovery until after the determination of a potentially dispositive motion. *Integrated Sys. and Power, Inc. v. Honeywell Int'l Inc.*, No. 09-cv-5874, 2009 WL 2777076, at *1 (S.D.N.Y. Sept. 1, 2009); *see also ITT Corp. v. Travelers Cas. and Sur. Co.*, No. 3:12CV38 (RNC), 2012 WL 2944357, at *2 (D. Conn. July 18, 2012) (Rule 26(c) "is often invoked to avoid potentially expensive and wasteful discovery during the pendency of a determination which could potentially reshape pending claims"). The Court need not wait until the defendant has filed a dispositive motion to grant a stay of discovery, so long as the moving party informs the court of the substantive basis for the motion and the motion is filed in due course. *See, e.g.*, *Rivera v. Heyman*, No. 96-cv-4489, 1997 WL 86394, at *1 (S.D.N.Y. Feb. 27, 1997) (granting motion to stay discovery prior to defendants' filing of a motion to dismiss where "defendants appear at this stage to have a substantial argument for dismissal").

Courts consider three factors in determining whether good cause exists to grant a stay of discovery in light of a dispositive motion: (1) the strength of the dispositive motion; (2) the breadth of discovery and the burden of responding to it; and (3) the prejudice that would be suffered by the party opposing the stay. *ITT Corp.*, 2012 WL 2944357, at *2 (*citing Johnson v. New York Univ. School of Educ.*, 205 F.R.D. 433, 434 (S.D.N.Y. 2002)).

A stay of discovery is particularly appropriate given that the Trustee's only claims are for violations of the RICO statute. Civil RICO claims are subject to strict scrutiny and should be "flush[ed] out" at early stages of the litigation because of the "stigmatizing effect on those named as defendants." *Katzman*,

6

167 F.R.D. at 655; *see also Grimes v. Fremont Gen. Corp.*, 785 F.Supp.2d 269, 299 (S.D.N.Y. 2011) (in "civil RICO claims, a court must be mindful of the devastating effect such claims may have on defendants," and "should look with particular scrutiny at [these] claims to ensure that the RICO statute is used for the purposes intended by Congress") (internal quotation marks omitted); *Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 394-95 (S.D.N.Y. 2000) ("This Court looks with particular scrutiny at Civil RICO claims to ensure that the Statute is used for the purposes intended by Congress."); *Major, Lindsey & Africa*, 2010 WL 3959609, at *2 ("[I]t is the practice of this Court to stay all discovery of any sort in any case involving allegations of RICO violations . . . . This Court believes that until the 'thermonuclear' allegations of racketeering are addressed as a pleading matter . . . no other claims should proceed."); *see also, e.g.*, *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991) ("Civil RICO is an unusually potent weapon—the litigation equivalent to a thermonuclear device.").

## <u>GOOD CAUSE EXISTS FOR A STAY OF DISCOVERY</u>

### I.   THE DEFENDANTS HAVE MERITORIOUS GROUNDS FOR DISMISSAL OF THE COMPLAINT

The strength of the Defendants' motions to dismiss supports granting a stay of discovery in this case.  To warrant the grant of a stay of discovery, the dispositive motion must merely raise substantial issues with the Trustee's case based on applicable law.  *See, e.g.*, *ITT Corp.*, 2012 WL 2944357, at *2 (granting motion to stay where, among other things, defendant's arguments were "substantial and not unfounded in the law"); *Cuartero*, 2006 WL 3190521, at *2 (granting stay of discovery where "the defendant's memorandum of law does

7

appear to raise substantial issues based on statutes, caselaw and the facts of this case"); *Niv v. Hilton Hotels Corp.*, No. 06-cv-7839, 2007 WL 510113, at *1 (S.D.N.Y. Feb. 15, 2007) (granting stay where "the defendants' motion appears not to be unfounded in the law"); *Rivera*, 1997 WL 86394, at *2.

There are a number of meritorious grounds for dismissing the Trustee's claims, including that: (i) the Trustee's "lost debt" claim based on his alleged inability to collect the SAL Judgment is either not ripe or barred by the statute of limitations; (ii) the Trustee's collection cost claims are largely barred by the statute of limitations; and (iii) the Trustee has not made out a prima facie case for a civil RICO claim.

A.     THE TRUSTEE'S LOST DEBT CLAIM IS UNRIPE OR BARRED BY THE STATUTE OF LIMITATIONS

Under well-established Second Circuit law, the Trustee's lost debt claim, premised on his alleged inability to collect the SAL Judgment, is unripe because there are at least four ongoing fraudulent conveyance actions through which the Trustee may recover assets in satisfaction of the SAL Judgment, and any such recovery would reduce the Trustee's claim in this case *pro tanto*. In the Second Circuit "a cause of action does not accrue under RICO until the amount of damages becomes *clear and definite*." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768 (2d Cir. 1994) (emphasis added). Accordingly, the Second Circuit "has consistently ruled in the RICO context that claims for 'lost debt' injuries—that is, for damages in the form of an owed, but as-yet-uncollected, amount—are unripe when parallel proceedings to collect the amount owed are ongoing in another forum." *D'Addario v. D'Addario*, 901 F.3d 80, 93 (2d Cir. 2018).

8

*See, e.g., Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1165-66 (2d Cir. 1993) (dismissing as unripe RICO claim based on defendant's fraudulent transfer of assets to prevent the plaintiff from collecting on judgments because "the amount of its 'lost debt' cannot be determined at this time because of the ongoing efforts to collect those judgments," and "to the extent of a successful collection, the RICO claim is abated *pro tanto*, prior to any application of trebling"); *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1105-06 (2d Cir. 1988) (dismissing as unripe claim for lost debt based on defendants' fraudulent transfer of assets because "it is impossible to determine the amount of damages that would be necessary to make plaintiff whole, because it is not known whether some or all of the fraudulently transferred funds will be recovered").[6]

The practical necessity of this rule is clear:  because "'RICO [treble] damages are netted against recovery obtained from collateral and other sources,' the outcome of the parallel proceedings could significantly affect the total amount owed in the case at bar, and . . . this fundamental uncertainty renders the claim not ready for adjudication."  *D'Addario*, 901 F.3d at 93 (quoting *Motorola*, 322 F.3d at 135-36) (alteration in original).  This is precisely the situation

