**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **JAMES BERMAN, Chapter 7 Trustee for the Substantively Consolidated Estate of Michael S. Goldberg, LLC and Michael S. Goldberg,**<br><br>    **Plaintiff,**<br><br>            **v.**<br><br>**SCOTT A. LABONTE *et al.*,**<br><br>        **Defendants.** | **Case No. 19-cv-1533** |

**INDIVIDUAL MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT PAUL BOURDEAU'S MOTION TO DISMISS THE COMPLAINT**

## TABLE OF CONTENTS

                                                                          Page

PRELIMINARY STATEMENT ................................................................ 1

STANDARD ....................................................................................... 2

ALLEGATIONS ................................................................................... 3

ARGUMENT ....................................................................................... 4

    A.   The Complaint Does Not Plausibly Allege that Mr. Bourdeau
        Was Aware of Any Acts of Racketeering ................................. 5

    B.   The Complaint Does Not Plausibly Allege that Mr. Bourdeau
        Was Aware that the Alleged Effort to Avoid the Trustee's
        Claims Was Being Carried Out Through a Pattern of
        Racketeering Activity .............................................................. 9

    C.   The Complaint Does Not Plausibly Allege that Mr. Bourdeau
        Agreed to Join a Racketeering Conspiracy ........................... 12

CONCLUSION ................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Dental Ass'n v. Cigna Corp.*,
   605 F.3d 1283 (11th Cir. 2010) ...................................................................... 2

*Apollon Waterproofing & Restoration, Inc. v. Bergassi*,
   No. 01-cv-8388, 2003 WL 1397394 (S.D.N.Y. Mar. 20, 2003) ........................ 5, 6, 8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................................... 2, 13, 14

*Azrielli v. Cohen Law Offices*,
   21 F.3d 512 (2d Cir. 1994) ............................................................................ 15

*Baker O'Neal Holdings, Inc. v. Ernst & Young LLP*,
   No. 03-CV-0132, 2004 WL 771230 (S.D. Ind. Mar. 24, 2004) ............................ 15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................. 2, 12

*Democratic Nat'l Comm. v. Russian Federation*,
   392 F. Supp.3d 410 (S.D.N.Y. 2019) ............................................................... 10

*Discon Inc. v. NYNEX Corp.*,
   93 F.3d 1055 (2d Cir. 1996) ............................................................................ 2

*Domanus v. Locke Lord
   LLP*, 847 F.3d 469 (7th Cir. 2017) .............................................................. 9, 13

*Estate of Gottdiener v. Sater*,
   35 F. Supp.3d 386 (S.D.N.Y. 2014) ............................................................ 15, 16

*FD Prop. Holding, Inc. v. U.S. Traffic Corp.*,
   206 F. Supp.2d 362 (E.D.N.Y. 2002) ............................................................... 11

*First Cap. Asset Mgmt., Inc. v. Brickellbush*,
   219 F. Supp.2d 576 (S.D.N.Y. 2002) ............................................................... 12

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
   385 F.3d 159 (2d Cir. 2004) ...................................................................... 10, 11

*GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*,
   67 F.3d 463 (2d Cir. 1995) ............................................................................ 10

*Goren v. New Vision Int'l Inc.*,
  156 F.3d 721 (7th Cir. 1998) ................................................................. 15

*Handeen v. Lemaire*,
  112 F.3d 1339 (8th Cir. 1997) ............................................................... 16

*Heffernan v. HSBC Bank USA*,
  No. 99CV07981, 2001 WL 803719 (E.D.N.Y. Mar. 29, 2001) .................................. 13

*In re Trilegiant Corp., Inc.*,
  11 F. Supp.3d 82 (D. Conn. 2014) ........................................................ 2, 12

*JSC Foreign Economic Ass'n Technostroyexport v. Weiss*,
  No. 06 Civ. 6095, 2007 WL 1159637 (S.D.N.Y. Apr. 18, 2007) ........................ 17, 18

*Lippe v. Bairnco Corp.*,
  218 B.R. 294 (S.D.N.Y. 1998) .............................................................. 14

*Madanes v. Madanes*,
  981 F. Supp. 241 (S.D.N.Y. 1997) ...................................................... 16, 17

*Nastro v. D'Onofrio*,
  542 F. Supp.2d 207 (D. Conn. 2008) ................................................... 13, 15

*RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S., LLP*,
  682 F.3d 1043 (D.C. Cir. 2012) ............................................................ 12

*Salinas v. United States*,
  522 U.S. 52 (1997) ..................................................................... 4, 5, 12

*Shams v. Fisher*,
  107 F. Supp.2d 266 (S.D.N.Y. 2000) ....................................................... 10

*Stein v. N.Y. Stair Cushion Co., Inc.*,
  No. 04-cv-4741, 2006 WL 319300 (E.D.N.Y. Feb. 10, 2006) ............................... 5, 8

