# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

———————————————————————————

JAMES BERMAN, CHAPTER 7 TRUSTEE FOR     :     Case No. 3:19-cv-01533-VLB
THE SUBSTANTIVELY CONSOLIDATED          :
ESTATE OF MICHAEL S. GOLDBERG, LLC      :
AND MICHAEL S. GOLDBERG                  :
                                         :
                                         :
      Plaintiff,                          :
                                         :
v.                                       :
                                         :
SCOTT A. LABONTE, ET AL                  :
                                         :
      Defendants.                         :     DECEMBER 13, 2019
———————————————————————————               :


## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS BY SALLY A. LABONTE; SALLY A. LABONTE, TRUSTEE OF THE SCOTT A. LABONTE REVOCABLE TRUST; AND SALLY A. LABONTE, TRUSTEE OF THE SCOTT A. LABONTE DYNASTY TRUST

## Table of Contents

I.   ALLEGATIONS:.................................................................................... 1

II.  ARGUMENT:...................................................................................... 3

  A.  Pleading Standard:......................................................................... 4

  B.  The Predicate Act Allegations Are Insufficient:.............................. 6

    1.  Mail Fraud Pursuant to 18 U.S.C. §1341 ...................................... 7

    2.  Concealment and Fraudulent Transfer of Property Pursuant to 18 U.S.C. §152(7) ...................................................................................... 8

    3.  Obstruction of Justice Pursuant to 18 U.S.C. §§1503 and 1512.................. 9

    4.  Money Laundering Pursuant to 18 U.S.C. §§1956 and 1957 ...................... 11

  C.  The Complaint Fails to Adequately Allege that Ms. LaBonte Operated or Managed the Enterprise. ..................................................................... 13

  D.  The Plaintiff's Cause of Action Against Ms. LaBonte for RICO Conspiracy Must Also Be Dismissed. .................................................................. 18

III.  CONCLUSION ................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

**Allen v. New World Coffee, Inc.,**
   No. 00-CV-2610, 2002 WL 432685 (S.D.N.Y. Mar. 19, 2002) ...................... 4, 19, 20

**Allstate Ins. Co. v. Seigel,**
   312 F. Supp. 2d 260 (D. Conn. 2004) ............................................... 14, 17

**Ashcroft v. Iqbal,**
   556 U.S. 662 (2009) .................................................................. 5

**Azrielli v. Cohen Law Offices,**
   21 F.3d 512 (2d Cir. 1994) .......................................................... 14

**Beck v. Manufacturers Hanover Trust Co.,**
   820 F.2d 46 (2d Cir. 1987), abrogated on other grounds by United
   States v. Indelicato, 865 F.2d 1370 (2d Cir. 1989) .................................. 5

**Connecticut National Bank v. Fluor Corp.,**
   808 F.2d 957 (2d Cir.1987) ........................................................... 6

**Cortec Indus. v. Sum Holding L.P.,**
   949 F.2d 42 (2d Cir.1991) ............................................................ 6

**Crab House of Douglaston, Inc. v. Newsday, Inc.,**
   418 F. Supp. 2d 193 (E.D.N.Y. 2006) ................................................. 15

**D. Penguin Bros. v. City Nat. Bank,**
   587 F. App'x 663 (2d Cir. 2014) .................................................... 4, 5

**D'Addario v. D'Addario,**
   901 F.3d 80 (2d Cir. 2018), cert. denied, 139 S. Ct. 1331 (2019) ..................... 4

**Democratic Nat'l Comm. v. Russian Fed'n,**
   392 F. Supp. 3d 410 (S.D.N.Y. 2019) ................................................. 14

**Discon, Inc. v. NYNEX Corp.,**
   93 F.3d 1055 (2d Cir. 1996) vacated on other grounds 525 U.S. 128
   (1998) ............................................................................... 19

**Elsevier Inc. v. W.H.P.R., Inc.,**
   692 F. Supp. 2d 297 (S.D.N.Y. 2010) ................................................. 15

**First Capital Asset Mgmt., Inc. v. Satinwood, Inc.,**
   385 F.3d 159 (2d Cir. 2004) ........................................................ 6, 8

In re Fosamax Products Liab. Litig.,
No. 09–cv–1412, 2010 WL 1654156 (S.D.N.Y. Apr. 9, 2010) ................................... 5

In re Trilegiant Corp.,
11 F. Supp. 3d 132 (D. Conn. 2014) aff'd sub nom. Williams v.
Affinion Grp., LLC, 889 F.3d 116 (2d Cir. 2018) ......................................... 6, 19, 20

Goodman by Goodman v. Bremby,
No. 3:16-CV-00665 (MPS), 2017 WL 4169427 (D. Conn. Sept. 20,
2017).............................................................................................................. 4, 7

Kramer v. Time Warner Inc.,
937 F.2d 767 (2d Cir.1991) ................................................................................ 6

Moss v. Morgan Stanley, Inc.,
719 F.2d 5 (2d Cir. 1983), cert. denied sub. nom., Moss v. Newman,
465 U.S. 1025 (1984)........................................................................................ 5

In re Motel 6 Securities Litigation,
No. 93-CV-2183, 1997 WL 154001 (S.D.N.Y. Apr. 2, 1997) ................................... 19

Reeves v. Ernst & Young,
507 U.S. 170 (1993).................................................................................... 3, 14

Ross v. A.H. Robins Co.,
607 F.2d 545 (2d Cir.1979), cert. denied, 446 U.S. 946 (1980).............................. 6

Salinas v. United States,
522 U.S. 52 (1997)........................................................................................ 19

