**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **JAMES BERMAN, CHAPTER 7 TRUSTEE FOR THE SUBSTANTIVELY CONSOLIDATED ESTATE OF MICHAEL S. GOLDBERG, LLC AND MICHAEL S. GOLDBERG** | : | **Case No. 3:19-cv-01533-VLB** |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **SCOTT A. LABONTE, ET AL** | : | |
| | : | |
| **Defendants.** | : | **DECEMBER 13, 2019** |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT**
**<u>ROBERT LANDINO'S MOTION TO DISMISS</u>**

## <u>TABLE OF CONTENTS</u>

**Page(s)**

**I.   INTRODUCTION AND OVERVIEW** ……………………………….. **1**

**II.  FACTUAL ALLEGATIONS AND BACKGROUND** ……………… **2**

**III. ARGUMENT** ……………………………………………………….. **6**

    **A. THE CLAIMS AGAINST DEFENDANT LANDINO ARE
       NOT RIPE BECAUSE THE QUESTION WHETHER HIS
       CONDUCT SATISFIES THE STANDARD FOR A
       FRAUDULENT CONVEYANCE REMAINS PENDING
       BEFORE THE BANKRUPTCY COURT, AND SHOULD BE
       DECIDED BY THAT COURT** …………………………….. **6**

    **B. THE PLAINTIFF HAS FAILED TO MEET THE
       NECESSARY PLEADING STANDARD FOR ALLEGING A
       VIABLE RICO CONSPIRACY CLAIM** ………………………. **8**

    **C. THE RICO CONSPIRACY CLAIM SHOULD BE
       DISMISSED BASED ON PLAINTIFF'S FAILURE TO
       PLEAD A VIABLE SUBSTANTIVE RICO VIOLATION
       UNDER SECTION 1962(c)** …………………………….. **11**

    **D. THE COMPLAINT FAILS TO ALLEGE A LEGALLY
       SUFFICIENT RICO ENTERPRISE, OR THAT LANDINO
       ASSOCIATED WITH SUCH AN ENTERPRISE** ………….. **12**

    **E. PLAINTIFF HAS NOT SUFFICIENTLY ALLEGED ANY
       OF THE PREDICATE ACTS OF RACKETEERING
       ASSERTED AGAINST MR. LANDINO** ……………………. **14**

**CONCLUSION** …………..………………………………………… **16**

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

<u>Ashcroft v. Iqbal</u>, **556 U.S. 662 (2009)** …………………………… **8, 9, 10**

<u>American Dental Association v. Cigna Corp.</u>, **605 F.3d 1283 (11th Cir. 2010)** ……………………………………………...… **8, 9**

<u>Bankers Trust v. Rhoads</u>, **859 F.2d 1096 (2d Cir. 1988)** …………. **6**

<u>Bell Atlantic Corp. v. Twombly</u>, **550 U.S. 544 (2007)** …………….. **8, 9, 10**

<u>Boyle v. United States</u>, **556 U.S. 938 (2009)** ………………………. **13**

<u>D. Penguin Bros. v. City National Bank</u>, **587 Fed. App'x. 663 (2d Cir. 2014)** ……………………………………………….... **8**

<u>D'Addario v. D'Addario</u>, **901 F.3d 80 (2d Cir. 2018)**, <u>cert. denied</u>, **139 S.Ct. 1331 (2019)** …………………………….. **6, 7, 13**

<u>Discon, Inc. v. NYNEX Corp.</u>, **93 F.3d 1055 (2d Cir. 1996)**, <u>vacated on other grounds</u>, **525 U.S. 128 (1998)** …………. **11**

<u>First Nationwide Bank v. Gelt Funding Corp.</u>, **27 F.3d 763 (2nd Cir. 1994)** ………………………………………………….. **6**

