# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| | : Case No. 3:19-cv-01533-VLB |
| **JAMES BERMAN, Chapter 7 Trustee** | : |
| **for the Substantively Consolidated Estate** | : |
| **of Michael S. Goldberg, LLC** | : |
| **and Michael S. Goldberg,** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| **v.** | : |
| | : |
| **SCOTT A. LABONTE, ET AL.,** | : |
| | : |
| **Defendants.** | : |
| | : **DECEMBER 13, 2019** |

## MEMORANDUM OF LAW OF DEFENDANTS LAWRENCE J. MARKS AND JULIANO & MARKS, LLC IN SUPPORT OF MOTION TO DISMISS

## Table of Contents

I.  INTRODUCTION AND FACTUAL BACKGROUND ............................................. 1

II. ARGUMENT ................................................................................................... 4

   A.  Legal Standard ...................................................................................... 4

   B.  Because the Trustee has not alleged a legally-sufficient
       substantive RICO claim against any of the Defendants, any
       claims of RICO conspiracy against Marks must necessarily fail ........ 5

   C.  The Trustee has failed as a matter of law to state a claim for
       RICO conspiracy under 18 U.S.C. § 1962(d) because he has not
       alleged that Marks agreed to join a RICO enterprise ........................... 5

   D.  The Trustee has failed as a matter of law to state a claim for
       RICO conspiracy against Marks because he has not alleged that
       Marks committed "acts of racketeering" ............................................. 9

       1.  Marks' alleged acts do not constitute obstruction of
           justice ........................................................................................ 11

       2.  Marks' alleged acts do not constitute wire fraud ..................... 14

       3.  Marks' alleged acts do not constitute bankruptcy fraud ......... 16

   E.  The Trustee cannot establish that any alleged RICO violations
       by Marks caused his alleged injury ..................................................... 18

   F.  The vicarious liability claim against J&M should be dismissed ........ 19

III. CONCLUSION ............................................................................................. 20

## I.   INTRODUCTION AND FACTUAL BACKGROUND

Defendants Lawrence J. Marks ("Marks") and his firm, Juliano & Marks, LLC ("J&M"), submit this Memorandum of Law in support of their Motion to Dismiss the claims asserted against them by Plaintiff James Berman, Chapter 7 Trustee (the "Trustee").[1]  For numerous reasons outlined below, the Trustee has failed to state a claim for RICO conspiracy, the only claim brought against Marks.[2]

This case is just the latest of several attempts by the Trustee to recover funds allegedly owed by Defendant Scott LaBonte ("LaBonte") due to LaBonte's claimed involvement in the Michael Goldberg Ponzi scheme, which unraveled in 2009.  Having already brought several adversary proceedings against various defendants to no avail, the Trustee has decided to cast a wider net.  This time, he has targeted Marks, a 29-year veteran of the Connecticut bar with an unassailable ethical record and sterling reputation in the legal community who provides occasional legal services to LaBonte and his businesses.  And the Trustee has done so in the most flimsy way imaginable: by alleging that Marks' performance of routine legal work, and nothing more, constitutes involvement in a "RICO conspiracy."  Despite the Trustee's apparent effort to plead in great detail, his 101-page Complaint lacks any facts that would make Marks or his firm liable as RICO conspirators.  Specifically, the Trustee has not made a single specific

---

[1] In addition to the arguments set forth in this memorandum, Marks and J&M adopt and incorporate by reference all arguments made in the Joint Memorandum of Law in Support of Defendants' Motions to Dismiss the Complaint ("Joint Mem.") filed by all Defendants this same date.

[2] The only claim against J&M is vicarious liability based solely on Marks' alleged actions.

allegation of how Marks agreed, in any way, to participate in a RICO enterprise. Nor has there been a single allegation that Marks spoke with a substantive RICO defendant about furthering a RICO enterprise.  Such facts simply do not exist.  At bottom, there are absolutely no facts—alleged or not—that would support the far-reaching and, quite frankly, farfetched claims of the Trustee.

At most, the Trustee has alleged that Marks served as counsel for certain other Defendants in two sets of transactions.  First, Marks was involved in papering the resolution of hotly-contested litigation between two Defendants who were previously business partners, LaBonte and Robert Landino ("Landino").  It is undeniable that LaBonte and Landino were in a bitter dispute, involving multiple attorneys on both sides, and that the transfers of certain limited liability company interests resolved that dispute.  *See* Compl. ¶¶ 154-194.  But the Trustee does not—and cannot—explain how or why those transfers were improper.[3] Second, Marks, for a modest legal fee, formed a limited liability company, DEI Property Management, LLC ("DEIPM").  *See id.* ¶¶ 214-256.  While the Trustee purports to use this transaction as part of the basis for his RICO claim, Marks maintains that he was simply providing routine legal services to his clients.[4]

---

[3] Those transfers are the subject of another lawsuit, *Berman v. Landino*, Adv. Pro. No. 16-02042, in which the Trustee claims that the transactions were fraudulent. The Trustee is now dodging an adjudication of that issue.