---

[6] *See also, e.g., D'Addario*, 901 F.3d at 93-94 (dismissing as unripe plaintiff's claim for share of estate because "[p]roceedings regarding the Estate are underway in Connecticut Probate Court" and "the amount of [the plaintiff's] ultimate distribution from the Estate [] and, thus, the amount of her damages . . . is remarkably uncertain"); *Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135-36 (2d Cir. 2003) (dismissing as unripe RICO claim for injury based on unpaid loans where the loans were not yet foreclosed and related arbitrations were pending); *First Nationwide Bank*, 27 F.3d at 767-69 (dismissing as unripe RICO claim for lost debt injury arising from fraudulently induced loans that were not yet foreclosed because "[o]nly when [the plaintiff's] actual loss becomes clear and definite will the claims be ripe for suit").

presented here, as the amount recoverable under the Trustee's lost debt claim cannot be determined until the pending fraudulent conveyance actions are adjudicated.

The Trustee has attempted to plead around this clear bar to his lost debt claim by asserting that his collection efforts have been "successfully frustrated." Compl. at 63.  But that assertion is belied by the Trustee's acknowledgment that the fraudulent conveyance actions are ongoing and that the defendants in those actions retain substantial assets.  Compl. ¶¶ 283-99.  The Trustee's speculation that his efforts to recover in these actions will be unfruitful does not render his RICO claim ripe.  Indeed, the Second Circuit has made clear that even when a legal remedy provides only a "forlorn hope" and has the potential to "yield little of value," the possibility of recovery through such an available legal remedy renders a RICO claim unripe.  *Motorola Credit*, 322 F.3d at 137 (holding that RICO claim was unripe where the district court stayed arbitration proceeding because arbitration did "not cease to be a possible influence . . . on the amount of loss").  Accordingly, the Defendants have a meritorious claim that the Trustee's lost debt claim, which accounts for the large majority of its claimed damages in this case, must be dismissed.

To the extent the Court determines that the Trustee's lost debt claim is ripe because his injury is sufficiently "definite," despite the ongoing fraudulent conveyance actions, the claim must be dismissed as untimely because the Trustee knew of the injury over eight years ago.  RICO claims are governed by a four-year statute of limitations.  *See Agency Holding Corp. v. Malley-Duff &*

*Assocs., Inc.*, 483 U.S. 143, 156 (1987).  A civil RICO claim accrues, and the statute of limitations begins to run, "when the plaintiff discovers or should have discovered the RICO injury," *i.e.*, when the plaintiff has "inquiry notice" of the "injur[y] in his business or property by reason of" the RICO violation.  *In re Merrill Lynch Ltd. P'Ships. Litig.*, 154 F.3d 56, 58 (2d Cir. 1998).

The Trustee alleges that in 2010 Scott LaBonte fraudulently transferred away all of his assets to the SALDT in order to render himself insolvent and avoid a potential claw-back action by the Trustee.  These transfers were allegedly completed by September 2010, and the Trustee learned of them shortly thereafter.[7]  By the time he learned of the alleged fraudulent transfers, the Trustee had also already calculated the exact amount that was recoverable from Scott LaBonte—$7.2 million.[8]  Therefore, by no later than 2011, the Trustee knew the exact amount he could recover, and knew that Scott LaBonte had executed a series of allegedly fraudulent transfers that rendered him insolvent and unable to satisfy any judgment, resulting in a "clear and definite" injury.[9]

---

[7] The transcript of the adversary proceeding against Scott LaBonte, tried in June 2011, demonstrates that the Trustee was aware by that time, *at the latest*, that Scott LaBonte had transferred away all of his assets.  *See* Hearing Transcript, *Berman v. Goldberg et al.*, Adv. Proc. No. 10-2082 (Bankr. D. Conn. June 22, 2011) ("2011 Hearing Tr."), at 23:15-22 ("Q.  On or about June 2nd, 2010,  you entered into a series of transactions where you transferred out of your name virtually every asset that was held in your name individually, correct?  A.  I transferred multiple LLC interests and the interest I owned in Devcon Enterprises out of my name, yes.  Q.  And in so doing, Mr. LaBonte, you transferred virtually every asset out of your name, didn't you?  A.  Yes.").

[8] *See, e.g.*, 2011 Hearing Tr. at 110:2-110:8.

[9] It is noteworthy that the Trustee was also aware by 2011 of the precise form of the allegedly fraudulent transfers, the parties and entities involved, and the

The Trustee may argue that his RICO claim did not accrue until he obtained a judgment against Scott LaBonte in 2017, as he characterizes his injury as having been "prevented . . . from collecting the judgment entered in his favor against [Scott LaBonte] . . . [on] September 27, 2017." (Compl. ¶ 5). But the amount of the judgment entered against Scott LaBonte—$7.2 million—is the exact same amount that the Trustee identified as recoverable from him *eight years earlier.* And the Trustee cannot be heard to argue that he only learned the SAL Judgment was uncollectible after it was entered; the Trustee knew at least as early as June 2011 that Scott LaBonte had transferred assets out of his name and rendered himself insolvent. The entry of the judgment in 2017 is thus irrelevant to the Trustee's knowledge of his injury, which is the only relevant inquiry when assessing the timeliness of his claim. The Trustee is effectively attempting to toll his claim for six years by simply describing his injury in reference to the judgment rather than the fraudulent transfers that rendered Scott LaBonte insolvent. Accepting this artifice would render the statute of limitations and the "injury discovery" rule entirely ineffective when applied to civil RICO claims involving allegations of fraudulent transfer and concealment of assets.

---

alleged conduct to allow Scott LaBonte to continue to benefit from the transferred assets. *See, e.g.*, 2011 Hearing Tr. at 170:21-171:8. Indeed, with the exception of refinancing fees received by DEIPM in 2016, *all* of the transactions alleged in the Complaint occurred prior to the commencement of the limitations period. Regardless, a plaintiff's knowledge of his injury, not the particulars of the alleged racketeering scheme, is the relevant inquiry in the statute of limitations analysis. *Rotella v. Wood*, 528 U.S. 549, 558 (2000) (adopting the "injury discovery" rule of accrual and rejecting the proposition that a plaintiff must know that the injury was caused by racketeering before the limitations period begins to run).