*United States v. Aleskerova*,
  300 F.3d 286 (2d Cir. 2002) ............................................................... 14

*United States v. Pizzonia*,
  577 F.3d 455 (2d Cir. 2009) ................................................................ 4

*United States v. Tello*,
  687 F.3d 785 (7th Cir. 2012) .............................................................. 12

*United States v. Yannotti*,
  541 F.3d 112 (2d Cir. 2008) ................................................................ 4

**Statutes**

**18 U.S.C. § 1962(c)** ............................................................................ **4, 9**

**18 U.S.C. § 1962(d)** ............................................................................... **4**

**Rules**

**Fed. R. Civ. P. 12(b)(6)** ........................................................................ **1**

Defendant Paul Bourdeau, Esq. respectfully submits this memorandum of law in support of his Motion to Dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT

Paul Bourdeau is a long-time partner of Cummings & Lockwood, LLC, where his practice focuses on estate planning services.  He has been a member of the Connecticut bar for thirty-eight years.  Among Mr. Bourdeau's many clients are members of the LaBonte family, whom he represented for years prior to the time period at issue in this case.  Based on nothing more than his participation in a single meeting with his clients, Scott and Roland LaBonte, and their accountant on June 2, 2010, his limited review of a promissory note, and his drafting of a revocable trust instrument for Marilyn LaBonte almost five years later, Mr. Bourdeau has been accused of conspiring in a criminal racketeering enterprise and had his stellar reputation tarnished.  He has been named by the Trustee as a purported conspirator only because he and his law firm are perceived as deep pockets for the satisfaction of a potential treble damages award.  However, the Trustee's Complaint is deficient as a matter of law on its face; it fails to allege facts from which it can be plausibly inferred that Mr. Bourdeau—a successful attorney at a leading Connecticut firm, who is not alleged to have financially benefitted from the scheme in any way—agreed to further or facilitate a criminal racketeering conspiracy.[1]

---

[1] For the reasons set forth in the Joint Brief in Support of Defendants' Motions to Dismiss (the "Joint Brief"), the Trustee's Complaint must be dismissed in its entirety because the Trustee lacks standing, his claims are unripe or time-barred,

## STANDARD

To survive a motion to dismiss, a plaintiff must plead allegations sufficient to render the asserted claims "plausible." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007). Where a claim is premised on an agreement among the defendants, the Supreme Court has held that the plaintiff must offer "allegations plausibly suggesting," and "not merely consistent with," the existence of an "agreement." *Id.* at 557 (this standard "reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief'") (alteration in original); *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009) (a motion to dismiss should be granted "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct"). *See also Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293-95 (11th Cir. 2010) (applying the *Twombly* pleading standard to RICO conspiracy allegations). The Trustee's claim against Mr. Bourdeau fails to meet the threshold level of plausibility required to survive a motion to dismiss.

---

and he has failed to state a cognizable claim that any Defendant violated the RICO statute. In the event that the Trustee's primary RICO claim is dismissed, the conspiracy claim against Mr. Bourdeau must be dismissed as well. *See, e.g. Discon Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2d Cir. 1996) (Where "the prior claims do not state a cause of action for substantive violations of RICO, the present claim does not set forth a conspiracy to commit such violations"), *vacated on other grounds*, 525 U.S. 128 (1998); *In re Trilegiant Corp., Inc.*, 11 F. Supp.3d 82, 108 (D. Conn. 2014) (Bryant, J.), *aff'd sub nom.*, *Williams v. Affinion Grp., LLC*, 889 F.3d 116 (2d Cir. 2018) ("[A]ny RICO conspiracy claim . . . necessarily fails where the underlying substantive claim is insufficiently pled.").

## ALLEGATIONS

The Trustee asserts that Mr. Bourdeau conspired to violate the RICO statute on the basis of the following allegations:  (1) Mr. Bourdeau met with his clients, Scott LaBonte and Roland LaBonte, and their accountant, Joseph W. Sparveri, Jr., on June 2, 2010, Compl. ¶ 63; (2) during the meeting, Scott LaBonte stated that he was concerned about a potential claw-back action by a "trustee,"[2] and the attendees discussed the possibility of (i) Scott LaBonte selling additional assets to the SALDT,[3] and (ii) extending the duration of a note issued by the SALDT in 2006 for assets previously sold by Scott LaBonte, *id.* at ¶¶ 64-65, 92; (3) following the meeting, Mr. Bourdeau received a promissory note, drafted by Mr. Sparveri, that was to be issued by the SALDT in exchange for sales of assets to the trust by Scott LaBonte, and provided an interest rate (established by federal regulation) to be used in the note, *id.* at ¶ 95; (4) in August and September 2010, Scott LaBonte sold his assets to the SALDT, and Mr. Bourdeau was told that certain asset sales were completed, though he is not alleged to have had any involvement in the selection of the assets to be sold, the execution of the transfers, or the alleged undervaluation of the transferred assets, *id.* at ¶ 81; and (5) five years later, Mr. Bourdeau prepared a trust instrument for Marilyn LaBonte,

---

[2] Mr. Bourdeau is not alleged to have known the nature of Scott LaBonte's pre-petition interactions with Michael Goldberg or the circumstances of his alleged receipt of investment proceeds from Goldberg, and he is not alleged to have had any basis to assess the merit, or likelihood, of any potential claw-back action against Scott LaBonte.  It was not until 2017, *seven years later*, that Scott LaBonte was adjudged to have received assets recoverable by the Goldberg estate.  Compl. ¶ 52.