Schmidt v. Fleet Bank,
1998 WL 47827 (S.D.N.Y. Feb. 4, 1998) ................................................................ 4

Scott v. Town of Monroe,
306 F. Supp. 2d 191 (D. Conn. 2004)...................................................................... 5

Shams v. Fisher,
107 F.Supp.2d 266 (S.D.N.Y.2000) .................................................................. 14

Targum v. Citrin, Cooperman & Co., LLP,
2013 WL 6087400 (S.D.N.Y. Nov. 19, 2013) ......................................................... 7

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
551 U.S. 308 (2007)......................................................................................... 8

United States Fire Ins. Co. v. United Limousine Serv., Inc.,
303 F. Supp. 2d 432 (S.D.N.Y. 2004) ................................................................ 15

United States v. Aguilar,
   515 U.S. 593 (1995).................................................................. 9

United States v. Christo,
   129 F.3d 578 (11th Cir. 1997) ............................................... 11

United States v. Howard,
   569 F.2d 1331 (5th Cir. 1978) ............................................... 10

United States v. Kumar,
   617 F.3d 612 (2d Cir. 2010) ................................................. 10

United States v. McCarthy,
   271 F.3d 387 (2d Cir. 2001) ................................................. 11

United States v. Prevezon Holdings LTD.,
   122 F. Supp. 3d 57 (S.D.N.Y. 2015) ................................... 12

United States v. Pugh,
   937 F.3d 108 (2d Cir. 2019) .............................................. 9, 10

United States v. Phythian,
   529 F.3d 807 (8th Cir. 2008) ............................................... 11

United States v. Szur,
   289 F.3d 200 (2d Cir. 2002) ................................................. 11

United States v. Viola,
   35 F.3d 37 (2d Cir. 1994), abrogated on other grounds by Salinas
   v. United States, 522 U.S. 52 (1997).................................... 14

United States v. Workman,
   80 F.3d 688 (2d Cir.1996) .................................................... 18

**Statutes**

18 U.S.C. §152(7) ................................................................. 1, 8

18 U.S.C. §1341 .................................................................. 1, 7

18 U.S.C. §1503 .............................................................. 1, 9, 10

18 U.S.C. §1512 .............................................................. 1, 9, 10

18 U.S.C. § 1512(c)(2) .............................................................. 9

18 U.S.C. §1956 ............................................................... 1, 11

18 U.S.C. §1957 ............................................................... 1, 11

**18 U.S.C. §1962**................................................................................... **18, 19**

**18 U.S.C. §1962(c)** ......................................................................... **2, 3, 14**

**18 U.S.C. §1962(d)** ........................................................................ **3, 18, 19**

**Conn. Gen. Stat. §52-552(e) <u>et</u> <u>seq</u>**.................................................. **6**

**Other Authority**

**Fed. R. Civ. P. 9(b)**............................................................ **1, 4, 5, 6, 8, 12**

**Fed. R. Civ. P. 8(a)** ................................................................................. **5**

**Fed. R. Civ. P. 12(b)(6)** ..................................................................... **1, 5**

**Fed. R. Evid. 201**................................................................................... **6**

The Defendants, Sally A. LaBonte; Sally A. LaBonte, Trustee of the Scott A. LaBonte Revocable Trust; and Sally A. LaBonte, Trustee of the Scott A. LaBonte Dynasty Trust (collectively "Ms. LaBonte" unless otherwise noted) hereby separately move to dismiss the Complaint pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6).  Ms. LaBonte has joined in the collective Defendants' Motion to Dismiss and incorporates by reference the arguments made in the accompanying memorandum ("Collective Memo.")  This motion addresses the claims uniquely made against her.

## I.   ALLEGATIONS:

Ms. LaBonte is named in Count Four of the Complaint as a RICO Enterprise Defendant and in Count Five as a co-conspirator with the other Defendants. The Enterprise alleged by the Trustee is one devoted to "fraudulently transferring and concealing [Scott LaBonte's] assets and taking other actions to obstruct and impede [the Plaintiff] from satisfying" the judgment entered against Scott LaBonte ("Mr. LaBonte") in 2017.  *See* Complaint at ¶307.

Ms. LaBonte, along with others, is alleged to have been a principal in the Enterprise and to have participated in the operation and management of the organization.  *Id.* at ¶308 and ¶367.  She is accused of engaging in a pattern of racketeering activity consisting of predicate acts in violation of 18 U.S.C. §152(7), §1341, §1503, §1512, §1956, and §1957.  *Id.* at ¶¶370-377.  The specific actions allegedly undertaken by Ms. LaBonte are set forth in ¶387(d) of the Complaint which, in turn, refers to ¶76(a)-(p), ¶79, ¶97, ¶102, ¶109, ¶¶120-125 and ¶226 of the Complaint. Those paragraphs involve the 2010 transfer of assets ("2010

Transfers") owned by Mr. LaBonte either individually or through the Scott A. LaBonte Revocable Trust ("Rev. Trust") to the Scott A. LaBonte Dynasty Trust ("Dynasty Trust").  See Complaint at ¶71.  Ms. LaBonte is alleged to have accepted the transfer of certain assets in her capacity as a Dynasty Trust Trustee, executed certain assignment and assumption agreements to effectuate the transfers, *id.* at ¶76, and executed a 2010 Note and restated 2006 Note to the Rev. Trust in exchange for the assets received from it, *id.* at ¶97.  The Plaintiff alleges that after these transfers were made, Mr. LaBonte still exercised control over said assets with the permission of the Dynasty Trust Trustees, including Ms. LaBonte, *id.* at ¶102, and still received income from the assets, *id.* at ¶¶106-109.  Ms. LaBonte is also alleged to have endorsed checks drafted by Mr. LaBonte.  *Id.* at ¶121.  The Plaintiff alleges that Mr. LaBonte used the Dynasty Trust to shield and insulate his assets from attachment yet still had unfettered access to meet his personal business expenses. *Id.* at ¶133.