<u>In re Trilegiant</u>, **11 F.Supp.3d 82 (D.Conn. 2014)**, <u>aff'd sub nom Williams v. Affinion Group, LLC</u>, **889 F.3d 116 (2d Cir. 2018)** …………………………………………………. **11**

<u>Motorola Credit Corp. v. Uzan</u>, **322 F.3d 130 (2d Cir. 2003)** ….. **6, 7**

<u>Rao v. BP Products of North America, Inc.</u>, **589 F.3d 389 (7th Cir. 2009)** ……………………………………………… **9**

<u>Salinas v. United States</u>, **522 U.S. 52 (1997)** …………………… **11**

<u>Stochastic Decisions v. DiDomenico</u>, **995 F.2d 1158 (2d Cir. 1993)** …………………………………………………….... **6**

<u>United States v. Sessa</u>, **125 F.3d 68 (2d Cir. 1997)** …………… **11**

<u>United States v. Turkette</u>, **452 U.S. 576 (1981)** ……………….... **12**

ii

**Statutes**

**18 U.S.C. § 152(1)** ............................................................. **14**

**18 U.S.C. § 152(7)** .............................................................**14**

**18 U.S.C. § 1343** ............................................................. **15**

**18 U.S.C. § 1956** ............................................................. **16**

**18 U.S.C. § 1961(4)** ......................................................... **12**

**18 U.S.C. § 1962(c)** ..................................................... **9, 11, 12**

**18 U.S.C. § 1962(d)** ........................................................ **11**

**C.G.S. §§ 52-552a, <u>et</u> <u>seq.</u>** ..................................... **1, 4, 6, 7, 8, 15**

**Rules**

**Fed. R. Civ. P. 9(b)** ...................................................... **8, 11**

**Fed. R. Civ. P. 12(b)(1)** ................................................... **1**

**Fed. R. Civ. P. 12(b)(6)** ................................................... **1**

## I.    INTRODUCTION AND OVERVIEW

Defendant Robert Landino respectfully submits this Memorandum of Law in further support of his motion, pursuant to Fed. R. Civ. P. 12(b)(1) and (6), to dismiss the complaint in this matter ("Complaint").  In support of this motion, defendant Landino adopts and incorporates by reference the arguments set forth in the Joint Memorandum ("Joint Mem.") filed on behalf of all defendants in support of the motion to dismiss.  This memorandum highlights and addresses in further detail certain factual and legal issues specific to Mr. Landino.

This case is, at its core, a deeply flawed and legally dubious fraudulent conveyance action dressed up as a sprawling civil RICO claim.  As we discuss below, Mr. Landino was sued by the same Trustee, alleging the same facts, in 2016, on a theory of fraudulent conveyance under the Connecticut Uniform Fraudulent Transfer Act, Conn. Gen. Stat. §§ 52-552a et seq ("CUFTA").  Extensive discovery was conducted, and in October 2018 Mr. Landino moved for summary judgment, claiming that the undisputed facts of the transactions at issue could not, as a matter of law, meet the statutory definition of a fraudulent conveyance, and that the Trustee's action should be dismissed.

Rather than respond to that motion, the Trustee has now, in effect, doubled down – alleging that the same conduct at issue in the prior CUFTA action constituted criminal predicate acts under the RICO statute, undertaken as part of a far-flung racketeering conspiracy with Scott LaBonte and others, the alleged goal of which was to frustrate and defeat the plaintiff Trustee's efforts to collect from Scott LaBonte on behalf of the bankruptcy estate.  It is clear, however, from

Plaintiff's allegations in this and the earlier lawsuit that Mr. Landino, unlike other parties to the alleged conspiracy, was neither a member of the LaBonte family nor a professional performing work on behalf of a LaBonte family member or related entity; that Landino and his alleged co-conspirator Scott LaBonte were actually adversaries in litigation; that Mr. Landino never was, and never agreed to be, part of an ongoing group that remotely satisfies the RICO requirement of a viable "enterprise"; and that Mr. Landino never engaged in predicate criminal acts.