[4] This transaction has also been the subject of a previous lawsuit, *Berman v. DEI Property Mgmt., LLC*, Adv. Pro. No. 17-02029, claiming that the creation of DEIPM was fraudulent.  Significantly, neither Marks nor his firm is mentioned anywhere in that lawsuit as having had anything to do with the formation of DEIPM or the alleged fraudulent transfer of assets to it.  That action was stayed but certain of the RICO Defendants are now seeking to lift the stays in that case and the other related cases.

Using these narrow sets of events and a very modest level of participation by Marks, the Trustee alleges that Marks is a RICO conspirator.  But under well-established law, to be a RICO conspirator, one must actually agree to join a RICO enterprise.  In addition, a RICO conspirator must be found to have committed an overt act constituting an "act of racketeering" as defined by the RICO statute. Here, any argument by the Trustee that Marks agreed to join a RICO enterprise or committed any racketeering acts (specifically, obstruction of justice, wire fraud, or bankruptcy fraud) is way over the top and not supported by any reading of the facts alleged by the Trustee.  Marks did not have the scienter required to violate the criminal statutes alleged, and equally importantly, many of the facts necessary to prove a violation of those statutes are lacking.

Aside from its many pleading deficiencies, the Complaint must also be dismissed because the Trustee will not be able to establish causation for his alleged injury.  The Trustee admits that the act rendering LaBonte insolvent was the transfer of LaBonte's assets to the Scott A. LaBonte Dynasty Trust ("SALDT").  *See* Compl. ¶¶ 71-72.  But the Trustee does not allege that Marks played any role in the formation of that trust or this transfer of assets, all of which occurred long before the earliest alleged act by Marks.  As such, any events in which Marks allegedly played a role, such as the Landino transfers and the formation of DEIPM, cannot be said to be the source of direct injury to the Trustee in his efforts to collect a judgment from LaBonte, and the Trustee cannot establish that Marks was a factual or proximate cause of the alleged RICO injury.

For reasons more fully discussed below, as well as those articulated in

3

Defendants' Joint Memorandum, the participation of Marks in those discrete activities, the kind which an attorney typically performs every day for his clients, does not give rise to RICO conspiracy.  In the end, the Trustee's effort to assert RICO liability by Marks as a conspirator, and by his firm J&M based on vicarious liability, is no different than trying to force a square peg into a round hole.

## II.   ARGUMENT

### A.   Legal Standard.

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges whether the complaint states claims upon which relief can be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The function of a motion to dismiss is "to assess the legal feasibility of the complaint, not to assess the weight of the evidence which might be offered in support thereof."  *Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984).  Thus, when deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader.  *Hishon v. King*, 467 U.S. 69, 73 (1984).  The complaint, however, must contain factual allegations sufficient "to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 556, and plaintiff must amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible.  *Ashcroft*, 129 S. Ct. at 1949. Moreover, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."  *Smith v.*

4

*Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002).

> **B.    Because the Trustee has not alleged a legally-sufficient substantive RICO claim against any of the Defendants, any claims of RICO conspiracy against Marks must necessarily fail.**

The claims against Marks allege one thing: RICO conspiracy under 18 U.S.C. § 1962(d).  However, as demonstrated in Defendants' Joint Memorandum, the Complaint fails to state a claim for substantive RICO violations against any of the Defendants.  *See* Joint Mem. at 26-59.  Therefore, under well-established law, the conspiracy claims must also fail.  *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004) (trial court properly dismissed RICO conspiracy claim when plaintiffs did not adequately allege a substantive violation of RICO); *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2d Cir. 1996), *vacated on other grounds,* 525 U.S. 128 (1998) ("Since we have held that the prior claims do not state a cause of action for substantive violations of RICO, the present claim does not set forth a conspiracy to commit such violations."); *In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 82, 108 (D. Conn. 2014), *aff'd sub nom. Williams v. Affinion Grp., LLC*, 889 F.3d 116 (2d Cir. 2018) ("In this circuit, analysis of any RICO conspiracy claim begins with the premise that it necessarily fails where the underlying substantive claim is insufficiently pled.").  As a result, if the substantive RICO claims are dismissed against the other Defendants, the RICO conspiracy claims against Marks should be dismissed as well.