**B.    THE TRUSTEE'S CLAIM FOR COLLECTION EXPENSES IS LARGELY BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS**

The Trustee alleges that since November 2010 it has prosecuted four fraudulent conveyance actions which "resulted from the Defendants' racketeering activity":  the SALDT Action, the Landino Action, the DEIPM Action, and the original action filed against Scott LaBonte through which the Trustee obtained the SAL Judgment.  Compl. ¶¶ 285-87.  The Trustee's claim for any collection expenses incurred in connection with these actions prior to August 2015 is time-barred.[10]

As explained above, a civil RICO claim accrues when the plaintiff has "inquiry notice" of the "injur[y] in his business or property by reason of" the RICO violation.  *In re Merrill Lynch*, 154 F.3d at 58.  The Trustee, of course, discovered any collection expense injury as the expenses were incurred in connection with its efforts to recover the alleged fraudulent transfers, and therefore he has a timely claim only for those expenses incurred on or after August 2015.  *See D'Addario*, 901 F.3d at 96 (allowing the plaintiff's claim for collection expenses "that she allegedly incurred over the four years before she filed the Complaint (as allowed by the RICO statute of limitations)"); *Bankers Trust*, 859 F.2d at 1105 (holding that the plaintiff "may recover any of the[] [collection] expenses which it discovered or should have discovered on or after

---

[10] Although the Trustee's complaint was served on October 3, 2019, the parties agreed, in connection with their efforts to reach a settlement, to toll the statute of limitations for 67 days, from February 22, 2019 to April 30, 2019.

[the date four years prior to filing]," and that plaintiff "suffered injury as to each expense when it became obligated to pay that expense").

The vast majority of the Trustee's collection expenses were incurred prior to August 2015.  Although dismissal of the untimely claims alone may not dispose of this action in its entirety, it will substantially limit the relevant transactions and parties.  "[T]o state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense 'not only was a "but for" cause of his injury, but was the proximate cause as well.'"  *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010) (quoting *Holmes v. Sec. Inv. Protection Corp.*, 503 U.S. 258, 268 (1992)).  Therefore, the transactions relevant to any surviving claims will be limited to those that could have proximately caused the post-August 2015 collection expenses, a fraction of the transactions alleged in the Trustee's Complaint.[11]

C.   THE TRUSTEE HAS FAILED TO STATE A COGNIZABLE RICO CLAIM

Even if the Court determines that the Trustee's lost debt claim is ripe and not time-barred, or that the Trustee has incurred collection expenses within the four-year limitations period, the Complaint must be dismissed because it fails to allege a RICO violation.  To allege a RICO violation, the Trustee must show conduct (1) "of an enterprise" (2) "through a pattern" of (3) "racketeering

---

[11] Moreover, even if the Trustee has a timely claim for some fraction of his alleged collection expenses and the claim is not dismissed for failing to meet RICO pleading requirements, principles of judicial economy are not served by proceeding immediately to discovery.  The Trustee will incur further expenses as he prosecutes to completion the outstanding fraudulent conveyance actions, and adjudication of those actions in defendants' favor would collaterally estop any claim for recovery in this action.

14

activity." *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001).  To satisfy the latter

two elements, the Trustee "must plead at least two predicate acts [of

racketeering], show that the predicate acts are related, and that they amount to,

or pose a threat of, continuing criminal activity."  *Democratic Nat'l Comm. v.*

*Russian Federation*, 392 F. Supp.3d 410, 442 (S.D.N.Y. 2019) (citing *H.J. Inc. v. Nw.*

*Bell. Tel. Co.*, 492 U.S. 229, 239 (1989)).  The Complaint utterly fails to satisfy each

of the foregoing pleading requirements.

### 1.    The Trustee Has Failed to Allege Any Predicate Acts of Racketeering

The Trustee has alleged, at most, a series of voidable fraudulent

conveyances.  But a "fraudulent conveyance cannot be a basis for a RICO claim"

because "[u]nenumerated acts . . . such as a fraudulent conveyance . . . are not

'racketeering activities'" under the RICO statute.  *Apollon Waterproofing &*

*Restoration, Inc. v. Bergassi*, No. 01-cv-8388, 2003 WL 1397394, at *4 (S.D.N.Y.

2003); *see also Stein v. N.Y. Stair Cushion Co., Inc.*, No. 04-CV-4741, 2006 WL

319300, at *5 n.1 (E.D.N.Y. Feb. 10, 2006) ("[A] fraudulent conveyance does not

constitute an act of racketeering.").  The Trustee's attempt to characterize the

alleged fraudulent conveyances as bankruptcy fraud, obstruction of justice,

money laundering, and wire fraud is unavailing, as each of these claims rests on

an erroneous and unsupported interpretation of the relevant criminal statute.  A

brief summary of the deficiencies in the Trustee's position is set forth below.

> **(a)   The Asset Transfers Do Not Constitute Bankruptcy Fraud**

Section 152(1) criminalizes the knowing and fraudulent concealment of "*property belonging to the estate of a debtor*."  18 U.S.C. § 152(1) (emphasis added).  To determine whether property falls within the scope of Section 152(1), courts look to 11 U.S.C. § 541, the provision of the Bankruptcy Code defining "property of the debtor's estate."  *See, e.g.*, *United States v. Hale*, 762 F.3d 1214, 1223 (10th Cir. 2014) ("[T]he dispositive question with respect to [Section 152(1)] is whether the [property at issue] falls within the definitions of property contained in 11 U.S.C. § 541(a)(6) or (7).").  It is well-established in this Circuit that property which is the subject of a fraudulent transfer action is *not* part of the debtor's estate until the trustee obtains a judgment.  *Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199, 212 (2d Cir. 2014) ("Our case law is clear that assets targeted by a fraudulent conveyance action do not become property of the debtor's estate under the Bankruptcy Code *until the Trustee obtains a favorable judgment*.") (emphasis added).  The Trustee did not obtain a judgment in its fraudulent conveyance action against Scott LaBonte until September 2017, and therefore the transactions alleged in the complaint, all of which preceded that judgment, cannot constitute violations of Section 152(1).