[3] Capitalized terms not defined herein have the meaning attributed to them in the Joint Brief.

3

allegedly with knowledge that the purpose of the trust was to "'park' Devcon's business for [Scott LaBonte] until he could settle with the Goldberg Trustee for pennies on the dollar based on his purported insolvency," *id.* at ¶ 234.

Mr. Bourdeau is *not alleged* to have had any involvement in the selection of assets to be sold by Scott LaBonte to the SALDT in 2010, or the alleged undervaluation of those assets.  He is also not alleged to have been aware of *any* of the subsequent conduct by other Defendants that allegedly allowed Scott LaBonte to continue to benefit from the transferred assets, and he is not alleged to have been aware of any of the transactions by which the SALDT allegedly depleted its assets.  Lastly, Mr. Bourdeau is not alleged to have derived *any* financial benefit from the purported scheme in which he is alleged to have conspired.

## ARGUMENT

To allege a violation of 18 U.S.C. § 1962(d), the Trustee must allege that Paul Bourdeau "agree[d] to conduct or to participate in the conduct of a charged enterprise's affairs through a pattern of racketeering."  *United States v. Pizzonia*, 577 F.3d 455, 464 (2d Cir. 2009).  In other words, the Trustee must allege that Mr. Bourdeau agreed "to further an endeavor which, if completed, would satisfy all of the elements of a substantive" RICO violation.  *Salinas v. United States*, 522 U.S. 52, 65 (1997); *see also United States v. Yannotti*, 541 F.3d 112, 121-22 (2d Cir. 2008) (the defendant must "know of, and agree to, the general criminal objective of a jointly undertaken scheme").  The Trustee alleges that Mr. Bourdeau conspired to violate 18 U.S.C. § 1962(c), which requires "(1) the conduct (2) of an enterprise (3) through a pattern of racketeering activity."  *Salinas*, 522 U.S. at 62.

4

Therefore, in order to adequately plead a Section 1962(d) claim against Mr. Bourdeau, the Trustee must allege (i) that Mr. Bourdeau knew that racketeering acts were being committed; (ii) that Mr. Bourdeau knew that these acts were part of a pattern of racketeering activity used to conduct or operate an enterprise; and (iii) that Mr. Bourdeau agreed to facilitate the commission of those acts and intended to further the objective of the conspiracy.  The Trustee's Complaint fails on each requirement—there is simply no plausible basis to conclude from the Trustee's allegations that Mr. Bourdeau either "knew about" or "agreed to facilitate" the alleged racketeering conspiracy.  *Salinas*, 522 U.S. at 65.

A.   <u>The Complaint Does Not Plausibly Allege that Mr. Bourdeau Was Aware of Any Acts of Racketeering</u>

The Trustee has alleged that Mr. Bourdeau was aware in June 2010 that Scott LaBonte intended to sell assets to the SALDT for the purpose of avoiding a potential claim—at that time neither threatened nor filed—and assisted those transfers by reviewing and providing the interest rate to be included in a restated promissory note issued by the SALDT in connection with the transfers.[4]  Compl. ¶¶ 63-65, 89, 94-5.  As discussed in the Joint Brief, *see* Joint Brief, at § V.A, even if Mr. Bourdeau was aware that the 2010 transfers were fraudulent conveyances—which he disputes—"a fraudulent conveyance does not constitute an act of racketeering."  *Stein v. N.Y. Stair Cushion Co., Inc.*, No. 04-cv-4741, 2006 WL

---

[4] Contrary to the Trustee's assertion that the issuance of a promissory note in exchange for the transferred assets was a "sham," Compl. 24, installment sales to grantor trusts in exchange for promissory notes are a common estate planning device.  Indeed, the Trustee's own allegations reflect that Scott LaBonte had made prior sales, in 2006, to the SALDT in exchange for a promissory note.  Compl. ¶ 87.

319300, at *5 n.1 (E.D.N.Y. Feb. 10, 2006); *see also Apollon Waterproofing & Restoration, Inc. v. Bergassi*, No. 01-cv-8388, 2003 WL 1397394, at *4 (S.D.N.Y. Mar. 20, 2003) (a "fraudulent conveyance cannot be a basis for a RICO claim" because "unenumerated acts . . . such as a fraudulent conveyance . . . are not 'racketeering activities'" under the RICO statute).  The Trustee's attempt to characterize Scott LaBonte's asset transfers to the SALDT in 2010 as criminal acts—bankruptcy fraud, obstruction of justice, wire fraud, and money laundering—is meritless and rests on erroneous interpretations of the cited criminal statutes.  *See* Joint Brief, at §§ V.A.