Based only upon the Trustee's "information and belief," Ms. LaBonte is also accused of being aware of, and approving in her capacity as a Dynasty Trust Trustee, the transfer of the business of Devcon Enterprises, Inc. ("Devcon"), a property development and management service, to DEI Property Management, LLC ("DEIPM") at the end of 2014.  *Id.* at ¶214, 226.  She is further alleged not to have taken any action to preserve what the Plaintiff believes is the Dynasty Trust's alleged rights to recover certain refinancing fees associated with mortgages on commercial properties managed by DEIPM.  *Id.* at ¶228.

Finally, Ms. LaBonte is alleged to have "unlawfully combined, conspired, confederated, and agreed" with the other Defendants to violate 18 U.S.C. §1962(c) as part of a racketing conspiracy pursuant to 18 U.S.C. §1962(d). The Plaintiff makes a conclusory allegation that Ms. LaBonte, and others, each knew about the nature of the purported Enterprise and that the Enterprise extended "beyond each Defendant's respective role." The only facts alleged specifically to Ms. LaBonte, however, reincorporate ¶76(a)-(p), ¶79, ¶97, ¶102, ¶109, ¶¶120-125 and ¶226 of the Complaint as purported violations of criminal predicate acts, which, as discussed below, fall short of the necessary showing.

## II.    ARGUMENT:

The allegations of the Complaint are insufficient to demonstrate liability on the part of Ms. LaBonte.  First, none of the actions undertaken by Ms. LaBonte, even if true, constitute predicate acts for which she could be held responsible.  In fact, the very conduct of which she stands accused is the subject of a separate, pending litigation by the Trustee, where she and others are described solely as being recipients of fraudulent transfers from Mr. LaBonte or his transferees.  The Plaintiff has now attached criminal labels to the same alleged conduct by Ms. LaBonte, but not added any new allegations to meet the elements of those crimes.

Second, in order to be subject to liability under 18 U.S.C. § 1962(c), one must "participate in the operation or management of the enterprise itself."  See *Reeves v. Ernst & Young*, 507 U.S. 170, 185 (1993). Therefore, the Trustee must "plausibly allege" that Ms. LaBonte "played some part in directing the

**3**

enterprise's affairs if the RICO claim is to survive a motion to dismiss." *D'Addario v. D'Addario*, 901 F.3d 80, 103–04 (2d Cir. 2018), *cert. denied*, 139 S. Ct. 1331 (2019). Here, the allegations do not demonstrate that Ms. LaBonte operated or managed the Enterprise in any way, especially when this Court considers the allegations of the separate, pending litigation against Ms. LaBonte by the Trustee.

Third, the conspiracy count against Ms. LaBonte cannot stand because the plaintiff has not plead that Ms. LaBonte was a party to any agreement that someone would commit at least two predicate acts. Moreover, because the underlying claims for RICO violations must be dismissed, the derivative claim for RICO conspiracy "is without a leg to stand on." *Allen v. New World Coffee, Inc.*, No. 00-CV-2610, 2002 WL 432685, at *6 (S.D.N.Y. Mar. 19, 2002).

A.      Pleading Standard:

"In the RICO context, a plaintiff must plead predicate acts sounding in fraud or mistake according to the particularity requirement of Rule 9(b)…." *D. Penguin Bros. v. City Nat. Bank*, 587 F. App'x 663, 666 (2d Cir. 2014); *Goodman by Goodman v. Bremby*, No. 3:16-CV-00665 (MPS), 2017 WL 4169427, at *5 (D. Conn. Sept. 20, 2017).  Fed. R. Civ. P. 9(b)'s particularity requirement is especially important in RICO actions involving multiple defendants because the connection to each defendant to the enterprise and the existence and nature of the alleged predicate acts are critical to sustain the claim.  *See Schmidt v. Fleet Bank*, 1998 WL 47827 at *5 (S.D.N.Y. Feb. 4, 1998) ("Rule 9(b)'s particularity requirements have even greater urgency in civil RICO actions. In cases with multiple defendants, Rule 9(b) requires that the complaint allege facts that specify each defendant's connection to the

4

fraud. General allegations against a group of defendants are insufficient." (Internal citations omitted. Internal quotations omitted.)). Therefore, the particularity requirements of Fed. R. Civ. P. 9(b) must be met with respect to each defendant. *See Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 19 (2d Cir. 1983), *cert. denied sub. nom.*, *Moss v. Newman*, 465 U.S. 1025 (1984).

Moreover, "to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must offer more than labels and conclusions in pleading the non-fraud elements of a RICO claim under Rule 8(a)." *D. Penguin Bros.*, 587 F. App'x at 666 (internal quotation marks and citations omitted). Instead, the complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For a complaint to survive a motion to dismiss, "[a]fter the court strips away conclusory allegations, there must remain sufficient well-pleaded factual allegations to nudge plaintiff's claims across the line from conceivable to plausible." *In re Fosamax Products Liab. Litig.*, No. 09–cv–1412, 2010 WL 1654156, at *1 (S.D.N.Y. Apr. 9, 2010); *accord Scott v. Town of Monroe*, 306 F. Supp. 2d 191, 198 (D. Conn. 2004).