The Complaint should be dismissed in its entirety for the myriad reasons set forth in the Joint Memorandum: standing, ripeness, statute of limitations, failure to allege legally sufficient predicate acts of racketeering necessary to establish a "pattern," failure to allege a legally sufficient enterprise distinct from any alleged "pattern" and failure to allege sufficient threat of ongoing or continuing criminal activity.  In this memorandum, we discuss separately several of these points as they apply specifically to Mr. Landino – in particular, ripeness and the failure to meet applicable pleading standards for alleging a RICO conspiracy, or a RICO enterprise.  As to any arguments not addressed separately, we rely on the Joint Memorandum.  The Complaint against Mr. Landino is legally flawed and factually baseless; it should be dismissed.

## II.   FACTUAL ALLEGATIONS AND BACKGROUND

The extent to which Mr. Landino is an outlier in this matter is evident from the introductory paragraphs to the Complaint.  The core allegation in the case is the existence of an "association-in-fact enterprise that began on June 2, 2010," consisting of "certain members of [Scott LaBonte's] family and certain

professionals who had been performing services for [Scott LaBonte] for decades." The alleged goal of this "enterprise" was to preserve and protect Scott LaBonte's assets, and prevent the Goldberg trustee from recovering money from him. Complaint, ¶¶ 4-5.

Mr. Landino is named only in Count Five, the RICO conspiracy claim. Plaintiff does not, and of course cannot, allege that Mr. Landino was a LaBonte family member, a professional performing services on behalf of LaBonte or his family, or involved in any way in activity beginning on June 2, 2010. Instead, the Complaint centers on five business transactions in 2012-2013 between Mr. Landino and LaBonte, or LaBonte entities, by which Mr. Landino bought out LaBonte's interest in several real estate joint ventures, and severed business ties with LaBonte. See generally Complaint, ¶¶ 160-213. Each of these transactions, plaintiff alleges, "transformed an illiquid [LaBonte] asset into cash," Complaint, ¶¶ 161, 172, 178, 185, 190, which supposedly hindered the trustee's efforts to collect from LaBonte. Plaintiff does not allege that the amount paid by Mr. Landino was in any way inadequate, or that the two somehow colluded to depress artificially the amount of money received by LaBonte in the buy-outs. Indeed, as plaintiff alleges, Mr. Landino sued LaBonte in 2012, prior to any of the real estate transactions at issue. Complaint, ¶ 143.

The plaintiff filed an adversary proceeding in 2016 against Mr. Landino in the United States Bankruptcy Court for the District of Connecticut. Berman v. Landino, Case No. 16-02042, filed May 16, 2018 ("the Adversary Proceeding"). In that action, like this one, the plaintiff claimed that Mr. Landino and certain of his

companies had participated in a series of fraudulent transfers with LaBonte and certain LaBonte-controlled companies as part of a scheme to hinder, defraud and delay the plaintiff in his efforts to collect a debt from LaBonte.  The case was brought pursuant to CUFTA.  In particular, the plaintiff alleged that the LaBonte-controlled companies had transferred to Mr. Landino their membership interests in certain real estate ventures that had invested in properties in Connecticut and Rhode Island.  <u>See</u> Second Amended Complaint in the Adversary Proceeding, ECF #82, ¶¶ 40-44, 58-60, 62-64, 68-70, 72-73, 75, 77-79.

A side-by-side comparison of the factual allegations in the Second Amended Complaint in the Adversary Proceeding with the factual allegations of the Complaint in this matter reveals that they are virtually identical, as Figure 1 below demonstrates.  There is nothing different substantively in the allegedly actionable behavior alleged in the two documents, except for the addition of numerous conclusory statements that Mr. Landino's actions in carrying out the same allegedly fraudulent conveyances as are alleged in the Adversary Proceeding are also RICO predicate criminal acts, done pursuant to an alleged RICO conspiracy.