> **C.    The Trustee has failed as a matter of law to state a claim for RICO conspiracy under 18 U.S.C. § 1962(d) because he has not alleged that Marks agreed to join a RICO enterprise.**

The only claim alleged against Marks is RICO conspiracy under 18 U.S.C. § 1962(d).  That statute provides that "[i]t shall be unlawful for any person to

5

conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."  The Trustee must therefore establish that Marks conspired with someone to violate a substantive RICO provision, that Marks "adopt[ed] the goal of furthering or facilitating the criminal endeavor."  *Salinas v. United States*, 522 U.S. 52, 65 (1997).  In such a situation, courts are very particular as to what a plaintiff must allege; a plaintiff must do more than simply allege the existence of a conspiracy to violate one of the substantive RICO provisions or a defendant's knowledge of such a conspiracy.  The plaintiff must go further and make sufficient specific factual allegations that the defendant agreed to join the conspiracy.  The Trustee has failed to do so here.

The Second Circuit and several of its trial courts (including this one) have addressed this issue.  For example, in *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21 (2d Cir. 1990), the plaintiff attempted to plead a RICO conspiracy by alleging that the defendants "conspir[ed] with agents, servants, and employees and others to conduct their affairs through a pattern of racketeering activity;… [and were] conspiring to violate provisions of" the RICO statute.  *Id.* at 25.  The court held that this was not sufficient to plead a claim of RICO conspiracy:

> [the complaint] does not allege facts implying any agreement involving each of the defendants to commit at least two predicate acts. Because the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement.

*Id.*

Similarly, in *Trilegiant*, this Court found that a RICO conspiracy claim had not been adequately pleaded where the plaintiffs did no more than allege the

defendant's knowledge of the conspiracy.  Dismissing the case, the Court held

that more specific allegations of the defendant's agreement to join the conspiracy

were required:

> If the Plaintiffs do not need to allege an actual enterprise to fulfill the
> requirements for a RICO conspiracy claim, they must at the very least
> allege an agreement to commit the predicate acts . . . <u>Here, the
> Plaintiffs allege in a conclusory fashion that the "Defendants agreed
> with each other to enter into a conspiracy". . . The Plaintiffs never
> allege, however, how or when all of the Defendants formed such an
> agreement.</u> The Plaintiffs explicitly allege the existence of agreements
> between [the alleged conspirators] . . . but they do not allege one
> agreement where all of the Defendants conspired together to engage
> in one fraudulent scheme . . . All the Plaintiffs have done is "taken a
> series of events involving various individuals and entities, and
> various communications among them, and attempted to 'connect the
> dots,' hoping that when they finish, a RICO claim will emerge. . . ."
>
> *   *   *
>
> [T]he Plaintiffs are attempting to allege, it seems, that mere
> knowledge of a conspiracy's actions makes the person with that
> knowledge liable as a co-conspirator. <u>Knowledge alone cannot be
> enough to subject a person to criminal and civil liability for
> conspiracy. Without alleging an agreement, the Plaintiffs cannot
> show that the Defendants have in fact agreed to conspire together to
> violate RICO</u>.

11 F. Supp. 3d at 108-09 (emphasis supplied; citations omitted).

Other courts in this circuit have reached similar results when dealing with

conclusory allegations of agreements to enter into a RICO conspiracy.  *See, e.g.,*

*Schmidt v. Fleet Bank*, 16 F. Supp. 2d 340, 354 (S.D.N.Y.1998) (granting motion to

dismiss where plaintiff attempted to plead RICO conspiracy by alleging simply

that defendants "by their words and/or actions, manifested their agreement that

each would commit, agree to commit, or conspire to commit, two or more of the

racketeering acts . . . in furtherance of the common purpose of the [RICO]

Enterprise"); *Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986 (E.D.N.Y.

7

1995) (dismissing claim containing only "general and conclusory allegations" of civil RICO conspiracy).

Here, the allegations against Marks are similarly lacking in specifics, stating in conclusory fashion that Marks allegedly conspired with his co-defendants.  As to Marks, the Trustee's RICO conspiracy allegations are, *in toto*, as follows:

- Marks and the other Defendants "unlawfully, knowingly, and willfully combined, conspired, confederated, and agreed together and with others" to violate the RICO statute;

- Marks knew the nature of the RICO Enterprise and knew that the Enterprise extended beyond his role;

- Marks "engaged in the acts as alleged herein, possessing knowledge of at least the general contours of the conspiracy, with the intent to further or facilitate" the RICO Enterprise;

- Marks participated in the Landino transfers and DEIPM creation, which "constitute violations of, *inter alia*, 18 USC §§ 1343, 152, 1503, and/or 1512";

- Marks "knew about and agreed to facilitate" the RICO Enterprise by way of the alleged acts "and/or through explicit agreement amongst some or all of the Defendants."