Section 152(7) criminalizes the knowing and fraudulent concealment or transfer of property "in contemplation of a case under title 11 by or against the person or any other person or corporation, or with intent to defeat the provisions

16

of title 11." 18 U.S.C. § 152(7).[12] "In order to make out a violation of [Section] 152(7) . . . plaintiffs must allege specific facts demonstrating that [the defendant] made the transfer *in contemplation of bankruptcy or otherwise with an intent to defraud a United States bankruptcy court or defeat the bankruptcy laws.*"  *First Cap. Asset Mgmt., Inc. v. Brickellbush, Inc.*, 219 F. Supp.2d 576, 582 (S.D.N.Y. 2002) (emphasis in original).

Even if the various transfers alleged were made with the purpose of evading the Trustee, "[a]n intention to engage in a transfer for the purpose of hindering potential creditors does not alone rise to the level of bankruptcy fraud." *Id.* (holding that plaintiff failed to allege predicate act under Section 152(7) where pre-petition transfer by debtor was not made "in contemplation of bankruptcy"); *see also United States v. Knight*, 800 F.3d 491, 505 (8th Cir. 2015) (holding that debtor's pre-petition transfers "to impede creditors from learning about and pursuing these funds" were not "*fraudulent* as to [the debtor's] creditors," noting that "[t]he government certainly does not claim that debtors generally must keep creditors apprised of where their assets are located, particularly before the creditor has obtained a judgment against the debtor or utilized lawful means to locate and execute upon the debtor's assets"); *Burke v. Dowling*, 944 F. Supp. 1036, 1066 (E.D.N.Y. 1995) (holding that plaintiff failed to allege predicate act under Section 152(7) where defendants transferred assets "with the ultimate intent to escape their creditors through bankruptcy proceedings," but no

---

[12] Unlike Section 152(1), Section 152(7) has been interpreted not to require that the property in question belong to the estate of a debtor at the time of the transfer.  *See United States v. Sabbeth*, 262 F.3d 207, 215 (2d Cir. 2001).

"defendant ever gave any thought to the prospect of filing for bankruptcy in a U.S. court").  Applying Section 152(7) to the transfer of assets by a transferor who is not a debtor, an insider or agent of a debtor, or even contemplating bankruptcy, merely because the creditor happens to be a trustee in bankruptcy, would constitute an unprecedented expansion of the scope of the criminal statute, contravening the rule of lenity and fair notice.  Such an unprecedented interpretation of a criminal statute cannot form the basis of a predicate act under RICO.  *Skilling v. United States*, 561 U.S. 358, 411 (2010) (the rule of lenity "is *especially appropriate* in construing . . . predicate offenses under the Racketeer Influenced and Corrupt Organizations Act.") (internal quotation marks and alterations omitted, emphasis added).

> **(b)      The Asset Transfers Do Not Constitute Obstruction of Justice**

The obstruction statutes relied upon by the Trustee, in relevant part, impose criminal penalty on one who "corruptly" influences, obstructs, or impedes:  (i) "any official proceeding," 18 U.S.C. § 1512(c)(2); (ii) "the due administration of justice," 18 U.S.C. § 1503; or (iii) "any . . . officer in or of any court of the United States . . . in the discharge of his duty," *id.*[13]  But the Trustee has not alleged that the various asset transfers obstructed or impeded the bankruptcy *proceedings* in which the Trustee was appointed; there was no alleged misrepresentation to the court, falsification of evidence, influence of

---

[13] Although 18 U.S.C. § 1512 and § 1503 differ in language and purpose, the Trustee relies on the "omnibus" obstruction provision of each statute, and the relevant analysis here is materially the same under both statutes.

witnesses, or threats or intimidation of the Trustee.  *See United States v. Howard*, 569 F.2d 1331, 1337 (5th Cir. 1978) ("Section 1503 does not forbid interferences with doing 'justice,' in the sense of 'fairness' and 'rightness[]' . . . . Instead, it forbids interference with the 'administration of justice,' which means *judicial procedure*.") (citations omitted) (emphasis in original).

Instead, the Trustee alleges only that the various asset transfers constituted obstruction of justice because they placed Scott LaBonte's "assets, and the assets of entities that he controlled, beyond the reach of the Goldberg Trustee and rendered Scott LaBonte judgment proof."  Compl. ¶ 320.  There is no authority for the proposition that simply placing assets beyond the reach of a creditor constitutes criminal obstruction of justice.  Indeed, the Second Circuit has recognized that the mere fraudulent transfer of assets, even when intended to avoid an existing court order or judgment, does not constitute obstruction of justice.  *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1040 (2d Cir. 1984) (noting that the obstruction statute is "directed toward attempts to deflect jurors, witnesses, or judicial officials from the proper performance of their duties, rather than generally to reach efforts to frustrate the intended effect of an already rendered judgment," and that the court's "research . . . disclosed no case upholding a conviction for violation of § 1503 based on conduct intended to remove an unattached asset from the jurisdiction of the

19

court but not to sway a judicial officer, juror, or witness by threat, promise, or deception.").[14]

        (c)     **The Asset Transfers Do Not Constitute Wire Fraud**

The essential elements of mail or wire fraud are "(i) a scheme to defraud, (ii) to get money or property, (iii) furthered by the use of interstate mail or wires." *Targum v. Citrin Cooperman & Co., LLP*, No. 12 Civ. 6909, 2013 WL 6087400, at *6 (S.D.N.Y. Nov. 19, 2013) (quoting *United States v. Autuori*, 212 F.3d 105, 115 (2d Cir. 2000)).  The asset transfers described in the Complaint, as well as communications incidental to those transactions, cannot constitute wire fraud because the Trustee has not alleged that the transfers and communications furthered a "scheme to defraud" to "get money or property."

The Supreme Court has explained that a scheme to defraud contemplates "wronging one *in his property rights* by dishonest methods or schemes, and usually signif[ies] the deprivation of something of value by trick, deceit, chicane or overreaching."  *McNally v. United States*, 483 U.S. 350, 358 (1987) (emphasis added).  Therefore, to determine whether conduct is encompassed by the wire and mail fraud statutes, courts look to whether the particular interest that is the object of the alleged scheme is "traditionally . . . recognized and enforced . . . as a property right."  *United States v. Henry*, 29 F.3d 112, 115 (3d Cir. 1994).