Mr. Bourdeau is not alleged to have had knowledge of or involvement in virtually any of the other conduct alleged in the Complaint that purportedly included acts of racketeering:  He is not alleged to have had any involvement in Scott LaBonte's determination of which assets to transfer or the alleged undervaluation of those assets, *id.* at ¶¶ 82-88; and he is not alleged to have had any knowledge of or involvement in the subsequent conduct by other Defendants that allegedly allowed Scott LaBonte to continue to benefit from the transferred assets—*i.e.*, the alleged payments to or on Scott LaBonte's behalf by the SALDT in the years following the transfers, *id.* at ¶¶ 101-32, or the transactions with Landino in 2012 and 2013 that allegedly converted certain of the transferred assets to cash for Scott LaBonte's benefit, *id.* at ¶¶ 135-213.  Indeed, after Scott LaBonte's 2010 asset sales, Mr. Bourdeau is not alleged to have known of or been involved in *any* of the conduct constituting the alleged conspiracy until February 2015.

Moreover, Mr. Bourdeau's alleged involvement in February 2015 was limited to his preparation of a routine trust instrument, accomplished over the course of a matter of days.  Compl. ¶¶ 231, 235.  The Trustee alleges that in 2015 the LaBontes established a new entity, DEIPM, which was owned by the Marilyn P. LaBonte Revocable Trust, and transferred the assets of their real estate management company, Devcon, to DEIPM for the purpose of avoiding a fraudulent conveyance action initiated by the Trustee.  *Id.* at ¶¶ 225, 232.  But the Trustee alleges only that Mr. Bourdeau prepared a trust instrument that revised the inheritance provisions of Marilyn LaBonte's trust;[5] he is *not* alleged to have been involved in the decision to establish DEIPM or to transfer Devcon's assets,[6] and he is not alleged to have been involved in the alleged payments to DEIPM from certain limited liability companies owned by the SALDT.  *See id.* at ¶¶ 268-82.  Nor is Mr. Bourdeau alleged to have been involved in or aware of any of the alleged payments to Scott LaBonte by the Marilyn P. LaBonte Trust and DEIPM after the Devcon transaction.  *See id.* at ¶¶ 257-265.  The mere allegation that Mr. Bourdeau prepared a trust instrument does not support a plausible inference that he had knowledge of the commission of any predicate act.

---

[5] The Trustee alleges only that in February 2015 Mr. Bourdeau was asked to revise the Marilyn P. LaBonte Revocable Trust "to provide that if Scott [LaBonte] is deceased at the time [Roland LaBonte] and Marilyn [LaBonte] are both deceased, the interest in the new [DEIPM] would pass to all of [Roland and Marilyn's] descendants in the same proportions as [their] other assets," and that if Scott LaBonte "is then deceased . . . [his] new DEI[PM] interest [would] pass exclusively to Sally" LaBonte, his wife.  Compl. ¶ 235.

[6] Indeed, the Trustee alleges that Defendants Lawrence J. Marks, Esq. and Juliano & Marks, LLC, not Mr. Bourdeau, "advised [Scott LaBonte] and Roland LaBonte on all facets of DEIPM's formation and the transfer of Devcon's business to DEIPM."  Compl. ¶ 227.

The Trustee offers only two allegations that purport to show that Mr. Bourdeau knew that the transaction between Devcon and DEIPM was undertaken in contemplation of a claim by a creditor.  First, he alleges "*upon information and belief*," that Mr. Bourdeau "was aware in February 2015 that the Trustee had recently filed and was prosecuting the Dynasty Trust PJR Application which sought a $1.1 million attachment against Devcon."  Compl. ¶ 238.  Second, he alleges that Roland LaBonte stated in an e-mail to Mr. Bourdeau that the LaBontes intended to return ownership of DEIPM to Scott LaBonte "as soon as his current situation allows."  *Id.* ¶ 236.  Neither the Trustee's unsupported speculation that Mr. Bourdeau knew that the Trustee was pursuing assets held by Devcon, nor Roland LaBonte's cursory reference to Scott LaBonte's "current situation," supports a plausible inference that Mr. Bourdeau knew that the LaBontes were engaged in a transaction to avoid a claim by the Trustee.  Regardless, even if Mr. Bourdeau was aware that the transaction between Devcon and DEIPM was executed to avoid a claim by the Trustee, a transfer to avoid creditors is not a predicate act of racketeering, *see Stein*, 2006 WL 319300, at *5 n.1; *Apollon*, 2003 WL 1397394, at *4, and the transaction violated no criminal statute, *see* Joint Brief, at § V.A.