This pleading burden extends to the requirement of pleading scienter with respect to the so-called criminal predicate acts. See, e,g, *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 49-50 (2d Cir. 1987), *abrogated on other grounds by United States v. Indelicato*, 865 F.2d 1370, 1378-1382 (2d Cir. 1989) ("[P]laintiffs must… provide some factual basis for conclusory allegations of intent. These factual allegations must give rise to a 'strong inference' that the defendants possessed the requisite fraudulent intent." (Internal citations omitted.)); *see also*

5

*Connecticut National Bank v. Fluor Corp.*, 808 F.2d 957, 961-62 (2d Cir.1987); *Ross v. A.H. Robins Co.*, 607 F.2d 545, 558 (2d Cir.1979), *cert. denied*, 446 U.S. 946 (1980). "[C]onclusory allegations of scienter without a coherent factual basis [are] insufficient to meet Rule 9(b)'s requirements." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 172 (2d Cir. 2004).

   **B.    <u>The Predicate Act Allegations Are Insufficient:</u>**

   The predicate act claims against Ms. LaBonte have been insufficiently plead. Previously, on May 31, 2014, the Plaintiff commenced an adversary proceeding against a series of defendants, including Ms. LaBonte, in the same capacities in which she is sued here.  *See* Complaint in *Berman v. Sally LaBonte, et al*, Adv. Proc. No. 14-02026 (ASD), available on the docket of the U.S. Bankruptcy Court, D. Conn., and attached hereto as "Exhibit 1" (the "Adv. Complaint").[1]  There, the Plaintiff claimed the 2010 Transfers constituted fraudulent transfers under Conn. Gen. Stat. §52-552(e) <u>et seq</u>.  <u>Compare</u> Adv. Complaint at ¶¶81-96 <u>with</u> Complaint at ¶¶76-100. As here, he alleged as well that Mr. LaBonte had retained control over the fraudulently transferred assets.   <u>Compare</u> Adv. Complaint ¶¶ 101-105 <u>with</u> Complaint at ¶¶101-109.  He complained that the investment of assets into the

---

[1] The Adv. Complaint is referenced in the Complaint in this action at ¶65 and may be considered in conjunction with this Motion to Dismiss. *In re Trilegiant Corp.*, 11 F. Supp. 3d 132, 137 (D. Conn. 2014) ("The Court may also consider matters of which judicial notice may be taken and documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."); see also *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir.1991) (permitting court to consider materials outside the complaint when they are integral to claims made by the plaintiff in the complaint); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773–74 (2d Cir.1991) (holding that a court "may also consider matters of which judicial notice may be taken under Fed.R.Evid. 201").

Dynasty Trust allowed Mr. LaBonte to pay his personal and business expenses, as he has alleged here.  Compare Adv. Complaint at ¶¶111-124 with Complaint at ¶¶110-125.  And, he complained about the ways in which the credits to the 2010 Promissory Note had been made as he has done in this action as well.  Compare Adv. Complaint at ¶¶125-128 with Complaint at ¶¶126-134.  In short, the present action is in large part nothing more than a reprise of the pending fraudulent transfer Adv. Complaint, with new labels as to Ms. LaBonte, but not new facts.  The Plaintiff's mere relabeling does not satisfy his pleading burden.  *Goodman*, 2017 WL 4169427 *5.[2]

      1.     **Mail Fraud Pursuant to 18 U.S.C. §1341**

Ms. LaBonte now stands accused of mail fraud in violation of 18 U.S.C. §1341 (Complaint at ¶369), yet there is no allegation that she mailed anything in relationship to the acts she stands accused of committing, a prerequisite to a violation of the statute, *Targum v. Citrin, Cooperman & Co., LLP*, 2013 WL 6087400, at *6 (S.D.N.Y. Nov. 19, 2013) (*quoting United States v. Autuori*, 2012 F.3d 105, 115 (2nd Cir. 2000)), let alone that whatever she allegedly mailed constituted fraud.  Moreover, as argued in the collective Defendants' Motion to Dismiss, the Plaintiff was not defrauded from collecting on any property interest he had since he had no interest in any assets until he had a judgment in 2017.  *See* Collective Memo. at Pgs. 35-41.

---

[2] The only new allegations in the present action that are not present in the Adversary Complaint are 1) based on information and belief only, that Ms. LaBonte approved of the transfer of Devcon's business to DEIPM, a conclusory allegation with absolutely no facts supporting it, Complaint at ¶226, and 2) Ms. LaBonte took no action to protect the Dynasty Trust's right to certain fees that could have been available to it, *id.* at ¶282.   These claims are discussed infra.

   2.  **Concealment and Fraudulent Transfer of Property Pursuant to 18 U.S.C. §152(7)**

  The Plaintiff claims that Ms. LaBonte violated 18 U.S.C. §152(7) by "knowingly and fraudulently transfer[ring] and conceal[ing] the property of the Sal Rev. Trust and the Dynasty Trust with an intent to defeat the provisions of title 11, namely by rendering property that could be used to satisfy the judgment [that would not be entered until seven (7) years later] uncollectable." Complaint at ¶371. These conclusory allegations do not satisfy Rule 9(b). *First Capital Asset Agreement, Inc.*, 388 F. 3d at 172. First, there are no facts plead, because none exist, that Ms. LaBonte knew in 2010 that a transfer of assets owned by Mr. LaBonte's Rev. Trust to his Dynasty Trust, would somehow mean that Mr. LaBonte would be unable to satisfy a judgment that would be entered against him seven years later in a case that was not yet filed. Scienter requires that a plaintiff prove that the defendant acted with "a mental state embracing intent to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007). The allegations as to Ms. LaBonte do not come close to meeting this burden.