**Figure One**

| Adversary Proceeding | RICO Action |
|---|---|
| ¶40 | ¶¶24,135 |
| ¶41 | ¶¶135, 140 |
| ¶42 | ¶136 |
| ¶43 | ¶138 |
| ¶44 | ¶137 |
| ¶58 | ¶160 |
| ¶59 | ¶160 |
| ¶60 | ¶161 |
| ¶62 | ¶171 |
| ¶63 | ¶171 |
| ¶64 | ¶172 |
| ¶68 | ¶177 |
| ¶69 | ¶177 |
| ¶70 | ¶178 |
| ¶72 | ¶189 |
| ¶73 | ¶189 |
| ¶75 | ¶190 |
| ¶77 | ¶184 |
| ¶78 | ¶184 |
| ¶79 | ¶185 |

Mr. Landino has vigorously defended the Adversary Proceeding, and all factual discovery has been completed.  See Adversary Proceeding, ECF #127

(extending fact discovery deadline to April 9, 2018 for completion of last fact witness deposition (Mr. Landino)).  On October 9, 2018, Mr. Landino moved for summary judgment on all counts of the Adversary Proceeding directed against him and his affiliate companies (Id., at ECF # 144).  Plaintiff has never replied to that motion, despite the passage of more than 14 months.  As in the present case, the plaintiff in the Adversary Proceeding also claims that the five transfers at issue "transformed an illiquid asset into cash" (see Complaint, ¶¶ 161, 172, 178, 185, 190).  The Motion for Summary Judgment argues, among other things, that even if this is true, it does not constitute a violation of CUFTA.

III.    ARGUMENT

    A.    THE CLAIMS AGAINST DEFENDANT LANDINO ARE NOT RIPE,
        BECAUSE THE QUESTION WHETHER HIS CONDUCT SATISFIES
        THE STANDARD FOR A FRAUDULENT CONVEYANCE REMAINS
        PENDING BEFORE THE BANKRUPTCY COURT, AND SHOULD BE
        DECIDED BY THAT COURT

The Joint Memorandum discusses at some length the "ripeness" rules applicable to RICO cases.  Joint Mem. at 12 -18.  The general rule is that actions or claims for debts that are owed but not collected are not ripe if proceedings to collect the amount claimed to be owed are pending in another forum.  See D'Addario v. D'Addario, 901 F.3d 80, 93 (2d Cir. 2018), cert. denied, 139 S.Ct. 1331 (2019); Motorola Credit Corp. v. Uzan, 322 F.3d 130, 135-36 (2d Cir. 2003); First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 769 (2d Cir. 1994); Stochastic Decisions v. DiDomenico, 995 F.2d 1158, 1165-66 (2d Cir. 1993); Bankers Trust v. Rhoades, 859 F.2d 1096, 1105-06 (2d Cir. 1988).  The Court has stated that "since

'RICO treble damages are netted against recovery obtained from collateral and other sources', the outcome of the parallel proceedings could significantly affect the total amount owed . . . and . . . this fundamental uncertainty renders the case not ripe for adjudication".  D'Addario, 901 F.3d at 93 (quoting Motorola Credit, 322 F.3d at 135-36).  "The RICO statute as construed in [this] Circuit simply does not provide a remedy before a plaintiff has suffered reasonably ascertainable damages."  D'Addario, 901 F.3d at 95.

As noted in the Joint Memorandum, there are three pending actions brought by the Trustee based on the same transactions alleged in the Complaint here:  two against LaBonte parties or related entities, and the Adversary Proceeding discussed above.  The action against Mr. Landino is notably different not simply because it does not include any family members or entities related to Scott LaBonte, but also because it is the only case in which a summary judgment motion has been filed.  The motion goes to the very core of the allegations in this case; put otherwise, if the Landino-LaBonte transactions at issue are found as a matter of law not to be fraudulent conveyances, they certainly cannot be deemed legally sufficient RICO predicate acts.  In addition, under the Circuit's ripeness authorities, if the Trustee's CUFTA claims against Mr. Landino fail, plaintiff cannot be deemed to have suffered "reasonably ascertainable damages." D'Addario, 901 F.3d at 95.  Until this critical issue has been resolved in the parallel Bankruptcy Court proceeding, this matter is not ripe for adjudication, and should be dismissed.