Compl., Count 5, ¶¶ 384-388.

As a plain reading of these allegations clearly demonstrates, the Trustee has not even attempted to allege facts supporting a claim that Marks agreed to become part of any RICO conspiracy.  The Trustee can only muster conclusory statements that Marks and the other Defendants "conspired, confederated, and agreed" to violate the RICO statute and that they "knew about and agreed to facilitate" the RICO enterprise.  The Trustee has not made—and cannot make—any specific allegations of an agreement by Marks to join the alleged conspiracy. The Trustee only alleges that Marks, when doing legal work for his client

LaBonte, had "knowledge" of the alleged effort to prevent the Trustee from enforcing his judgment against LaBonte.  *See, e.g.,* Compl. ¶¶ 169-170.  In discussing the business transactions papered by Marks, the Trustee repeatedly states that Marks "knew of the Enterprise to Obstruct the Goldberg Trustee" or that Marks acted while "knowing of the existence and purpose of the Enterprise to Obstruct the Goldberg Trustee."  But the Trustee <u>never</u> alleges facts showing that Marks <u>actually agreed</u> to become part of this enterprise.  *See, e.g., id.* ¶¶ 174, 176, 181, 183, 188, 192.  In short, the Trustee's Complaint here, like the dismissed claims in *Trilegiant* and other cases cited above, simply alleges in a conclusory fashion that Marks agreed to join a conspiracy, but it never alleges any specifics as to how or when Marks joined.  All the Trustee really has alleged is potential knowledge by Marks, but knowledge "cannot be enough to subject a person to criminal and civil liability for conspiracy."  *Trilegiant*, 11 F. Supp. 3d at 109.[5]

Given these meager factual allegations, the Trustee has failed to plead in sufficient detail that Marks ever agreed to join any alleged RICO enterprise.  The Complaint should therefore be dismissed as to Marks and J&M.

> D. <u>The Trustee has failed as a matter of law to state a claim for RICO conspiracy against Marks because he has not alleged that Marks committed "acts of racketeering."</u>

In their Joint Memorandum, the Defendants explain how the Trustee's

---

[5] Significantly, the Trustee attempts to provide factual details about the creation of the alleged RICO enterprise, identifying a so-called "RICO meeting" attended by some of the Defendants on June 2, 2010.  *See* Compl. ¶ 63.  But the Trustee does not allege that Marks was present at or otherwise contributed to this meeting, nor does the Trustee provide <u>any</u> other factual allegations of <u>any</u> subsequent actions through which Marks manifested an intent or agreement to join in the alleged RICO enterprise.

Complaint fails to allege any predicate acts of racketeering necessary to state a claim under RICO.  *See* Joint Mem. at 26-44.  Marks will not restate those arguments here, but he writes separately to emphasize that the Trustee's Complaint fails to make sufficient allegations of racketeering activity as to Marks and his firm, attorneys who at most were providing routine legal advice and services.

This last point is crucial: even if all of the Trustee's allegations are taken as true, all they show is that Marks was doing legal work for a client, and an attorney is not subject to RICO liability for simply furnishing legal advice.  *Cadle Co. v. Flanagan*, No. 3:01-cv-531 (AVC), 2005 WL 1039005 (D. Conn. May 2, 2005); *Biofeedtrac, Inc. v. Kolinor Optical Enterprises & Consultants, S.R.L.*, 832 F. Supp. 585, 591 (E.D.N.Y. 1993).  The Trustee attempts to support his claim of RICO conspiracy by alleging that Marks committed various racketeering acts— specifically, wire fraud, bankruptcy fraud, and obstruction of justice.  But there was no "fraud" involved in Marks' work, and no "obstruction of justice."  The notion that the legal work performed by Marks may have created more work for the Trustee as he attempted to collect a judgment from Scott LaBonte (and Marks denies this, as discussed below) does not mean that Marks was involved in any "racketeering acts."[6]  The Complaint fails, as a result, to state a claim for RICO

---

[6] It bears emphasis that these violations of criminal acts are alleged against Marks even though his activity was limited, as noted, to two narrow activities: (1) preparing documents that resolved bitter, contested litigation between feuding partners, LaBonte and Landino, that involved multiple attorneys on both sides; and (2) the formation of DEIPM, a limited liability company.  It is beyond dispute that Marks did not receive anything more than a standard and modest fee for his