---

[14] *See also, e.g.*, *United States v. Brennan*, 395 F.3d 59, 74 (2d Cir. 2005) (holding, in addressing obstruction of justice sentencing enhancement, that transferring money frozen by a court order for the benefit of a party to litigation "was more akin to stealing from creditors than hindering or corrupting the proceeding"); *Howard*, 569 F.2d at 1337 ("[I]t is wholly irrelevant [to the obstruction of justice analysis] whether defendants' actions had any ultimate effect on the *outcome* of the [judicial procedure]:  the question is whether they disturbed the procedure . . . .") (emphasis added).

Here, the Trustee had no property interest that was injured by the alleged asset transfers, as they all occurred well before the Trustee obtained the SAL Judgment in 2017.  The complaint does not even attempt to allege that the Trustee possessed a relevant property interest prior to 2017.[15]  Instead, the Trustee alleges only that the asset transfers deprived him of an opportunity to utilize the transferred assets to satisfy its judgment against Scott LaBonte—obtained years later—and thus "impede[d]" the Trustee.  Compl. ¶ 283.  The Trustee's opportunity to utilize assets to satisfy a right to payment he did not yet have is not a recognized and enforced property right, and therefore this "injury" cannot give rise to wire fraud liability.

(d)   The Asset Transfers Do Not Constitute Money Laundering

To establish a violation of 18 U.S.C. § 1956,[16] the Trustee must show, *inter alia*, that the participants in the alleged financial transaction knew that the property involved in the transaction "represent[ed] the proceeds of some form of

---

[15] It should be noted that if the Trustee did have a property interest that was injured at the time of the asset transfers, its RICO claims premised on the transfers would be plainly barred by the applicable four-year statute of limitations because the Trustee learned of any injury shortly after the transfers were completed, prior to the beginning of the limitations period.

[16] The Trustee also alleges that Sally LaBonte, but not the other defendants, violated 18 U.S.C. § 1957, which prohibits the knowing engagement in a monetary transaction "in criminally derived property [that is] of a value greater than $10,000 and is derived from specified unlawful activity."  Both statutes require that the transaction be known to involve, and actually involve, property derived from unlawful activity, and therefore the allegations of Sally LaBonte's violation of Section 1957 fail for the same reasons that the other allegations of money laundering fail.

21

unlawful activity," and that the transaction did, in fact, "involve[] the proceeds of specified unlawful activity."  18 U.S.C. § 1956.

The assets transferred by Scott LaBonte to the SALDT in 2010 allegedly consisted of his partial ownership interests in a number of commercial real estate assets.  Compl. ¶¶ 73, 101, 318(a)-(r).  The Trustee's allegations fail to support a conclusion that Scott LaBonte's interests in these commercial real estate properties represented the proceeds of unlawful activity.  The Trustee alleges, in conclusory fashion, only that the property transferred by Scott LaBonte in 2010 "involved the proceeds of unlawful activity, namely the violations of 18 USC §§ 152, 1341, 1343, 1503, and/or 1512 [*i.e.*, bankruptcy fraud, wire and mail fraud, and obstruction of justice] *as alleged elsewhere in this Complaint*."  Compl. ¶ 326(a)(i) (emphasis added).  But it is well-established that the unlawful activity must *precede* the alleged laundering transactions.  Therefore, the 2010 transfers cannot be both the underlying crime as well as the laundering of the "proceeds" of that crime.  *See, e.g., United States v. Peters*, 732 F.3d 93, 100 (2d Cir. 2013) ("Congress could not have intended violations of the money-laundering statute to 'merge' in this way with violations of other statutes."); *United States v. Savage*, 67 F.3d 1435, 1441 (9th Cir. 2011) ("'[P]roceeds' are funds obtained from *prior, separate* criminal activity.") (emphasis added).

The post-2010 transactions alleged in the Complaint—the SALDT's payments to or on behalf of Scott LaBonte, the SALDT's sale of certain of the real estate interests, and the payment of refinance fees to DEIPM by certain real estate entities—cannot constitute money laundering for the same reason.  These

22

subsequent transactions could only conceivably involve the "proceeds of . . . unlawful activity" if Scott LaBonte's transfer of the assets to the SALDT was itself criminal.  But because the Trustee has failed to allege that the 2010 asset transfers were criminal, there is no basis to find that subsequent transactions involving the property transferred in 2010 constituted money laundering.

### 2.    The Trustee Has Failed to Allege an Enterprise Distinct from the Alleged Acts of Racketeering

The Trustee must allege the existence of a RICO enterprise, *i.e.*, "a group of persons associated together for a common purpose of engaging in a course of conduct," that is "separate and apart from the racketeering activity in which it engages."  *United States v. Turkette*, 452 U.S. 576, 583 (1981) ("The enterprise is not the pattern of racketeering activity; it is an entity separate and apart from the pattern of activity in which it engages.  The existence of an enterprise at all times remains a separate element which must be proved by the Government.").  Here, the Trustee alleges an association-in-fact enterprise consisting of individuals— Scott LaBonte, his father, his wife, and his accountant—who have a variety of personal and legitimate business ties that long pre-dated the alleged racketeering activity and whose alleged interests and participation varied widely across the alleged racketeering period.  The allegations in the complaint thus do not support an inference that these four individuals functioned during the racketeering period "as a continuing unit," or that they shared a "common purpose."  *Turkette*, 452 U.S. at 583.