Mr. Bourdeau is thus alleged to have known about, at most, a set of potentially voidable asset transfers in 2010, and another transfer in 2015, none of which constituted acts of racketeering.  According to the Trustee, Mr. Bourdeau was not involved in the conduct of his alleged co-conspirators for five and a half years, in a scheme that allegedly spanned five years and seven months.

"Although a conspirator does not need to know the intricacies and full dimensions of the scheme in order to be liable . . . , he must be aware of its *essential scope and nature*." *Domanus v. Locke Lord* LLP, 847 F.3d 469, 479 (7th Cir. 2017) (emphasis added). There is simply no basis for the Court to conclude that Mr. Bourdeau knew, based on his limited interaction with his clients in 2010 and again in 2015, the scope or nature of the conduct of Scott LaBonte, Roland LaBonte, Mr. Sparveri, and Sally LaBonte alleged in the Complaint.

**B.** **The Complaint Does Not Plausibly Allege that Mr. Bourdeau Was Aware that the Alleged Effort to Avoid the Trustee's Claims Was Being Carried Out Through a Pattern of Racketeering Activity**

Even if the Complaint did plausibly allege that Mr. Bourdeau was aware of fraudulent conveyances in 2010 and 2015, and these transfers were found to constitute predicate acts of racketeering, the conspiracy claim against Mr. Bourdeau still must be dismissed because there is no basis to conclude that Mr. Bourdeau was aware of the conduct of an enterprise "through *a pattern of racketeering activity*," as required by the RICO statute. 18 U.S.C. § 1962(c).

The Complaint utterly fails to allege that Mr. Bourdeau knew of conduct constituting a "pattern of racketeering activity." To satisfy the "pattern" requirement, in addition to pleading multiple predicate acts of racketeering, the Trustee must "show that the predicate acts are *related*, and that they amount to, or pose a threat of, *continuing criminal activity*." *Democratic Nat'l Comm. v. Russian Federation*, 392 F. Supp.3d 410, 442 (S.D.N.Y. 2019) (citing *H.J. Inc. v. Nw. Bell. Tel. Co.*, 492 U.S. 229, 239 (1989)) (emphasis added). Continuity may be either "open-ended," *i.e.*, "past criminal conduct coupled with a threat of future criminal conduct," or "closed-ended," *i.e.*, "past criminal conduct extending over

9

a substantial period of time." *GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 466 (2d Cir. 1995) (internal quotation marks omitted).

As explained in detail in the Defendants' Joint Brief, *see* Joint Brief, at § V.D.1, a scheme to fraudulently transfer a debtor's assets is "'*inherently terminable*'" and, therefore, "does not imply a threat of continued criminal activity," as required to constitute "open-ended continuity." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 180-81 (2d Cir. 2004) (quoting *GICC Cap.*, 67 F.3d at 466) (emphasis added). But even if a scheme to shelter assets from a creditor were not "inherently terminable," there is no plausible basis to infer that that Mr. Bourdeau knew in June 2010 that Scott LaBonte, Roland LaBonte, Sally LaBonte, and Mr. Sparveri intended to engage in criminal activity in the future. Mr. Bourdeau was at that time allegedly aware only that Scott LaBonte intended to sell additional assets to the SALDT; there is no allegation of *any* knowledge by Mr. Bourdeau that other Defendants would, over the following five years, engage in the course of conduct to allegedly continually evade claims by the Trustee while maintaining Scott LaBonte's access to recoverable funds. *See Shams v. Fisher*, 107 F. Supp.2d 266, 278 (S.D.N.Y. 2000) (holding that "the fact that [the defendant] may have participated in a fraudulent conveyance . . . does not raise a material question as to whether [she] knew the broader nature of [the racketeering] scheme . . . or whether she would have been led to suspect that her alleged role in the conveyance was part of a larger enterprise").

For the same reason, there is no plausible basis to infer that Mr. Bourdeau was aware of "predicate acts 'extending over a substantial period of time,'" as

required to constitute a "closed-ended pattern of racketeering activity." *Satinwood*, 385 F.3d at 181 (quoting *GICC*, 67 F.3d at 466). As explained in the Defendants' Joint Brief, *see* Joint Brief, at § V.D.2, "[c]ourts in the Second Circuit have generally held that where the conduct at issue involves a limited number of perpetrators and victims and a limited goal, the conduct is lacking in closed-ended continuity," *FD Prop. Holding, Inc. v. U.S. Traffic Corp.*, 206 F. Supp.2d 362, 372 (E.D.N.Y. 2002) (collecting cases).