  Second, what facts are plead undermine any inference of scienter. Ms. LaBonte is not alleged (a) to have attended the meeting at which the Enterprise was created, Complaint at ¶67,(b) to have been involved in what or how assets would be transferred, *id.* at ¶71, and (c) to have controlled the assets once they were transferred, id. at ¶¶102 and 109. In sum and substance, all that the Plaintiff has alleged is that she assigned certain assets from the Rev. Trust and accepted them into the Dynasty Trust, *id.* at ¶¶76, 79, and executed notes in consideration of those

assets, *id.* at ¶97.  There are no facts alleged to suggest she concealed anything nor that she was aware that the Dynasty Trust was allegedly underpaying for the assets it received.

### 3.    Obstruction of Justice Pursuant to 18 U.S.C. §§1503 and 1512

Ms. LaBonte also stands accused of obstruction of justice under 18 U.S.C. §1503 and §1512.  Complaint at ¶¶ 372 and 375.  Here again, having plead nothing more than a regurgitation of the Adversary Complaint with new labels as it pertains to Ms. LaBonte, it is clear that pleading the requisite elements of 18 U.S.C. §1503 and §1512 have not been met.

The obstruction statutes relied upon by the Trustee, in relevant part, impose criminal penalty on one who "corruptly" influences, obstructs, or impedes:  (i) "any official proceeding," 18 U.S.C. § 1512(c)(2); (ii) "the due administration of justice," 18 U.S.C. § 1503; or (iii) "any . . . officer in or of any court of the United States . . . in the discharge of his duty," *id.*  Sections 1503 and 1512 both require that the accused's conduct had a "relationship in time, causation, or logic with the judicial proceedings." *United States v. Pugh*, 937 F.3d 108, 120 (2d Cir. 2019); *United States v. Aguilar*, 515 U.S. 593, 599 (1995). The Complaint fails to come even close to pleading such a relationship.

With respect to each statute, the Plaintiff claims Ms. LaBonte obstructed the due administration of justice (Complaint at ¶373) and impeded an official proceeding: the Goldberg Debtors' bankruptcy proceeding (*id.* at ¶375), by frustrating his collection effort. Mr. LaBonte was not named in a suit until November 12, 2010, many months after the 2010 Transfers.  Complaint at ¶110; see also Malley-LaBonte Action, Adv. Proc. No. 10-02082, Docket No. 94, available on

the docket of the U.S. Bankruptcy Court, D. Conn., and attached hereto as "Exhibit 2."

As to 18 U.S.C. § 1503, there are therefore absolutely no facts alleged that any actions taken by Ms. LaBonte in connection with the 2010 Transfers months earlier could constitute some interference with a judicial procedure in a case that had not yet been filed. *United States v. Kumar*, 617 F.3d 612, 620 (2d Cir. 2010) ("[I]f the defendant lacks knowledge that his actions are likely to affect the judicial proceeding, he lacks the requisite intent to obstruct… [For example,] statements made to investigating agents who might or might not testify before a grand jury are insufficient to violate § 1503(a), because false testimony given in anticipation of a purely hypothetical judicial proceeding is not covered by § 1503(a)."); *United States v. Howard*, 569 F.2d 1331, 1337 (5th Cir. 1978) ("Section 1503 does not forbid interferences with doing 'justice' in the sense of 'fairness' and 'rightness[.]'… Instead, it forbids interference with the 'administration of justice,' which means judicial procedure" (citations omitted)).

Nor are there any allegations that Ms. LaBonte violated §1512, which "criminalizes obstructing, influencing, or impeding any official proceeding, or attempting to do so. An official proceeding" includes "a proceeding before a judge or court of the United States ... or a Federal grand jury." *Pugh*, 937 F.3d at 120. Clearly, Ms. LaBonte could not have impeded a lawsuit in which neither she nor her husband were sued, in relation to a prejudgment remedy attachment that had not yet been filed, and in anticipation of a judgment that would not enter until many years later.

4.      Money Laundering Pursuant to 18 U.S.C. §§1956 and 1957

The allegations of money laundering under 18 U.S.C. §§1956 and 1957 also fail.  In order to sustain his claim under §1956, the Plaintiff is required to show that Ms. LaBonte knew at the time of the 2010 Transfers that the assets "represented the proceeds of some form of unlawful activity," and those proceeds were then used to engage in a financial transaction. *United States v. McCarthy*, 271 F.3d 387, 395 (2d Cir. 2001).  Under §1957, the Plaintiff must allege and prove that Ms. LaBonte knowingly engaged in monetary transactions in criminally derived property, the value of which is greater than $10,000.  The Plaintiff has not sufficiently alleged these claims as to Ms. LaBonte.

First, as argued jointly by the Defendants, Collective Memo. at 41-44, the Plaintiff simply makes a circular argument that because, in his mind, the 2010 Transfers constitute violations of other criminal statutes the assets then represented the proceeds from unlawful activity.  That theory is inconsistent with the governing law that the unlawful activity must *precede* the alleged laundering transactions. See *United States v. Szur*, 289 F.3d 200, 213-14 (2d Cir. 2002*)* (holding that "when the underlying crime is completed, a transaction conducted with the proceeds from that crime may provide the basis for a money laundering conviction…funds become proceeds when they are derived from an already completed offense, or a completed phase of an ongoing offense."*); United States v. Phythian,* 529 F.3d 807, 813 (8th Cir. 2008) ("'[P]roceeds' are funds obtained from prior, separate criminal activity."); *United States v. Christo*, 129 F.3d 578, 580 (11th Cir. 1997) ("[T]he underlying criminal activity must be complete before money laundering can occur.").