This analysis extends not just to the Trustee's "lost debt" claim, Joint Mem. at 12 - 18, but also to the Trustee's claim for costs incurred in seeking to collect assets to be used to satisfy the SAL judgment. Complaint, e.g., ¶ 391.  If, as we have argued, Mr. Landino did nothing wrong in the real estate transfers at issue, then the Trustee cannot credibly claim he is liable for its collection costs. This case is not ripe for consideration by this Court until the critical CUFTA question has been adjudicated.

The Berman v. Landino matter was temporarily stayed by consent prior to the filing of this action, and the Trustee has recently moved to extend that stay. Mr. Landino has objected, arguing that, before he is forced to defend this action, he is entitled to have his summary judgment motion considered and adjudicated. This motion is currently scheduled to be taken up by the Bankruptcy Court on January 14, 2020.

## B.   THE PLAINTIFF HAS FAILED TO MEET THE NECESSARY PLEADING STANDARD FOR ALLEGING A VIABLE RICO CONSPIRACY CLAIM

All federal pleadings must of course meet the pleading standards set out in Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).  The requirement that a complaint contain sufficient factual matter to make the claim for relief plausible on its face, and not merely conclusory, is particularly important in RICO actions such as this, sounding in fraud.  Courts have held that such actions "must comply not only with the plausibility criteria articulated in Twombly and Iqbal but also with Fed. R. Civ. P. 9(b)'s heightened pleading standard, which requires that '[i]n alleging fraud or mistake, a party must state with particularity the circumstances surrounding the fraud or

mistake.'"  <u>American Dental Association v. Cigna Corp.</u>, 605 F.3d 1283, 1291 (11th Cir. 2010); <u>see also</u> <u>D. Penguin Bros. v. City National Bank</u>, 587 F. App'x, 663, 666 (2d Cir. 2014).

Courts have also applied the rule requiring pleading of plausible facts, rather than rote legal conclusions, to RICO conspiracy claims.  In <u>American Dental Association</u>, the Court found that the allegations of a plaintiff's complaint "do not support an inference of an agreement to the overall objective of the conspiracy or an agreement to commit two predicate acts."  605 F.3d at 1293. The Court noted that "formulaic recitations" of concerted activity – such as a claim that defendants "have not undertaken the above practices and activities in isolation, but instead have done so as part of a common scheme or plan" are not sufficient under <u>Twombly</u> or <u>Iqbal</u>.  <u>Id</u>. at 1293-94.  Instead, the Court considered the remaining factual allegations "[a]fter eliminating the wholly conclusory allegations of conspiracy."  <u>Id</u>. at 1294.  <u>See</u> <u>also</u> <u>Rao v. BP Products of North America, Inc.</u>, 589 F.3d 389 (7th Cir. 2009) (affirming dismissal of RICO conspiracy claim containing only boilerplate conspiracy allegations).

The conspiracy claim against Mr. Landino rests on similar conclusory, general allegations – with little or no specific factual allegations about concerted activity with one or more defendants.  Plaintiff claims that the defendants "have unlawfully, knowingly, and willfully combined, conspired, confederated, and agreed together and with others to violate 18 U.S.C. § 1962(c) . . ."  Complaint, ¶ 384.  It is difficult to imagine a more generalized, formulaic assertion.  In a similar vein are claims that "[e]ach defendant knew about and agreed to facilitate the

Enterprise to Obstruct the Goldberg Trustee by way of the acts in which he or she engaged . . .",  Complaint, ¶ 388, and that each defendant "engaged in the acts as alleged herein, possessing a knowledge of at least the general contours of the conspiracy. . .", Complaint, ¶ 386.