(continued...)

conspiracy, and the claims against Marks and J&M should be dismissed.[7]

        1.    <u>Marks' alleged acts do not constitute obstruction of justice.</u>

     The Trustee alleges that Marks committed "racketeering acts" because his alleged acts constituted obstruction of justice under 18 U.S.C. §§ 1503 and/or 1512.  Federal courts across the country have had numerous opportunities to decide whether an attorney's actions while representing a client can constitute obstruction of justice under these statutes.  In short, where, as here, an attorney simply provides legal advice to a client, courts have been loath to deem this "obstruction of justice" within the meaning of the statutes.  Rather, courts will find an attorney liable for obstruction of justice only where there has been some corrupt activity by the attorney, something rising to the level of perjury, suborning perjury, fabricating evidence, or otherwise misleading the court.

     For example, courts have found attorneys liable for obstruction of justice in the following cases: *United States v. Schaffner*, 715 F.2d 1099 (6th Cir. 1983) (attorney knowingly hid an individual who was a witness against his client to

_____

(...continued)

work, and the Trustee correctly does not allege that Marks or J&M received additional compensation beyond their standard fee.

[7] The only claim alleged against Marks is RICO conspiracy.  While the Joint Memorandum details how the Trustee has failed to allege any substantive RICO violations, the Complaint similarly fails to state a claim for RICO conspiracy because a plaintiff lacks standing to bring suit for RICO conspiracy under 18 U.S.C. § 1962(d) for injuries caused by an overt act that is not an "act of racketeering" or otherwise unlawful under the RICO statute.  *See Beck v. Prupis*, 529 U.S. 494, 507 (2000); *Book v. Mortg. Elec. Registration Sys.*, 608 F. Supp. 2d 277, 282-83 (D. Conn. 2009) (Underhill, J.) (citing *Beck* and finding that plaintiff "failed to raise a colorable RICO claim" where defendants' alleged conduct was not "inherently tortious or independently wrongful under RICO").  Here, the legal services performed by Marks, as described in the Trustee's allegations and as further explained herein, cannot be considered "racketeering acts."

prevent witness from testifying); *United States v. Thomas*, 916 F.2d 647 (11th Cir. 1990) (attorney provided false testimony); *United States v. London*, 714 F.2d 1558 (11th Cir. 1983) (attorney forged signatures of judge and clerk to bogus order requiring clients to pay money); *United States v. Cintolo*, 818 F.2d 980 (1st Cir. 1987) (attorney conspired to obstruct justice by participating in scheme to silence witnesses against organized crime figures); *United States v. Perkins*, 748 F.2d 1519 (11th Cir. 1984) (attorney made false statements before grand jury); *United States v. Pasha*, 797 F.3d 1122 (D.C. Cir. 2015) (attorneys fabricated evidence, staging a photograph to help client); *United States v. Fisch*, 851 F.3d 402 (5th Cir. 2017) (attorney pressured criminal defendants not to accept plea agreements in return for false promises to favorably influence the outcome of their cases); *United States v. Villalobos*, 748 F.3d 953 (9th Cir. 2014) (attorney attempted to have client make false statements in exchange for payment).

All of these cases are distinguishable from the present case, in which Marks was simply doing legitimate legal work for his clients. Nothing in the allegations against Marks comes close to those activities that courts have deemed obstruction of justice, things such as forgery, fabricating evidence, and committing and suborning perjury. All the Trustee has alleged is that Marks prepared documents in connection with the settlement between LaBonte and Landino, and that Marks did the necessary paperwork and related work to set up a limited liability company, DEIPM. Marks has not located a single case

supporting the notion that his alleged conduct amounts to obstruction of justice.[8]

First, as to the Landino transactions, the Trustee alleges (correctly) that Marks performed legal work in connection with the sale of the interests of LaBonte-managed entities in joint ventures to their joint venturers, Landino-managed entities.  On each of these deals, the Trustee simply alleges that Marks "knew of the Enterprise to Obstruct the Goldberg Trustee," Marks "knew" that the Trustee was pursuing claims against LaBonte's companies, and Marks failed to inform the Trustee that LaBonte's companies were being dissolved.  *See, e.g.*, Compl. ¶¶ 165, 169, 174, 181, 182, 187.  These allegations do not evidence the level of corruption courts require for an obstruction of justice claim.[9]  Something much more serious is required.  *See United States v. Baum*, 32 F. Supp. 2d 642, 650 (S.D.N.Y. 1999) (attorney obstructed justice when he attempted to deceive government into filing motion to reduce client's sentence, after which attorney

---

[8] In fact, the allegations in the Complaint appear to be charging Marks with aiding and abetting fraudulent transfers, not obstruction of justice.  Yet the Trustee has not alleged this, doubtlessly because he is aware that there is no cause of action under Connecticut law for aiding and abetting fraudulent transfers.  *See Nastro v. D'Onofrio*, 263 F. Supp. 2d 446 (D. Conn. 2003) ("there is no Connecticut authority confirming the validity of a cause of action against an attorney for aiding a fraudulent transfer").  As such, the Trustee should not be able to maintain a claim that legal work performed by Marks constituted obstruction of justice when the Trustee could not, as a matter of law, state a case for aiding and abetting.