Indeed, the Second Circuit has held allegations of an association-in-fact enterprise devoted to the fraudulent transfer and sheltering of assets,

substantially identical to the allegations here, to be inadequate.  In *First Capital Asset Management, Inc. v. Satinwood, Inc.*, the plaintiff alleged that the purpose of the alleged association-in-fact enterprise, comprised of various family members, related entities, and professionals, was to "conceal . . . [the debtor's] assets from his creditors, the bankruptcy court[,] and [the] Chapter 7 Trustee." 385 F.3d 159, 174 (2d Cir. 2004).  The court held that the plaintiffs failed to offer "any factual allegations that the [enterprise] was an ongoing organization, formal or informal, or any evidence that the various associates of the alleged enterprise functioned as a continuing unit," and that there were no allegations regarding the "hierarchy, organization, and activities from which [the Court] could fairly conclude that its members functioned as a unit."  *Id.* at 174-75 (internal quotation marks and citations omitted).  Similarly, in *Stein v. New York Stair Cushion Co., Inc.*, the alleged association-in-fact enterprise consisted of an owner of a corporation, the owner's family members, and various related entities, and had the purpose of "accomplish[ing] the fraudulent transfer and continuing custodianship of . . . assets to shield those assets from the claims of Plaintiff." 2006 WL 319300, at *4.  The court noted that the "[p]laintiff alleges an enterprise whose purpose is to conceal assets from Plaintiff and the predicate acts involve alleged fraudulent conveyances aimed at accomplishing that goal."  *Id.*  The court concluded that "the enterprise alleged *is* the pattern of racketeering activity," and therefore the complaint "fails to sufficiently allege the existence of an enterprise." *Id.*

24

3.      **The Alleged Conduct Does Not Amount to or Pose a Threat of Continuing Criminal Activity**

To show that the alleged predicate acts "amount to, or pose a threat of, continuing criminal activity," *Democratic Nat'l Comm.*, 392 F. Supp.3d at 442, the Trustee "must allege either an 'open-ended' pattern of racketeering activity (*i.e.*, past criminal conduct coupled with a threat of future criminal conduct) or a 'closed-ended' pattern of racketeering activity (*i.e.*, past criminal conduct 'extending over a substantial period of time')," *GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 466 (2d Cir. 1995).  Even if the Trustee is held to have adequately alleged predicate acts of racketeering, the Complaint alleges a single "inherently terminable" scheme, with a single purpose, and a single alleged victim, accomplished through a discrete number of property transfers.  These allegations fail to establish either an "open-ended" or "closed-ended" pattern of racketeering.

(a)      **The Alleged Predicate Acts Do Not Demonstrate Open-Ended Continuity**

Open-ended continuity may be shown by allegations of "criminal activity that by its nature projects into the future with a threat of repetition." *Democratic Nat'l Comm.*, 392 F. Supp.3d at 445 (citing *Reich v. Lopez*, 858 F.3d 55, 60 (2d Cir. 2017)).  The Trustee alleges a scheme to place Scott LaBonte's assets beyond its reach, and the Second Circuit has held that a scheme to fraudulently transfer a debtor's assets is "'*inherently terminable*'" and therefore "does not imply a threat of continued criminal activity."  *First Capital*, 385 F.3d at 180-81 (quoting *GICC Cap.*, 67 F.3d at 466) (emphasis added); *see also Ritter v. Klisivitch*, No. 06-CV-

25

5511, 2008 WL 2967627, at *13 (E.D.N.Y. July 30, 2008) (holding that scheme to evade judgment creditor through fraudulent transfers was "inherently terminable").  The Trustee himself alleges that the scheme has been completed: (1) Scott LaBonte rendered himself insolvent in 2010, Compl. ¶ 193; (2) the SALDT is now insolvent and has no valuable assets, *id.*; and (3) "there is no real possibility of collecting upon any judgments that might enter in the pending" fraudulent conveyance actions, *id.* at ¶ 290.  Therefore, according to the Trustee, "the Defendants have successfully frustrated the Goldberg Trustee's collection efforts."  *Id.* at 63.  As the Second Circuit held in *First Capital* and *GICC*, "it 'defies logic to suggest that a threat of continued looting activity exists when,' as Plaintiffs admit, 'there is nothing left to loot.'"  *First Capital*, 385 F.3d at 181 (quoting *GICC*, 67 F.3d at 466).

The terminable nature of the alleged scheme is further illustrated by the fact that the last predicate acts alleged by the Trustee occurred in *January 2016*, when certain refinance fees were paid to DEIPM.  Compl. ¶ 278.  *See First Capital*, 385 F.3d at 181 (holding that the absence of alleged predicate acts since almost two years prior to the filing of the RICO complaint "suggests that the scheme has wound to a close").  Although the Trustee makes cursory reference to Scott LaBonte's continuing benefit from fraudulently conveyed assets, such allegations do not imply a threat of continued criminal activity.  *See id.* ("[C]ontinued silent concealment of assets is not a predicate act."); *Thai Airways Int'l Ltd. v. United Aviation Leasing B.V.*, 842 F. Supp. 1567, 1570-72 (S.D.N.Y. 1994) (continuing concealment and transfer of converted assets do not support open-ended

continuity because "such activities do not constitute continuing criminal conduct").  Accordingly, the alleged predicate acts do not "pose a threat of continued criminal activity."

        **(b)**     **The Alleged Predicate Acts Do Not Demonstrate Closed-Ended Continuity**

"Although [closed-ended] continuity is 'primarily a temporal concept, other factors such as the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes are also relevant in determining whether closed-ended continuity exists." *First Capital*, 385 F.3d at 181 (quoting *DeFalco*, 244 F.3d at 321).  "Courts in the Second Circuit have generally held that where the conduct at issue involves a limited number of perpetrators and victims and a limited goal, the conduct is lacking in closed-ended continuity."  *FD Prop. Holding, Inc. v. U.S. Traffic Corp.*, 206 F. Supp.2d 362, 372 (E.D.N.Y. 2002) (collecting cases);  *see also, e.g.*, *Weizmann Institute of Science v. Neschis*, 229 F. Supp.2d 234, 257 (S.D.N.Y. 2002) ("[N]one of the . . . indicia of closed-ended continuity—*i.e.* a large number and variety of predicate acts, a large number of either participants or victims, and the presence of separate schemes—is present in this case.").  Each of these factors weighs against finding closed-ended continuity here.