Mr. Bourdeau is alleged to have been aware that in June 2010 Scott LaBonte intended to sell assets to the SALDT out of concern for a potential claw-back action by the Trustee. Mr. Bourdeau was thus allegedly aware of, at most, a single set of transactions, involving a small number of participants (Scott LaBonte, the SALDT, and Mr. Sparveri), to accomplish the limited goal of sheltering Scott LaBonte's assets from a potential lawsuit by the Trustee.[7] There is no plausible basis to infer that Mr. Bourdeau knew that the other Defendants would engage in any of the subsequent allegedly criminal conduct over the following years. Indeed, Mr. Bourdeau is not alleged to have even known of or been involved in the conduct of his alleged co-conspirators for over four years and eight months following the initial asset transfers. A "pattern is not formed by 'sporadic activity,'" and there is no basis to conclude that Mr. Bourdeau was aware in June 2010 of any plan or intent to commit "sustained and continuous

---

[7] Of course, to the extent the Court determines that the 2010 transfers by Scott LaBonte were not predicate acts of racketeering, *see* Joint Brief, at § V.A, the assertion that Mr. Bourdeau was aware of conduct amounting to a racketeering conspiracy is all the more meritless.

criminal activity." *First Cap. Asset Mgmt., Inc. v. Brickellbush*, 219 F. Supp.2d 576, 587 (S.D.N.Y. 2002).

      **C.**    <u>The Complaint Does Not Plausibly Allege that Mr. Bourdeau Agreed to Join a Racketeering Conspiracy</u>

In addition to the complete absence of any plausible basis to infer that Mr. Bourdeau even had the requisite knowledge of the purported RICO conspiracy, there is also no plausible basis to conclude that Mr. Bourdeau decided to throw away his successful career and *agreed* to join such a conspiracy. As this Court has recognized, "[k]nowledge alone cannot be enough to subject a person to criminal and civil liability for conspiracy. Without alleging an agreement, the Plaintiffs cannot show that the Defendants have in fact agreed to conspire together to violate RICO." *In re Trilegiant*, 11 F. Supp.3d at 109. The *sine qua non* of a conspiracy claim is thus an agreement to "adopt the goal of furthering or facilitating the criminal endeavor." *Salinas*, 522 U.S. at 65; *see also, e.g.*, *United States v. Tello*, 687 F.3d 785, 793 (7th Cir. 2012) ("the agreed-to goal" required by Section 1962(d) is "that the affairs of the enterprise would be carried out through a pattern of two or more racketeering acts committed by some member or members of the conspiracy"). The Supreme Court has established that a conspiratorial agreement cannot be inferred from conduct that is "equally well explained by legitimate economic incentives." *Twombly*, 550 U.S. at 556-57. "'[F]acts that are merely consistent with a defendant's liability' and demonstrate only a possibility, but not the plausibility," of "conspiratorial RICO conduct" are inadequate. *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S., LLP*, 682 F.3d 1043, 1048 (D.C. Cir. 2012) (quoting *Iqbal*, 556 U.S. at 662).

Here, as explained above, Mr. Bourdeau is only alleged to have attended a meeting with his long-standing clients in 2010 in which they discussed, among other things, their concerns about a potential claw-back action against Scott LaBonte and potential courses of action; to have provided an interest rate (established by federal regulation) for a promissory note; and, five years later, to have revised a trust instrument.[8]  Nothing in this conduct is inconsistent with the typical professional function of an attorney.  "Claims that lawyers have conspired with their clients are insufficient in the absence of allegations that the arrangement involves more than standard legal representation."  *Domanus*, 847 F.3d at 482.  Indeed, Mr. Bourdeau is not plausibly alleged to have reaped *any* benefit from the purported scheme, belying any possible inference that Mr. Bourdeau chose to put his successful legal practice at risk by joining a criminal racketeering conspiracy.  *See Nastro v. D'Onofrio*, 542 F. Supp.2d 207, 214 (D. Conn. 2008) (holding that attorneys' "knowing participation in the [racketeering] scheme" could not be inferred where, *inter alia*, "the Plaintiff indicates no benefit [the attorneys] received or could have received from defrauding him," the

---

[8] The remainder of the Trustee's allegations of conspiracy are entirely conclusory, and it is well-established that such allegations are "not entitled to be assumed true." *Iqbal*, 556 U.S. at 681; *Heffernan v. HSBC Bank USA*, No. 99CV07981, 2001 WL 803719, at *8 (E.D.N.Y. Mar. 29, 2001) ("The complaint may not merely incorporate by reference the allegations of the remainder of the complaint and then state in a conclusory manner that the defendants conspired to commit them.").  *See* Compl. ¶¶ 384-86 (*e.g.*, alleging that "through each Defendant's close personal and/or professional relationship with [Scott LaBonte] and involvement in the LaBonte Family real estate business, each [D]efendant knew the nature of the Enterprise to Obstruct the Goldberg Trustee and each Defendant knew that the Enterprise to Obstruct the Goldberg Trustee extended beyond each Defendant's respective role").

attorneys "would have made the same amount of money regardless of any scheme [the attorneys' client] may have had," and "the evidence suggests that only [the client] and his family stood to benefit from the alleged fraudulent scheme"); *c.f. United States v. Aleskerova*, 300 F.3d 286, 292-93 (2d Cir. 2002) ("A defendant's knowing and willing participation in a conspiracy may be inferred from . . . evidence that the defendant . . . received or expected to receive a share of the profits from the conspiracy.").