11

Second, there is no allegation, nor could there be, that Ms. LaBonte somehow knowingly participated in the laundering of criminally derived assets from an unlawful activity. Rather, all that is alleged is that, as a Trustee of the Rev. Trust and the Dynasty Trust, she transferred certain assets, signed Assumption Agreements, and executed Notes to the Rev. Trust in exchange for those assets. It is not alleged that she was at the original meeting at which the purpose for the 2010 Transfers allegedly was devised, see Complaint at ¶¶63, 70 and 71, nor that she was aware of the valuation of the assets that were being transferred, *id.* at ¶¶82-88. She relied upon professionals who were counseling her and her husband. *Id.* One cannot establish scienter of a criminal money laundering violation without allegations that at a minimum establish Ms. LaBonte knew the assets which were the subject of the 2010 Transfer were themselves the fruits of unlawful activity. See *United States v. Prevezon Holdings LTD.,* 122 F. Supp. 3d 57, 74 (S.D.N.Y. 2015) (holding that "[t]o satisfy its burden for scienter under the money laundering statutes," the plaintiff must plead facts sufficient to support a reasonable belief that the defendant "intended to promote or conceal the proceeds" of unlawful activity, "or knowingly engaged in transactions involving criminally derived property").

The Plaintiff's allegations concerning Ms. LaBonte's conduct -- or lack of conduct -- concerning DEIPM does not rescue his Complaint. First, he claims, on information and belief only, that Ms. LaBonte "was aware of and, in her capacity as a [Dynasty Trust] Trustee, approved of the transfer of Devcon's business to DEIPM." The allegation does not come close to meeting Rule 9(b)'s particularity

requirement as it fails to suggest any misconduct on her part.  According to the Plaintiff's own Complaint, it was Roland LaBonte who rendered Devcon worthless and transferred its business to DEIPM and Mr. LaBonte who dissolved Devcon. Complaint at ¶225.  Ms. LaBonte is not implicated at all.  As for the fees the Plaintiff claims Devcon could have received, Complaint at ¶282, the Plaintiff's Complaint sets out in Paragraphs 268-281 how those fees were allegedly fraudulently transferred.  Ms. LaBonte is not mentioned once as having a role in that process other than to not act to protect the Dynasty Trust's claimed rights to those fees -- rights which are not explained and which are inconsistent with the Plaintiff's claim that DEIPM should never have had any interest in Devcon's business.

As a comparison of the Adversary Complaint and the present Complaint reveals, nothing new has been added that makes the claims against Ms. LaBonte actionable as RICO violations.  In large part, the Complaint is nothing more than the same fraudulent transfer action filed against her dressed up with criminal labels.  Without those labels, it is bereft of actual, plausible facts to show that Ms. LaBonte was a participant in the predicate acts the Plaintiff claims were undertaken by the Enterprise. Accordingly, Ms. LaBonte respectfully submits that the Plaintiff's RICO claims as to her for engaging in the so-called predicate acts are insufficient.

C.     **The Complaint Fails to Adequately Allege that Ms. LaBonte Operated or Managed the Enterprise.**

Even if the Plaintiff were to establish the presence of an enterprise that engaged in criminal predicate acts, which is denied, that is not enough to adequately plead that Ms. LaBonte violated RICO.  A person is liable under RICO only when she "conduct[ed] or participate[d], directly or indirectly, in the conduct

**13**

of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. §
1962(c).  This requirement has been interpreted by the Supreme Court to mean that
a plaintiff must demonstrate that the defendant had "some participation in the
operation or management of the enterprise itself."  *Reves v. Ernst & Young*, 507
U.S. 170, 185 (1993); *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 521 (2d Cir. 1994).

Importantly, the operation or management test under *Reves* has been
applied by numerous courts of the Second Circuit to dismiss cases where the
plaintiff did not sufficiently plead a defendant's participation in the direction of the
enterprise's affairs. *United States v. Viola*, 35 F.3d 37, 41 (2d Cir. 1994), *abrogated
on other grounds by Salinas v. United States*, 522 U.S. 52, 118 S.Ct. 469, 139 L.Ed.2d
352 (1997) ("Since *Reves*, it is plain that the simple taking of directions and
performance of tasks that are necessary or helpful to the enterprise, without more,
is insufficient to bring a defendant within the scope of § 1962(c)." (Internal
quotations omitted)). That is because there is a "substantial difference between
actual control over an enterprise and association with an enterprise in ways that
do not involve control; only the former is sufficient under *Reves* because the 'test
is not involvement but control.'" *Shams v. Fisher*, 107 F.Supp.2d 266, 274–75
(S.D.N.Y.2000) (*quoting Dep't of Econ. Dev. v. Arthur Andersen & Co.*, 924 F.Supp.
449, 466 (S.D.N.Y.1996)); *Allstate Ins. Co. v. Seigel*, 312 F. Supp. 2d 260, 275 (D.
Conn. 2004). "It is not enough to merely take directions and perform tasks that are
necessary and helpful to the enterprise.... Nor is it enough to simply provide goods
and services that ultimately benefit the enterprise." (Internal quotations omitted)
*Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 441 (S.D.N.Y. 2019);

14

see *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 307-08 (S.D.N.Y. 2010) (dismissing RICO claims against several individual defendants because "it is not enough to allege that a defendant provided services that were helpful to an enterprise, without alleging facts that, if proved, would demonstrate some degree of control over the enterprise"); *Crab House of Douglaston, Inc. v. Newsday, Inc.*, 418 F. Supp. 2d 193, 207 (E.D.N.Y. 2006); *United States Fire Ins. Co. v. United Limousine Serv., Inc.,* 303 F. Supp. 2d 432, 451-52 (S.D.N.Y. 2004).