When one looks beyond these sweeping conclusory legal assertions, as applicable law requires, there are no facts alleged as to Mr. Landino that would support a claim that he knowingly joined together with other defendants to commit predicate acts of racketeering.  Plaintiff attempts to meet its burden with its claim that

> By and through each Defendant's close personal and/or professional relationship with SAL and involvement in the LaBonte Family real estate business, each defendant knew the nature of the [RICO] Enterprise to Obstruct the Goldberg Trustee and each Defendant knew that the Enterprise to Obstruct the Goldberg Trustee extended beyond each Defendant's respective role.

Id., ¶ 385.  Plaintiff's other allegations, however, make clear that, by 2012 and 2013 (the time period relevant to Mr. Landino), he did not have a "close personal and/or professional relationship" with LaBonte.  By the time of the first transfer, on May 18, 2012 (Complaint, ¶ 160), the lawsuit that Mr. Landino had filed against LaBonte had already been pending for nearly a month (Complaint, ¶ 143).  In addition, Plaintiff also does not allege that Mr. Landino was involved in the June 2010 meeting to which Plaintiff ascribes such importance, or among the universe of the other purported conspirators related to Scott LaBonte by blood, marriage, or professional relationship.  In short, Plaintiff's RICO conspiracy allegations as

to Mr. Landino do not meet the standards of <u>Twombly/Iqbal</u> and Rule 9(b), and the claim should also be dismissed on that basis.

      C.      **THE RICO CONSPIRACY CLAIM SHOULD BE DISMISSED BASED ON PLAINTIFF'S FAILURE TO PLEAD A VIABLE SUBSTANTIVE RICO VIOLATION UNDER SECTION 1962(c)**

The Joint Memorandum discusses at length the many reasons why the Complaint fails to state a substantive RICO violation – in particular, the failure to allege legally sufficient predicate acts of racketeering (and therefore a "pattern" of racketeering activity).   Joint Mem. at 26 - 44.  As noted, Plaintiff does not allege a substantive RICO violation against Mr. Landino, only a conspiracy count under Section 1962(d).  A RICO conspiracy claim requires proof that a defendant entered into an agreement to violate one of the substantive provisions of the RICO statute.  <u>United States v. Sessa</u>, 125 F.3d 68, 71 (2d Cir. 1997); the goal alleged in this case is a violation of 18 U.S.C. § 1962(c).  Complaint, ¶ 384.  The Supreme Court has held that a RICO conspirator does not necessarily have to agree personally to commit the required RICO predicate acts, but must still agree on the commission of the required criminal behavior.  <u>Salinas v. United States</u>, 522 U.S. 52, 63-65 (1997).  Here, however, Plaintiff alleges that Mr. Landino himself engaged in acts of racketeering as part of the alleged Section 1962(d) violation.  Complaint, ¶¶ 386, 387(f).

The failure of a substantive RICO claim is fatal to a Section 1962(d) conspiracy claim.  <u>Discon, Inc. v. NYNEX Corp.</u>, 93 F.3d 1055, 1064 (2d Cir. 1996), <u>vacated on other grounds</u>, 525 U.S. 128 (1998); <u>see</u> <u>also</u> <u>In re Trilegiant Corp.</u>, 11

F. Supp.3d 82, 108 (D. Conn 2014), aff'd sub nom Williams v. Affinion Group, LLC, 889 F.3d 116 (2d Cir. 2018).  Therefore, if the Court agrees with one of the many arguments advanced by defendants alleged to have violated Section 1962(c), and dismisses the substantive RICO counts, the conspiracy claim against Mr. Landino must also be dismissed.