[9] On their face, the most serious allegations regarding Marks' role in the Landino transfers appear to be that he "advised [LaBonte] to proceed . . . knowing that the intent of the transaction was to frustrate and impede the Goldberg Trustee," and Marks "worked with [LaBonte] to further dissipate [LaBonte]'s assets to impede and frustrate the Goldberg Trustee."  *See* Compl. ¶¶ 187, 193.  But these allegations are conclusory and allege no facts supporting the existence of a corrupt motive on Marks' part.  Such allegations cannot support the claims asserted because "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555, citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004).

would have received partial proceeds of client's illegal drug activity; attorney "used his license to practice law to attempt to perpetrate a fraud on the government, the court, and the public, for his own personal gain").

Second, as to the legal work performed in connection with the creation of DEIPM, the most the Trustee can allege is that Marks "knew at that time that DEIPM served no purpose other than to 'park' Devcon's business for SAL until he could settle with the Goldberg Trustee for pennies on the dollar" and that Marks knew "DEIPM was a vehicle to defraud the Goldberg Trustee by concealing Devcon's value and parking it for SAL's benefit."  Compl. ¶¶ 234, 243.  Marks denies these allegations, but even if true they are not even close to the level of corruption the courts require in order to hold a party liable for obstruction of justice.  In short, there are no allegations that Marks committed perjury, manufactured evidence, tried to silence witnesses, or did anything else to mislead a court or otherwise interfere with the administration of justice.  The Complaint therefore fails to state a claim for obstruction of justice.

### 2.    Marks' alleged acts do not constitute wire fraud.

The Trustee also attempts to allege wire fraud under 18 U.S.C. § 1343 as an act of racketeering committed by Marks.  Incredibly, the Trustee advances this wire fraud claim even though he is not claiming a single act of misrepresentation or deceit by Marks that caused any injury.  As noted in the Defendants' Joint Memorandum, in order to be actionable, a "scheme to defraud" must include conduct "designed to defraud by representations as to the past or present, or suggestions and promises as to the future."  Joint Mem. at 39, citing *United States v. Reifler*, 446 F.3d 65, 95 (2d Cir. 2006).

Equally relevant to the claims against Marks, it is undisputed that a complaint lacking sufficient specificity as to alleged misrepresentations cannot state a claim for wire fraud.  *See, e.g., Williams v. Affinion Group, LLC*, 889 F.3d 116, 124 (2d Cir. 2018).  Under the pleading standard of Fed. R. Civ. P. 9(b), the complaint must detail the specific statements that are false or fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.  *Williams*, 889 F.3d at 124; *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993); *Trilegiant*, 11 F. Supp. 3d at 100.  Moreover, the wire fraud statute requires a "showing of intentional fraud." *Beck v. Manufacturers Hanover Tr. Co.*, 820 F.2d 46, 49 (2d Cir. 1987), *abrogated by United States v. Indelicato*, 865 F.2d 1370 (2d Cir. 1989).  A complaint alleging wire fraud must provide "some factual basis for conclusory allegations of intent." *Id.*, citing *Connecticut National Bank v. Fluor Corp.,* 808 F.2d 957, 962 (2d Cir. 1987); *Ross v. A.H. Robins Co.,* 607 F.2d 545, 558 (2d Cir. 1979), *cert. denied,* 446 U.S. 946 (1980); *Soper v. Simmons Int'l, Ltd., supra,* 632 F. Supp. 244, 249 (S.D.N.Y. 1986).