The Trustee has alleged a single scheme, targeting a single victim, and an enterprise consisting of only four individuals, one of whom is an accounting professional not alleged to have personally benefitted from the scheme, and two others who are alleged to have simply consented to or facilitated Scott LaBonte's efforts to shelter his assets.  *See GICC Cap.*, 67 F.3d at 468 (holding that

"activities alleged involv[ing] only a handful of participants" weighed against closed-ended continuity).  And although the Trustee has asserted that multiple federal criminal statutes were violated by the same asset transfers, there is no "variety" of predicate acts at all; each alleged predicate act is premised on the transfer of assets which the Trustee believes he may use to satisfy his judgment against Scott LaBonte.  *See First Capital*, 385 F.3d at 182 (finding no closed-ended continuity where, "[a]t bottom, Plaintiffs have alleged that [the debtor] engaged in a single scheme to defraud two creditors by quickly moving his assets to his relatives and then concealing the existence of those assets during his bankruptcy proceeding").

Nor does the number of predicate acts weigh in favor of finding continuity. "[A]cts . . . [that] are unrelated to the predicate acts which allegedly injured [the] plaintiff . . . cannot be considered as part of the activity to extend the scope of the pattern." *Shamis v. Ambassador Factors Corp.*, No. 95-cv-9818, 1997 WL 473577, at *15 (S.D.N.Y. Aug. 18, 1997).  The only acts that conceivably injured the Trustee are the 2010 transfers, which rendered Scott LaBonte insolvent, and the transfer of Devcon's assets to DEIPM in 2015, which allegedly avoided a prejudgment attachment.  The remaining acts—the SALDT's sale of certain of the transferred assets in 2012 and 2013, DEIPM's receipt of refinancing fees in 2015 and 2016 from the refinancing of properties transferred in 2010, and payments for Scott LaBonte's benefit by the SALDT—could not have caused any incremental injury to the Trustee because the Trustee has established no right to recover or attach assets belonging to the SALDT or DEIPM.  The predicate acts that can be

legitimately considered in assessing the existence of a pattern of racketeering thus relate to two discrete sets of asset transfers, separated by five years.  Two sets of asset transfers, in 2010 and 2015, do not show "sustained and continuous criminal activity," but rather "sporadic bursts of activity at key points in time." *Brickellbush*, 219 F. Supp.2d at 587; *see also H.J. Inc.*, 492 U.S. at 239 ("A pattern is not formed by 'sporadic activity' . . . .").  Accordingly, the alleged predicate acts fail to show closed-ended continuity.

*     *     *

In sum, the Defendants' forthcoming motions to dismiss, based on the foregoing and other material deficiencies in the Trustee's Complaint, "raise substantial issues based on the statutes, caselaw and relevant facts."  *Cuartero*, 2006 WL 3190521, at *3.

## II.   THE SCOPE AND BURDEN OF DISCOVERY WARRANT A STAY

The second factor the Court must examine—the breadth and burden of responding to discovery—also weighs in favor of a stay of discovery.  The Trustee's discovery requests undoubtedly will be expansive given the scope of the allegations in the Complaint, many of which relate to transactions that took place years ago.  The burden of responding to the Trustee's discovery requests will be both onerous and costly.  Courts in this district have determined that the equities weigh in favor of granting a stay of discovery in similar circumstances.  For example, in *ITT Corp.*, the court granted a stay of discovery pending a dispositive motion because the plaintiff sought discovery related to "broad" types of information spanning a period of decades.  2012 WL 2944357, at *3-4

29

(staying discovery pending decision on dispositive motion).  Likewise, in *In re First Constitution Shareholders Litig.*, the court found that discovery covering a three-year period would be "unwieldy" and emphasized the "comprehensiveness of the discovery sought and the burden occasioned thereby upon the defendants, and the relative prejudice a stay will place upon both sides."  145 F.R.D. 291, 294 (D. Conn. 1991) (staying discovery until forty-five days after the filing of a ruling on the pending motion to dismiss).

Subjecting the Defendants to onerous discovery is unwarranted and inefficient for both parties.  The Defendants' motions to dismiss, if successful, will end the case and obviate the need for discovery.  Even if the Defendants' motions to dismiss are granted only in part, this would significantly narrow the issues and reduce the discovery burden on the Defendants and the Trustee.  *See, e.g., Cuartero*, 2006 WL 3190521, at *3 ("Permitting discovery to proceed at this point would be unduly burdensome to the defendant and would be inefficient for both parties, since the court's decision on the Motion to Dismiss may significantly narrow the issues."); *Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*, 206 F.R.D. 367, 368 (S.D.N.Y. 2002) (granting stay of discovery because "proceeding with discovery while the motion to dismiss is pending would unnecessarily drain the parties' resources"); *Rivera*, 1997 WL 86394, at *1 (granting stay when proceeding with discovery would "waste the parties' resources and would constitute an undue burden on defendants"); *Gandler v. Nazarov*, No. 94 Civ. 2272, 1994 WL 702004, at *4 (S.D.N.Y. Dec. 14, 1994) (staying

discovery to avoid costly and time-consuming discovery pending a decision on motion to dismiss).

III.   **THE TRUSTEE WILL NOT BE PREJUDICED BY A STAY OF DISCOVERY**

The Trustee will suffer no meaningful prejudice if a stay is granted.  The Trustee has filed at least three fraudulent conveyance actions against Defendants that involve the same facts and conduct at issue in this case.  The Trustee chose to wait *eight years* to file this action after learning of the conduct that allegedly rendered him incapable of collecting his judgment from Scott LaBonte.  The Trustee was aware by 2011, at the latest, that Scott LaBonte had rendered himself insolvent through a series of transfers to the SALDT and was unable to satisfy any judgment.[17]   Moreover, the Trustee has had, and continues to have, the ability to seek information and move for discovery in the pending fraudulent conveyance actions, one of which was filed in June 2017, well after the alleged racketeering conduct had been completed.  By the Trustee's own admission, he has already "elicited more than one hundred hours of testimony . . . and reviewed tens of thousands of pages of documents produced during discovery."  Compl. ¶ 286.

---

[17] The transcript of the Malley-LaBonte adversary proceeding, tried in June 2011, demonstrates that the Trustee was aware by that time, *at the latest*, that SAL had transferred away all of his assets.  *See* Berman v. Goldberg Hearing, June 22, 2011, at 23:15-22 ("Q.  On or about June 2nd, 2010,  you entered into a series of transactions where you transferred out of your name virtually every asset that was held in your name individually, correct?   A.   I transferred multiple LLC interests and the interest I owned in Devcon Enterprises out of my name, yes.  Q. And in so doing, Mr. LaBonte, you transferred virtually every asset out of your name, didn't you?  A.  Yes.").