As the Trustee admits, Mr. Bourdeau provided legal services to the LaBontes "for many years," and "regularly advises three generations of the LaBonte Family on matters related to various LaBonte Family trusts."  Compl. ¶ 21.  Mr. Bourdeau's alleged conduct—*i.e.*, the provision of legal services to his clients—is plainly explained by his existing attorney-client relationship with the LaBontes, and certainly does not give rise to a plausible inference that he agreed to join a years-long criminal racketeering conspiracy, involving numerous parties and transactions of which he is not alleged to have had any knowledge.  The Trustee's allegations thus do "not plausibly suggest an illicit accord because [they are] not only compatible with, but indeed . . . more likely explained by, lawful, unchoreographed free-market behavior."  *Iqbal*, 556 U.S. at 680.

The allegation that Mr. Bourdeau's legal services may have assisted the purported enterprise is insufficient to establish that he agreed to join a racketeering conspiracy.  It is well-established that there is no civil liability for aiding and abetting a RICO violation, *see, e.g., Lippe v. Bairnco Corp.*, 218 B.R. 294 (S.D.N.Y. 1998), nor is there civil liability for aiding and abetting a fraudulent

conveyance, *see, e.g.*, *Baker O'Neal Holdings, Inc. v. Ernst & Young LLP*, No. 03-CV-0132, 2004 WL 771230, at *14 (S.D. Ind. Mar. 24, 2004) (citing the "multitude of other courts . . . holding that there is no accessory liability for fraudulent transfers under the Uniform Fraudulent Transfer Act").  Courts have expressly cautioned that "the RICO conspiracy provision should not be used by the courts to criminalize *mere association* with an enterprise."  *Goren v. New Vision Int'l Inc.*, 156 F.3d 721, 731-32 (7th Cir. 1998) (emphasis added) (internal quotation marks omitted).  Indeed, numerous courts have held that even attorneys who *knowingly* assisted fraudulent schemes through the provision of legal services cannot be held liable under Section 1962(c) because the statute requires "participat[ion] in the operation or management of the enterprise itself," and the mere provision of services to a racketeering enterprise does not meet the standard.  *See, e.g.*, *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 521 (2d Cir. 1994) (holding that attorney who provided legal work to the alleged enterprise was not liable under RICO, despite evidence of knowledge of fraudulent scheme, because legal services were insufficient to show operation or management of the enterprise); *Nastro*, 542 F. Supp.2d at 217 (collecting cases).

Recognizing that Mr. Bourdeau cannot be held liable on any of these bases, the Trustee has instead simply labeled him a racketeering "conspirator."  The Trustee should not be permitted to circumvent the established bars to aiding and abetting liability with conclusory assertions of a conspiracy to further or facilitate a racketeering enterprise.  *See Estate of Gottdiener v. Sater*, 35 F. Supp.3d 386, 400 (S.D.N.Y. 2014) (rejecting plaintiffs' attempt to circumvent bar against claims

for aiding and abetting securities fraud by alleging a claim for conspiracy to commit a RICO violation, stating that "it would be exceedingly odd if . . . Plaintiffs could not bring claims for aiding and abetting . . . or substantive RICO . . . , yet on identical facts could make out a claim for conspiracy to commit RICO with its potential for treble damages.").  The mere allegation that Mr. Bourdeau's legal services assisted the alleged enterprise, or facilitated a fraudulent conveyance, is simply inadequate.

A comparison to cases where RICO conspiracy claims against attorneys and other outside professionals were held to be adequately pleaded illustrates the inadequacy of the Trustee's allegations.  For example, in *Handeen v. Lemaire*, the Court declined to dismiss a RICO conspiracy claim against attorneys who themselves engaged in "an intricate scheme" of bankruptcy fraud, in which they (1) instructed the debtor to create sham debts through a fraudulent promissory note to his parents; (2) defended the parents' fraudulent claims in bankruptcy court; (3) instructed the debtor not to disclose certain debts to the bankruptcy court; (4) "formulated an artifice" through "exploitation of the postal service" by which the debtor concealed his income; and (5) prepared and promoted fraudulent repayment plans to the court.  112 F.3d 1339, 1344-45, 1350 (8th Cir. 1997).