Divorced from labels and conclusory allegations (*see* Complaint at ¶367), there are absolutely no facts to suggest that Ms. LaBonte played any role in the management or control of the Enterprise.  Ms. LaBonte is not alleged to have participated in the formation of the Enterprise or the decision of which assets to transfer.  *See* Complaint at ¶¶63 and 71.  The Plaintiff claims that she did not control the assets once they were placed in the Dynasty Trust.  According to the Plaintiff, Mr. LaBonte was the party in control.  Complaint at ¶¶102 and 109.  Ms. LaBonte signed the 2010 and Restated 2006 Notes in favor of the Rev. Trust in exchange for the assets that the Dynasty Trust received, but there is no allegation that she was aware of any concern with the valuation of those assets.  The Trustee makes no allegation that she was involved in the valuation process at all.  *See* Complaint at ¶¶82 – 100.  Even after the Dynasty Trust funds were deposited into its own account, Complaint at ¶112, the Plaintiff alleges that it was Mr. LaBonte who diverted the funds, *id.* at ¶117, even going so far as to note that it was Mr. LaBonte who drafted the checks drawn on the Dynasty Trust account which Ms. LaBonte then simply endorsed.  *Id.* at ¶¶120,121.

These allegations are consistent with how the Plaintiff has described Ms. LaBonte's actions in his presently pending Adversary Complaint.  Describing the 2010 Transfers, the Plaintiff has said that Mr. LaBonte would "retain complete control over the subject entities and the income they produced through his management company, Devcon, and his ability to dominate and control the Trustees of the Dynasty Trust: his wife, his father and his and his family accountant for thirty to thirty-five years."  Adv. Complaint at ¶81.  Describing the Assignment Agreements that effectuated the transfer of assets to the Dynasty Trustee, Plaintiff says that Ms. LaBonte, and others, executed them "at the direction and subject to the control of Scott LaBonte."  Adv. Complaint at ¶94.  Referring to the execution of the 2010 Note as payment for the transferred assets to the Rev. Trust, Plaintiff says that Ms. LaBonte, and others, "executed the Promissory Note… at the direction and subject to control of Scott LaBonte." Adv. Complaint at ¶95.  Once the assets were transferred, the Plaintiff explained that "Scott LaBonte retained complete domination and control [over the assets], the income they generated, and, at times, the sales proceeds derived from their account…"  Adv. Complaint at ¶101.  With respect to the money deposited into the Dynasty Trust bank account, it is Mr. LaBonte who the Plaintiff claims deposited the income, Adv. Complaint *at* ¶111, or others did so at his direction, Adv. Complaint at ¶112.   It is Mr. LaBonte, and only Mr. LaBonte, who the Plaintiff claims "exercised complete dominion and control of the Dynasty Trust account and the use of its funds and otherwise."  *Id.* at ¶116. The Plaintiff has even gone so far as to say that Ms. LaBonte exercised "no

16

independent judgment and engaged in the acts on behalf of the Dynasty Trust based solely on the direction of Scott LaBonte." *Id.* at ¶121.

It is thus clear that rather than exercise any management or control over the Enterprise, Ms. LaBonte, according to the allegations of the Complaint, as supported by the Plaintiff's allegations in the pending Adv. Complaint, acted solely at the direction and control of Mr. LaBonte. Further, her actions were, in fact, inactions – not exercising control over the assets as a Dynasty Trust Trustee, not managing their performance and the income they derived, not withholding payments to Mr. LaBonte and others. *Id.* at ¶¶ 81, 94-95, 101, 116, 121; Complaint at ¶109, 120 – 124, 129, 133, 282. This is clearly not enough to meet the operation or management test under *Reves*.

Even the allegations concerning DEIPM, vague as they are, do not show any management or control. In Paragraph 226, Ms. LaBonte "on information and belief, was aware of … and approved the transfer of Devcon's business to DEIPM." Whether she was or was not aware of the transfer, it hardly amounts to anything suggesting that she exercised management and control, as simply knowing of an act and participating in it are two different things. See *Allstate*, 312 F. Supp. 2d at 275 (holding that "the operation and management test ... is a very difficult test to satisfy ... There is a substantial difference between actual control over an enterprise and association with an enterprise in ways that do not involve control; only the former is sufficient under *Reves*"). Likewise, and to that end, there are no facts alleged to support any claim that she approved of the transfer of Devcon's business to DEIPM.   There is no reference to any document or agreement

17

manifesting said approval.  Nor are there any allegations as to how the approval somehow ties into the notion of managing or controlling the Enterprise.

To the contrary, according to the Complaint, it was Scott and Roland LaBonte who allegedly orchestrated and controlled the 2015 Devcon/DEIPM Transactions.  This is made particularly obvious with reference to ¶282 of the Complaint, where the Trustee claims that Ms. LaBonte did not take any action to protect the Dynasty Trust's rights to receive certain refinance fees.  While again not supported by any facts, the allegation in and of itself suggests nothing more than inaction or passivity, not the exercise management or control.  *United States v. Workman*, 80 F.3d 688, 696 (2d Cir.1996) ("A defendant might well have performed helpful acts without playing any part in directing the enterprise's affairs." (internal citation omitted)).  Accordingly, the Plaintiff's failure to plead facts that would meet the threshold of the Supreme Court's operation or management test under *Reves* requires dismissal of the RICO claim against her.