> D.   THE COMPLAINT FAILS TO ALLEGE A LEGALLY SUFFICIENT RICO  ENTERPRISE, OR THAT LANDINO ASSOCIATED WITH SUCH AN ENTERPRISE

As set forth in the Joint Memorandum, Plaintiff in this case attempts to rely on the so-called "association-in-fact" theory of a RICO "enterprise," 18 U.S.C. § 1961(4) -  a group of persons associated together for a common purpose, separate and apart from the alleged racketeering activity claimed to have been undertaken.  See generally Joint Mem. at 47 - 49 (discussing United States v. Turkette, 452 U.S. 576, 583 (1981) and other relevant authorities).  The deficiencies in the Complaint's enterprise allegations are discussed at length in the Joint Memorandum.  Joint Mem. at 47 - 51.

Plaintiff does not allege that Mr. Landino was a "principal" in the "Enterprise to Obstruct the Goldberg Trustee."  Complaint, ¶ 308.  Indeed, he is not named as an "Enterprise Participant."  Id.  Instead, Plaintiff alleges generally that "all Defendants" conspired to violate Section 1962(c), "knowing of at least the general contours" of the 'Enterprise to Obstruct,' and having "willfully associated themselves with it."  Complaint, ¶ 308.

Such generalized boilerplate allegations are plainly insufficient to meet the pleading requirements discussed in Section III(B) above.  The facts as to

"association" are simple and straightforward:  Mr. Landino had a business relationship with Scott LaBonte, through several real estate joint ventures.  <u>See</u> generally Complaint, ¶¶ 135-41.  Plaintiff does not allege any relationship between Mr. Landino and any other LaBonte family member, nor any relationship between Mr. Landino and any of the professional defendants.[1]  He is not alleged to have attended the June 2, 2010 meeting, or to have been involved in any way in the activity to have resulted from that meeting.  Complaint, ¶¶ 62-109.

The Second Circuit has stressed that "individuals who act 'independently and without coordination' may not be treated as part of a RICO association-in-fact."  <u>D'Addario</u>, 901 F.3d at 101 (quoting <u>Boyle v. United States</u>, 556 U.S. 938, 947 n.4 (2009).  In <u>D'Addario</u>, the Court drew a distinction between individual dealings with one alleged member of an enterprise, as opposed to collective activity undertaken pursuant to a common agreement and goal.  <u>D'Addario</u>, 901 F.3d at 101. The latter, in the Court's view, much satisfy the <u>Boyle</u> enterprise test, but the former would not.  The Court ultimately concluded In <u>D'Addario</u> that the plaintiff had not pleaded a legally sufficient association-in-fact enterprise.  <u>Id</u>. at 102.

The "enterprise" allegations as to Mr. Landino here are similarly lacking, and the Complaint should be dismissed on that basis.

---

[1]  Defendant Marks is alleged to have served as counsel for SAL, e.g., Complaint, ¶ 165, so to the extent that is considered a "relationship" with Landino, it clearly is an adverse one.

E.   PLAINTIFF HAS NOT SUFFICIENTLY ALLEGED
     ANY OF THE PREDICATE ACTS OF RACKETEERING
     ASSERTED AGAINST MR. LANDINO

The Joint Memorandum sets out a thorough analysis of the many deficiencies in Plaintiff's predicate act allegations.  Joint Mem. at 27- 44.  We adopt and rely on that analysis, and add the following with respect to the predicate acts alleged as to Mr. Landino.  Complaint, ¶ 387(h).  The critical point to keep in mind throughout this analysis is that, even if his conduct is found to be a fraudulent conveyance – which of course we sharply dispute – that does not meet Plaintiff's burden; instead, Plaintiff must plausibly plead <u>criminal</u> violations eligible as predicate acts under RICO.