Here, the allegations against Marks do not even come close to meeting this lofty pleading standard.  In fact, the Trustee identifies only a single so-called "misrepresentation" by Marks, a statement made in a letter purportedly sent to the Connecticut Department of Labor.  Compl. ¶ 253.  However, the Trustee does not specify how this letter sent to an unrelated third party was in any way part of a scheme to defraud the Trustee.  *See id.*  Moreover, the Trustee states that his allegations in Paragraphs 165-194 and 214-281 describe the relevant "acts" by

Marks.  *Id.* ¶ 387(f).  But these paragraphs simply outline the legal work done by Marks and they do not include any factual allegations through which one could infer an intent by Marks to defraud the Trustee, or anyone else.  In short, the sparse allegations made by the Trustee do not meet the pleading standards of Fed. R. Civ. P. 9(b) and will not support a claim for wire fraud against Marks.[10]

### 3.   Marks' alleged acts do not constitute bankruptcy fraud.

As his final attempt to allege an "act of racketeering" by Marks, the Trustee claims Marks committed bankruptcy fraud under 18 U.S.C. § 152.  However, the facts alleged by the Trustee are not sufficient to state such a claim.

First, just as with the claims of wire fraud, the bankruptcy fraud claims do not include sufficient factual detail to meet the stringent pleading standards of Fed. R. Civ. P. 9(b).  "Allegations of bankruptcy fraud, like all allegations of fraudulent predicate acts [under RICO], are subject to the heightened pleading requirements of [Fed. R. Civ. P.] 9(b)."  *First Capital Asset Mgmt. v. Satinwood*, 385 F.3d at 178.

Moreover, as in cases involving obstruction of justice and wire fraud, an attorney will generally not be liable for bankruptcy fraud when his alleged activities are nothing more than performance of legal work for a client.  The plaintiff must show some corrupt activity by the defendant, something beyond the provision of ordinary legal services.

---

[10] Should this case continue, Marks will assert as a defense that he had a good faith belief in the honesty of the allegedly false representations identified in the Complaint.  Such a good faith belief is a complete defense to a fraud claim. *United States v. Hamilton*, 3 F. App'x 7, 10 (2d Cir. 2001); *United States v. Alkins*, 925 F.2d 541, 550 (2d Cir. 1991).

For example, in *Cadle Co. v. Flanagan*, 2005 WL 1039005, the plaintiff sued defendants, including an attorney, for their efforts to prevent the plaintiff from recovering a judgment from the lead defendant, the attorney's client.  Claims against the attorney included RICO conspiracy under § 1962(d), and the plaintiff alleged bankruptcy fraud, mail fraud, and wire fraud as "acts of racketeering." The court first noted that an attorney cannot be liable for RICO violations for simply furnishing legal advice.  *Id.* at *11, citing *Biofeedtrac,* 832 F. Supp. at 591. It then found that the attorney may have "embraced the objectives of the alleged conspiracy" and may have "agreed to commit at least two predicate acts in furtherance thereof."  2005 WL 1039005 at *11.  The court found that the attorney participated in "schemes that not only were intended to defraud [plaintiff] from collecting on its lawful claims, but schemes that, through their execution, demonstrate a disregard for the rule of law and the authority of this court."  *Id.* The acts included instructing his client to disregard a court order, knowingly filing fictitious notices of compliance in response to a court order requiring the client to turn over assets, and knowingly and falsely representing to the court that his client had not made any asset transfers after the court ordered the assets frozen.  *Id.*  As the court stated, "[s]uch conduct far exceeds the rendering of legal advice and suggests participation in fraudulent conduct."  *Id.,* citing *Madanes v. Madanes,* 981 F. Supp. 241, 259 (S.D.N.Y. 1997).

This can be contrasted with Marks' alleged actions in this case, in which nothing the Trustee alleges adds up to "fraudulent conduct."  It is not alleged that Marks made misrepresentations to a court or anyone else.  Nor is it alleged that

**17**

he falsified documents or instructed his clients to do anything illegal or unethical. Even construing the allegations in the most negative way as to Marks, the most the Trustee can allege is that Marks performed legal work that may have made it more difficult for the Trustee to recover assets at some point in the future from entities that have no judgments against them, even many years after such legal work had been completed.  But these allegations do not include any allegations of any "fraud" committed by Marks in representing his client.

In the end, the Trustee simply does not allege sufficient facts that Marks was involved in "racketeering activity."  He cannot be liable for RICO conspiracy, and the claims against Marks and his firm should be dismissed.

E.      **The Trustee cannot establish that any alleged RICO violations by Marks caused his alleged injury.**

A RICO claim requires allegations and proof that a plaintiff would not have been injured but for the predicate RICO act; that is, a plaintiff must plead and prove both factual and legal causation.  While Defendants have thoroughly briefed this issue, *see* Joint Mem. at 44-46, Marks and J&M write separately to emphasize that Marks' actions cannot be the cause of any RICO injury alleged by the Trustee because the Trustee does not allege that Marks did anything until years after the claimed injury occurred.