Any assertion of urgency here is further belied by the fact that the Trustee has chosen not to diligently pursue the pending fraudulent conveyance actions, which are in advanced stages and provide an opportunity to recover substantial assets.  Indeed, the Trustee recently sought and obtained stays of the SALDT, Landino, and DEIPM Actions.[18]  The Trustee's decision to neglect these actions in favor of a dubious RICO claim is a strategic ploy and not driven by any pressing factual developments, as demonstrated by the fact that the alleged racketeering conduct ended in 2016.

Under these circumstances, any prejudice to the Trustee will be "minimal, as discovery will only be stayed until a decision is reached on the Motion to Dismiss."  *Cuartero*, 2006 WL 3190521, at *3; *see also In re First Constitution Shareholders Litig.*, 145 F.R.D. at 294 ("[I]t is likely that discovery will be protracted and it is highly unlikely that the case will be tried within the immediate future; therefore, plaintiffs are not unduly delayed if discovery is stayed for what is expected to be a relatively short period of time.").  By contrast, the Defendants are faced with immediate reputational harm by the Trustee's racketeering claims. This harm should not be exacerbated by allowing a burdensome and potentially unnecessary discovery process to commence before the Defendants' dispositive motions are adjudicated.

---

[18] The SALDT, Landino, and DEIPM Actions were all stayed on consent of the Trustee and the defendants.  *See Berman v. LaBonte*, Adv. Proc. No. 14-2026 (Bankr. D. Conn.) (JAM), Dkt. Nos. 184, 190; *Berman v. Landino*, Adv. Proc. No. 16-2042 (Bankr. D. Conn.) (AWT), Dkt. Nos. 154-55, 162-63, 166-67, 169-70; *Berman v. DEI Property Management, LLC*, Adv. Pro. No. 17-2029 (Bankr. D. Conn.) (JAM), Dkt. Nos. 69-70, 77.

## CONCLUSION

In light of the strong grounds for the dismissal of the Trustee's Complaint, the burdensome nature of discovery in this case, and the minimal burden that a stay will place on the Trustee, good cause exists for a stay of discovery.

Accordingly, the Defendants respectfully request that the Court issue an order staying discovery pending resolution of their motions to dismiss.

Dated:     November 15, 2019

FINN DIXON & HERLING LLP

By: /s/ Alfred U. Pavlis
    Alfred U. Pavlis (ct08603)
    David R. Allen (ct30827)
    Finn Dixon & Herling LLP
    Six Landmark Square
    Stamford, CT 06901-2704
    Tel: (203) 325-5000
    Fax: (203) 325-5001
    apavlis@fdh.com
    dallen@fdh.com

*Attorneys for Paul Bourdeau, Esq.*

33

**PULLMAN & COMLEY LLC**

By:  /s/ James T. Shearin
  James T. Shearin (ct01326)
  Pullman & Comley LLC
  850 Main Street
  P.O. Box 7006
  Bridgeport, CT 06601-7006
  jtshearin@pullcom.com

Of Counsel
  David M.S. Shaiken (ct02297)
  Shipman, Shaiken & Schwefel,
  LLC
  433 South Main Street
  West Hartford, CT 06110
  dshipmanlawct.com

*Attorneys for Scott A. LaBonte,
individually and as Trustee of the
Scott A. LaBonte Revocable Trust,
and Sally A. LaBonte, individually and
as Trustee of the Scott A. LaBonte
Revocable Trust and Trustee of the
Scott A. LaBonte Dynasty Trust*

**MARK H. DEAN, PC**

By:  /s/ Mark Dean
  Mark Dean (ct01935)
  Mark H. Dean, PC
  241 Main Street, Suite 501
  Hartford, CT 06106
  mdean@mhdpc.net

*Attorneys for Roland G. LaBonte,
individually and as Trustee of the Roland
G. LaBonte Revocable Trust and the
Scott A. LaBonte Dynasty Trust, and
Marilyn P. LaBonte, individually and as
Trustee of the Marilyn P. LaBonte 2015
Revocable Trust and Trustee of the
Marilyn P. LaBonte Revocable Trust*

**CARMODY TORRANCE SANDAK
HENNESSEY LLP**

By:  /s/ Thomas J. Sansone
  Thomas J. Sansone (ct00671)
  Carmody Torrance Sandak
  Hennessey LLP
  195 Church Street
  New Haven, CT 06509
  tsansone@carmodylaw.com

*Attorneys for Robert A. Landino*

**COWDERY & MURPHY LLC**

By:  /s/ Thomas J. Murphy
  Thomas J. Murphy (ct07959)
  James J. Healy
  Cowdery & Murphy LLC
  280 Trumbull Street, 22nd Floor
  Hartford, CT 06103
  tmurphy@cowderymurphy.com
  jhealy@cowderymurphy.com

*Attorneys for Joseph W. Sparveri, Jr.*

34

**NATALE & WOLINETZ**

**By: /s/ Anthony Natale**
   **Anthony Natale (ct08451)**
   **Natale & Wolinetz**
   **116 Oak Street**
   **Glastonbury, CT 06033**
   **anatale@natalelawfirm.com**

***Attorneys for Lawrence J. Marks, Esq.***
***and Juliano & Marks, LLC***

<u>CERTIFICATION</u>

I hereby certify that on November 15, 2019 a copy of the foregoing

Memorandum of Law in Support of Motion to Stay Discovery was filed

electronically through the Court's electronic filing system and served by mail on

anyone unable to accept electronic filing.  Notice of this filing will be sent by e-

mail to all parties by operation of the Court's electronic filing system or by mail to

anyone unable to accept electronic filing.  Parties may access this filing through

the Court's CM/ECF System.

<u>/s/ Alfred U. Pavlis</u>
Alfred U. Pavlis (ct08603)
FINN DIXON & HERLING LLP
Six Landmark Square
Stamford, CT  06901-2704
Tel: (203) 325-5000
Fax: (203) 325-5001
E-mail: apavlis@fdh.com

36