In *Madanes v. Madanes*, a RICO conspiracy claim against an attorney was held to be adequately pleaded where the attorney was alleged to have engaged in a years-long scheme with his clients to divest his clients' sister of her ownership in the family's assets, by personally (1) diverting millions of dollars belonging to

an entity partially owned by his clients' sister to off-shore accounts in his clients' exclusive control, "an integral role in th[e] specific act of fraud"; (2) as director of a separate corporation, diverting millions of dollars from the corporation's subsidiaries, which the sister partially owned; (3) preparing and executing back-dated and fraudulent sale documents to conceal his clients' ownership of family artwork; (4) refusing the sister access to financial information to which she was entitled; and (5) perpetrating "various frauds to cover up" the scheme, including a false representation that he had resigned as a director of certain entities.  981 F. Supp. 241, 246-49, 251 (S.D.N.Y. 1997).  The Court concluded that the attorney's actions, "ranging from the restructuring of family assets, to drafting paperwork intended to negate [the plaintiff's ownership] interest . . . , to issuing false denials . . . , are of the type that logically would lead him to suspect that he was part of a larger conspiracy."  *Id.* at 259 (internal quotation marks omitted).

Similarly, in *JSC Foreign Economic Ass'n Technostroyexport v. Weiss*, the court held that a RICO conspiracy claim was adequately pleaded against an accountant on the basis of allegations that the accountant (1) prepared false tax returns; (2) misrepresented sale terms to his clients' counterparties; (3) disguised income as loans to avoid tax liability; (4) concealed stolen funds from the bankruptcy court; (5) created dummy corporations with consulting contracts to launder stolen money; and (6) devised a scheme to use stolen funds for real estate investments.  No. 06 Civ. 6095, 2007 WL 1159637, at *2-4, *11 (S.D.N.Y. Apr. 18, 2007).  In refusing to dismiss the claim, the Court noted that "the Complaint includes extensive allegations describing how [the accountant] worked with [his

17

clients] and others to conceal and launder funds through a variety of transactions, including allegations that [the accountant] advised [his clients] to employ certain money laundering schemes and shared an equity interest in at least one real estate project."  *Id.* at *11.

Here, unlike in *Handeen, Madanes*, and *JSC*, Mr. Bourdeau is not alleged to have himself engaged in fraudulent conduct, he is not alleged to have had continuous involvement in the alleged scheme, and he is not alleged to have formulated, assisted, or even been aware of the overwhelming majority of the alleged conduct.  Courts that have upheld RICO conspiracy claims against attorneys and other outside professionals have done so on the basis of allegations that the professionals' conduct far exceeded their typical professional role.  There are no such allegations here, even though the Trustee's Complaint was drafted with the benefit of "more than one hundred hours of testimony . . . and tens of thousands of pages of documents produced during discovery."  Compl. ¶ 286.  This discovery included hours of deposition testimony from Mr. Bourdeau, Scott and Roland LaBonte, and Mr. Sparveri, which elicited *no* evidence supporting the assertion that Mr. Bourdeau agreed to join a racketeering conspiracy.

Allowing the conspiracy claim against Mr. Bourdeau to proceed on the basis of these allegations would mean that an attorney who simply provides legal services to a client who subsequently engages in a purported racketeering scheme is subjecting himself to *treble damages* for injuries caused by his client.  Such a result is contrary to RICO pleading requirements, and renders

18

meaningless the bar against aiding and abetting liability under both RICO and fraudulent conveyance law.

<u>CONCLUSION</u>

The Trustee's allegations with respect to Mr. Bourdeau are insufficient as a matter of law.  Mr. Bourdeau is not alleged to have known about any acts of racketeering, let alone the conduct of an enterprise through a pattern of racketeering, and the proposition that he agreed to join a conspiracy to further or advance a criminal racketeering enterprise is simply not plausible.

Accordingly, Mr. Bourdeau respectfully requests that the Court grant his motion to dismiss.

Dated:        December 13, 2019

FINN DIXON & HERLING LLP

By: /s/ Alfred U. Pavlis
    Alfred U. Pavlis (ct08603)
    David R. Allen (ct30827)
    Finn Dixon & Herling LLP
    Six Landmark Square
    Stamford, CT 06901-2704
    Tel: (203) 325-5000
    Fax: (203) 325-5001
    apavlis@fdh.com
    dallen@fdh.com

*Attorneys for Paul Bourdeau, Esq.*

## CERTIFICATION

I hereby certify that on December 13, 2019 a copy of the foregoing

Individual Memorandum of Law in Support of Defendant Paul Bourdeau's Motion

to Dismiss the Complaint was filed electronically through the Court's electronic

filing system and served by mail on anyone unable to accept electronic filing.

Notice of this filing will be sent by e-mail to all parties by operation of the Court's

electronic filing system or by mail to anyone unable to accept electronic filing.

Parties may access this filing through the Court's CM/ECF System.

/s/ Alfred U. Pavlis
Alfred U. Pavlis (ct08603)
FINN DIXON & HERLING LLP
Six Landmark Square
Stamford, CT  06901-2704
Tel: (203) 325-5000
Fax: (203) 325-5001
E-mail: apavlis@fdh.com