### D.   The Plaintiff's Cause of Action Against Ms. LaBonte for RICO Conspiracy Must Also Be Dismissed.

Just as the Plaintiff has failed to adequately plead a claim against Ms. LaBonte for a substantive violation of RICO, so too has the Plaintiff failed to sufficiently allege a claim for RICO conspiracy. To be liable for a RICO conspiracy under 18 U.S.C. § 1962(d), there must be an agreement to employ a pattern of racketeering activity, or the proceeds thereof, so as to effect an enterprise as described in 18 U.S.C. § 1962. This requires the plaintiff to make a two-part showing: (1) that the defendant agreed to facilitate the operation of an enterprise through a pattern of racketeering activity; and (2) that the defendant agreed with

18

someone to commit at least two predicate acts. *In re Motel 6 Securities Litigation*, No. 93-CV-2183, 1997 WL 154011 at *5 (S.D.N.Y. Apr. 2, 1997); *Salinas v. United States*, 522 U.S. 52, 65 (1997) (holding that the conspirator still must adopt the goal of furthering or facilitating the conspiracy).

Conclusory allegations regarding a RICO conspiracy are not sufficient to withstand dismissal. In *In re Trilegiant Corp.,* 11 F. Supp. 3d at 108-09, this Court dismissed claims by plaintiffs that were only supported by allegations made "in a conclusory fashion that the Defendants agreed with each other to enter into a conspiracy to, and did, in fact, conduct and participate in the affairs of the RICO Enterprise…." Despite the fact that the Plaintiffs explicitly alleged the existence of agreements, because the Plaintiffs never alleged specific details of how the agreement came to be, this Court found that the claims were insufficiently plead. *Id.* (holding "that mere knowledge of a conspiracy's actions" is not enough)

Moreover, if the claims for substantive RICO violations have been dismissed, the claim for RICO conspiracy pursuant to 18 U.S.C. § 1962(d) cannot survive. See *Discon, Inc. v. NYNEX Corp.,* 93 F.3d 1055, 1064 (2d Cir. 1996) *vacated on other grounds* 525 U.S. 128 (1998) ("Any claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient."); *Allen*, 2002 WL 432685, at *6 ("The dismissal of all of plaintiffs' RICO claims leaves the conspiracy cause of action without a leg to stand on.").

The non-conclusory allegations against Ms. LaBonte do not demonstrate any agreement to facilitate the operation of the purported enterprise, nor any

agreement with someone to commit at least two predicate acts, as each of the claimed predicate acts have been demonstrated to have not been met. See Section III.B., *supra*. Without specific, non-conclusory allegations of an actual agreement by Ms. LaBonte to further the enterprise through a pattern of racketeering activity and commit predicate acts, the RICO conspiracy count against Ms. LaBonte must be dismissed.

This is especially true considering the allegations against Ms. LaBonte do not meet the Supreme Court's operation or management test under *Reves*, as previously argued. There are simply no facts alleged which take the limited acts undertaken by Ms. LaBonte, described by the Plaintiff in the Adversary Complaint as being the recipient of alleged fraudulent transfers, and convert them into a claim for a conspiracy to engage in a RICO enterprise grounded in criminal acts.

Furthermore, as the claims against Ms. LaBonte for RICO violations cannot withstand dismissal, see discussion *supra* and the Collective Memo at 10-59, so too must Count Five for conspiracy to commit said RICO violations be dismissed as they are "without a leg to stand on." *Allen*, 2002 WL 432685, at *6; *In re Trilegiant Corp.*, 11 F. Supp. 3d at 108 ("In this circuit, analysis of any RICO conspiracy claim begins with the premise that it necessarily fails where the underlying substantive claim is insufficiently pled.").

III.   **CONCLUSION**

WHEREFORE, for the reasons stated herein and in the Defendants' combined Motion to Dismiss, which is adopted in its entirety by Ms. LaBonte by reference, Ms. LaBonte respectfully requests that this Court dismiss all claims presently pending against her.

**PULLMAN & COMLEY, LLC**
**By:  /s/ James T. Shearin**
**James T. Shearin,  ct 01326**
**Thomas S. Lambert, ct29561**
**Pullman & Comley LLC**
**850 Main Street**
**P.O. Box 7006**
**Bridgeport, CT 06601-7006**

*Attorneys for Scott A. LaBonte,*
*individually and as Trustee of the*
*Scott A. LaBonte Revocable Trust,*
*and Sally A. LaBonte, individually and*
*as Trustee of the Scott A. LaBonte*
*Revocable Trust and Trustee of the*
*Scott A. LaBonte Dynasty Trust*

**SHIPMAN, SHAIKEN & SCHWEFEL,**
**LLC**
**David M.S. Shaiken ct02297**
**Shipman, Shaiken & Schwefel, LLC**
**433 South Main Street, Suite 319**
**West Hartford, CT 06110**

**Of Counsel**
*Attorneys for Scott A. LaBonte,*
*individually and as Trustee of the*
*Scott A. LaBonte Revocable Trust,*
*and Sally A. LaBonte, individually and*
*as Trustee of the Scott A. LaBonte*
*Revocable Trust and Trustee of the*
*Scott A. LaBonte Dynasty Trust*

21