<u>Bankruptcy Fraud – Sections 152(1) and 152(7)</u> – Mr. Landino is not alleged to have any connection to a bankruptcy estate, nor to have concealed anything from such an estate.  The only allegation in the Complaint is that Mr. Landino was aware that an adversary proceeding had been brought against Scott LaBonte, and a $5 million prejudgment remedy ordered.  Complaint, ¶ 145.  Plaintiff does not allege anything beyond this "mere knowledge," and certainly not that he either concealed property of a debtor's estate, or transferred property in contemplation of a subsequent bankruptcy filing.

<u>Obstruction of Justice</u> – Plaintiff does not claim that the Landino-LaBonte real estate transactions were connected in any way to "any official proceeding," the "due administration of justice," or an "officer" or "court of the United States." Joint Mem. at 32 - 33.  Under Plaintiff's theory, Mr. Landino's buy-outs of LaBonte

somehow made it more difficult for the Trustee to collect from him.[2]  Whatever the merits of this claim, there is no theory under which private transactions between parties to a joint business venture can be tied to official court proceedings.  The criminal statutes have never been read so broadly (nor, under the rule of lenity, should they be), and the obstruction of justice claim is borderline frivolous.

**Wire Fraud –** Plaintiff does not allege that Mr. Landino was attempting to defraud the transferor (or anyone else, for that matter, including the Plaintiff) by engaging in the LaBonte real estate transactions.  There is no allegation, for example, that Mr. Landino deceived or swindled the transferor by obtaining the interests in the limited liability companies that owned membership interests in the joint venture entities at an unfair, disproportionately low price.  Further, there are certainly no allegations suggesting that Mr. Landino deceived, defrauded or swindled the Plaintiff in participating in these transfers.  Plaintiff has not alleged, and indeed cannot allege, that he had a property interest in the transferred assets at the time of the transactions.  The wire fraud statute, 18 U.S.C. § 1343, requires such an interest – as well as a scheme to defraud.  The facts alleged, as we have argued here and in the Adversary Proceeding, do not support a finding of a CUFTA violation; they certainly cannot form the basis of a wire fraud charge.

---

[2]  It is far from clear how "transform[ing] an illiquid asset into cash," the gravamen of Plaintiff's complaint about each of the transfers (Complaint, ¶¶ 161, 172, 178, 185, 190), is in Plaintiff's view an impediment to potential enforcement of a judgment.  Plaintiff does not articulate a theory in its Complaint; one would think transforming a debtor's assets from illiquid entities into cash would help, not hinder, the cause of any creditor hoping to collect from that debtor.

**Money Laundering – A violation of the money laundering statute, 18 U.S.C. § 1956, requires, as a threshold matter, some "specified unlawful activity" and a subsequent financial transaction with the proceeds of that activity.  Plaintiff has alleged that the LaBonte-Landino real estate transfers were fraudulent under Connecticut law – but has <u>never</u> claimed they were illegal, or somehow generated ill-gotten gains.  Again, there is a critical difference between conduct alleged to violate state law regarding fraudulent transfers and conduct running afoul of federal criminal law.  The Complaint is devoid of any such allegations as to Mr. Landino.**

<u>**CONCLUSION**</u>

**For the foregoing reasons, and for the reasons stated in the Joint Memorandum, the Complaint against Robert Landino should be dismissed.**

**THE DEFENDANT,
ROBERT A. LANDINO**

**By:    <u>/S/ David T. Grudberg</u>
Thomas J. Sansone (ct00671)
David T. Grudberg (ct01186)
Carmody, Torrance, Sandak
& Hennessey LLP
195 Church Street, P.O. Box 1950
New Haven, CT 06509-1950
203-777-5501 (T)/203-784-3199 (F)
<u>tsansone@carmodylaw.com</u>
<u>dgrudberg@carmodylaw.com</u>**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify a copy of the foregoing Memorandum of Law in Support of Defendant Robert Landino's Motion to Dismiss was filed electronically on December 13, 2019.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.


 /s/ David T. Grudberg
David T. Grudberg