Throughout his Complaint, the Trustee admits that the act rendering Scott LaBonte insolvent and unable to satisfy the judgment was the formation of the SALDT and transfer of LaBonte's assets to that trust.  *See* Compl. ¶ 193.  The Trustee, however, fails to allege any involvement whatsoever of Marks or his law firm in the formation of that trust or the transfer of any funds to it.  The absence

18

of such an allegation dooms any type of claim against Marks or J&M.  Quite simply, the formation of the trust and transfer of funds to the trust broke the chain of causation critical to any RICO claim against Marks, because the Trustee only alleges two things against Marks: that he assisted in papering the sale of limited liability company interests owned by LLCs managed by LaBonte to LLCs managed by Landino; and that he performed the legal work necessary to set up DEIPM.  But by the time these events occurred starting in 2012, *see id.* ¶ 156, LaBonte's assets, according to the Trustee's allegations, had already been transferred to the SALDT in 2010, *see id.* ¶¶ 71-72.  Given this, Marks' involvement in the Landino transfers and the formation of DEIPM was not the proximate cause of any injury to the Trustee and those acts cannot form the basis of a RICO claim.

   F.    The vicarious liability claim against J&M should be dismissed.

   The Trustee's only claim against J&M—vicarious liability, based solely on Marks' alleged wrongdoing—should also dismissed given the Trustee's failure to state a claim for RICO conspiracy against Marks.  Indeed, it is beyond the need for citation that a claim for vicarious liability cannot stand where there is no liability of the agent or employee.

   Even if the claim against Marks survives, the claim against J&M still fails given the Trustee's failure to allege facts demonstrating that J&M was a "central figure" in any alleged scheme.  Indeed, courts in this circuit are "hostile to claims of vicarious liability under RICO," *see Blinkoff v. Dorman*, No. 3:06CV607 (SRU), 2007 WL 9754530, at *1 (D. Conn. Sept. 11, 2007) (citing cases), and have limited claims for vicarious liability under RICO to only those who "may fairly be said to be a 'central figure' (or 'aggressor') in the alleged scheme."  *See Gruber v.*

19

*Prudential-Bache Sec., Inc.*, 679 F. Supp. 165, 181 (D. Conn. 1987); *see also Philan Ins., Ltd. v. Frank B. Hall, & Co.*, 748 F. Supp. 190, 198 (S.D.N.Y. 1990) ("Corporate defendants cannot be held vicariously liable under RICO . . . where plaintiff has not alleged any facts which portray the company as an active perpetrator of the fraud or a central figure in the criminal scheme.").[11]  The fact that an entity benefits from an illegal scheme does not in itself establish that it participated as a central figure in that scheme.  *Gruber*, 679 F. Supp. at 181.

Here, the Trustee's vicarious liability claim merely alleges that Marks was a "partner, member and/or agent of J&M" and that he "engaged in the various wrongful acts, errors and omissions . . . in the ordinary course of business of J&M" which were "made within the regular scope of his employment and authority at J&M and for the benefit and to further the interests of J&M."  Compl. ¶¶ 395-396.  These allegations, however, fall far short of what must be pleaded to sustain a vicarious liability claim under RICO, and the Trustee's vicarious liability claim against J&M should be dismissed.

## III.   CONCLUSION

For the foregoing reasons, the Trustee's Complaint should be with dismissed with prejudice as to Marks and J&M.

---

[11] The determination as to whether an entity is a "central figure" and thus properly a RICO defendant under vicarious liability must be made in light of its role in the allegedly wrongful scheme, as illuminated by a careful weighing of factors.  These factors include, *inter alia*, the number of high-level employees involved in the racketeering activity, their degree of participation in the racketeering activity, whether these high-level employees themselves committed the alleged predicate acts, and whether the corporation directly and substantially benefitted from the racketeering activity.  *Gruber*, 679 F. Supp. at 181.

Respectfully Submitted,

DEFENDANTS:
LAWRENCE J. MARKS and
JULIANO & MARKS, LLC


By:_____/s/ Anthony J. Natale_____
    Anthony J. Natale
    Federal Bar No. ct08451
    Natale & Wolinetz
    116 Oak Street
    Glastonbury, Connecticut 06033
    (860) 430-1802
    (860) 430-1809 - facsimile
    *anatale@natalelawfirm.com*

## <u>CERTIFICATION</u>

I hereby certify that on December 13, 2019, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.

_____/s/ Anthony J. Natale_____
Anthony J. Natale
Federal Bar No. ct08451
Natale & Wolinetz
116 Oak Street
Glastonbury, Connecticut 06033
(860) 430-1802
(860) 430-1809 – facsimile
*anatale@natalelawfirm.com*