**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| JAMES BERMAN, CHAPTER 7 TRUSTEE | : |
| FOR THE SUBSTANTIVELY CONSOLIDATED | :   NO. 3:19-CV-01533- (VLB) |
| ESTATE OF MICHAEL S. GOLDBERG, LLC | : |
| AND MICHAEL S. GOLDBERG, | : |
| | : |
| Plaintiff, | : |
| v. | : |
| | : |
| SCOTT A LABONTE, ET AL., | : |
| | : |
| Defendants. | : |
| | : DECEMBER 13, 2019 |
| | : |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS OF JOSEPH W. SPARVERI, JR.**

Respectfully submitted,

THE DEFENDANT,
JOSEPH W. SPARVERI, JR.;
JOSEPH W. SPARVERI, JR.,
TRUSTEE OF THE SCOTT A.
LABONTE DYNASTY TRUST

By:  //s// Thomas J. Murphy  (ct07959)
      Thomas J. Murphy
      James J. Healy
      Cowdery & Murphy, LLC
      280 Trumbull Street
      Hartford, CT 06103
      (860) 278-5555 Office
      tmurphy@cowderymurphy.com
      jhealy@cowderymurphy.com

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION AND BACKGROUND.....................................................................1

II.  THE APPLICABLE STANDARD........................................................................2

III.  THE COMPLAINT FAILS THE <u>REVES</u> TEST.................................................2

IV.  THE RICO CONSPIRACY FAILS....................................................................11

V.  JOSEPH SPARVERI MAY NOT BE SUED AS A TRUSTEE OF THE
    SCOTT A. LABONTE DYNASTY TRUST..........................................................12

    A.  Factual Background to the Trustee Issue...............................................13

    B.  Mr. Sparveri Cannot Be Sued in a Capacity He No Longer Holds........13

    C.  Mr. Sparveri's Mispleaded Former Capacity is Outside the Statute
        Of Limitations............................................................................14

VI.  CONCLUSION............................................................................................14

I.     **Introduction and Background**

For over 40 years, Joe Sparveri has been providing complex accounting services to countless sophisticated clients and their businesses, including to members of the LaBonte family.  The plaintiff alleges that Mr. Sparveri is liable for both substantive racketeering in violation of 18 U.S.C. § 1962(c), see Complaint [Doc. # 1] at ¶¶ 348 - 365, as well as for participating in a racketeering conspiracy in violation of 18 U.S.C. § 1962(d), see id. at ¶¶ 383 - 393.  In truth, the plaintiff's allegations are nothing more than an attempt to twist standard accounting services into nefarious predicate acts to justify pressing treble damages claims against a respected professional.  When his role is carefully analyzed, however, Joe Sparveri does not belong in this case.

Mr. Sparveri respectfully joins in all the arguments presented in the Defendants' Joint Memorandum, which is being filed today on behalf of all defendants.  In addition, he presents the three arguments set forth in this separate brief that are more specifically related to himself.  The first point relates to the plaintiff's failure to plead facts sufficient to establish that Mr. Sparveri operated or managed the alleged RICO enterprise.  Even accepting the Trustee's allegations, what Mr. Sparveri did was to provide accounting services to a client.  Whether or not that client operated a RICO enterprise, Mr. Sparveri's involvement does not meet the requirements of Reves v. Ernst & Young, 507 U.S. 170, 185 (1993), and its progeny.  Second, because the Trustee's substantive RICO claim fails for numerous reasons, so must the RICO conspiracy claim.  The third individual issue presented in this motion concerns the Trustee's effort to sue Mr. Sparveri in the capacity of a trustee that he has not held now for more than six

1

years.

For all the reasons stated in the Defendants' Joint Memorandum,[1] as well as for all the reasons argued in this individual brief, the case against Joseph W. Sparveri, Jr. must be dismissed.

## II.    The Applicable Standard

The joint grounds for dismissal invoke both Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See Defendants' Joint Memorandum at 8-10.  In addition, Mr. Sparveri's individual grounds for dismissal are made pursuant to Rule 12(b)(6) because the plaintiff Trustee has failed to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  Rather than burden the Court by restating those standards here, Mr. Sparveri instead respectfully incorporates to this motion the discussion of the applicable standards set forth in the Defendants' Joint Memorandum.  See Defendants' Joint Memorandum at 8-10.

## III.    The Complaint Fails the Reves Test

To be liable under 18 U.S.C. § 1962(c), a defendant must have participated "in the operation or management of the enterprise itself."  Reves v. Ernst & Young, 507 U.S. 170, 185 (1993).  The so-called "operation and management test" was established by the Supreme Court in a case alleging RICO violations by an accounting firm.  The Court concluded that allegations there that the accountants had reviewed a series of transactions, and certified records related to financial

---

[1] For the reasons more fully set forth in the Defendants' Joint Memorandum, which will be filed today, the Trustee's Complaint must be dismissed in its entirety because the Trustee lacks standing, his claims are unripe or time-barred, and he has failed to state a cognizable claim that any defendant violated RICO.

status, including by way of creating audit reports, did not satisfy this test.  See id. at 176.

Following Reves, courts around the country have focused closely on the adequacy of allegations against professionals, including accountants, who are alleged to have been RICO wrongdoers. "Subsequent to Reves, courts in this Circuit have made clear that providing ordinary but important business services to a RICO enterprise is not itself sufficient to meet the operation or management test."  New York v. United Parcel Serv., Inc., No. 15-CV-1136 (KBF), 2016 WL 4203547, at *4 (S.D.N.Y. Aug. 9, 2016) (citing City of New York v. Smokes-Spirits.com, Inc., 541 F.3d 425, 449 (2d Cir. 2008), rev'd on other grounds, Hemi Grp., LLC v. City of New York, 559 U.S. 1 (2010)).  See also Azrielli v. Cohen Law Offices, 21 F.3d 512, 521-22 (2d Cir. 1994);  Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.), 924 F. Supp. 449, 465–67 (S.D.N.Y. 1996) (collecting cases).

Courts faced with post-Reves section 1962(c) RICO claims against outside professionals, like the allegations advanced here against Mr. Sparveri, see Complaint [Doc. # 1] at ¶ 351, have made clear that providing important services to an alleged racketeering enterprise is not the same as directing the affairs of that enterprise.  See, e.g., Azrielli, 21 F.3d at 521–22 (provision of legal services related to fraudulent real estate transaction was not management of the RICO enterprise conducting the fraudulent transaction); University of Maryland at Baltimore v. Peat, Marwick, Main & Co., 996 F.2d 1534, 1539 (3d Cir. 1993) ("Simply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result"); Morin v. Trupin, 835 F.Supp. 126, 135 (S.D.N.Y. 1993) ("[P]roviding legal advice

and legal services does not constitute participation sufficient to ground an allegation of a violation of Section 1962(c)"); <u>Fidelity Federal Sav. & Loan Ass'n v. Felicetti</u>, 830 F.Supp. 257, 260 (E.D. Pa. 1993) (even if appraiser's reports are "keystone" of enterprise's perpetration of fraud, appraiser can not be liable under § 1962(c)); <u>Gilmore v. Berg</u>, 820 F.Supp. 179, 182–83 (D.N.J.1993) (accountant's preparation of allegedly misleading opinion and forecast letters did not constitute participation in operation or management of client's business under <u>Reves</u>); <u>Lewicky v. Chou</u>, Case No. 91 C 7088, 1993 WL 96114, *5-*6 (N.D. Ill. March 31, 1993) (accountant who allegedly knew that financial information submitted was "grossly inaccurate" but "failed to correct plaintiffs' misconceptions regarding the information," advised commingling of funds, and knew of misappropriation of funds nonetheless did not come within operation and management test).  This broad body of case law recognizes the critical rule that rendering "professional assistance" to a client, "even when the client happens to be a RICO enterprise, will not normally rise to the level of participation" required to state a RICO claim against the professional.  <u>See</u> <u>Handeen v. Lemaire</u>, 112 F.3d 1339, 1348–49 (8th Cir. 1997).

Within the Second Circuit, the operation and management test requires conduct well beyond the allegations made here.  <u>See</u> <u>United States Fire Ins. Co. v. United Limousine Serv., Inc.</u>, 303 F. Supp. 2d 432, 451–52 (S.D.N.Y. 2004) (citing <u>Schmidt v. Fleet Bank</u>, 16 F.Supp.2d 340, 346 (S.D.N.Y.1998) and <u>LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co</u>., 951 F.Supp. 1071, 1090 (S.D.N.Y.1996)). District Courts have applied the test to dismiss RICO claims against professional defendants when the allegations failed to demonstrate the exercise of actual

control over the enterprise itself.  See Amsterdam Tobacco Inc. v. Philip Morris

Inc., 107 F. Supp. 2d 210, 216–17 (S.D.N.Y. 2000) (emphasizing that Reves

presents "a very difficult test to satisfy") (citations omitted; internal quotation

marks omitted).[2]  Where, as here, a RICO Complaint alleges that the defendant

engaged in professional services – even when those services are said to have

been integral to the RICO enterprise – the claims fail under § 1962(c) without

demonstrating more than the provision of professional services.  See, e.g.,

Azrielli, 21 F.3d at 521-22 (provision of legal services related to fraudulent real

estate transaction was not sufficient to meet the operation and management

test); Smallwood ex rel. Hills v. Lupoli, No. 04-CV-0686JFB MDG, 2007 WL

2713841, at *7–8 (E.D.N.Y. Sept. 14, 2007) (defendants not liable when there was

no evidence that they exceeded their professional duties or offered more than

legal services), aff'd sub nom. Smallwood v. Lupoli, No. 07-4445-CV, 2009 WL

579419 (2d Cir. Mar. 4, 2009).

       In order to satisfy the operation and management test, courts in this Circuit

have required that RICO plaintiffs allege and establish that the professional had

---

[2]  Several decisions have described the test in "extremely rigorous" terms.  See,
e.g., United States Fire Ins. Co., 303 F. Supp. 2d at 451–52.  See also Amsterdam
Tobacco Inc., 107 F. Supp. 2d at 216 ("Courts within the Second Circuit have
dismissed RICO claims which failed to meet these stringent standards").
Although one decision suggested that some plaintiffs can pass the test more
easily at the pleadings stage, that case nonetheless required a showing that the
defendant "must have played some part in directing the enterprise's affairs" in
order to qualify.  See First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d
159, 176 (2d Cir. 2004) (internal quotations omitted; emphasis in original).
Regardless of the precise terms in which the test is described, it clearly requires
a concrete showing of actual control over the enterprise, beyond rendering
professional services that are helpful or that otherwise merely assist the
enterprise.  See, e.g., Democratic Nat'l Comm. v. Russian Fed'n, 392 F. Supp. 3d
410, 441 (S.D.N.Y. 2019) (describing test as "extremely rigorous" and granting
motion to dismiss under Rule 12(b)(6)).

the requisite degree of <u>control</u> over a RICO enterprise.  <u>See, e.g.</u>, <u>W. 79th St.</u>

<u>Corp. v. Congregation Kahl Minchas Chinuch</u>, No. 03 CIV. 8606RWS, 2004 WL

2187069, at *14 (S.D.N.Y. Sept. 29, 2004) ("[A]llegations that [defendants]

performed tasks that . . . were both necessary and helpful to the alleged

enterprise are not sufficient, by themselves, to bring these Defendants within the

scope of Section 1962(c)").  In addition, even allegations that a professional

defendant rendered services that were inaccurate or fraudulent will <u>not</u> satisfy

this standard.  <u>See, e.g.</u>, <u>DiPizio v. Empire State Dev. Corp.</u>, No. 15-CV-901G(SR),

2017 WL 9516816, *20-*21 (W.D.N.Y. May 9, 2017) (project manager's professional

services in rendering an opinion—even if inaccurate, biased, and intended to

cause injury—do not demonstrate control over a RICO enterprise), <u>report and</u>

<u>recommendation adopted sub nom</u>. <u>Dreamco Dev. Corp. v. Empire State Dev.</u>

<u>Corporation</u>, No. 15-CV-901-FPG-HKS, 2017 WL 4230501 (W.D.N.Y. Sept. 25,

2017), <u>aff'd sub nom</u>. <u>DiPizio v. Empire State Dev. Corp.</u>, 745 F. App'x 385 (2d Cir.

2018).  Nor will professional services that "go beyond that which is customary or

are so deficient as to constitute professional misconduct" necessarily qualify.  <u>Id.</u>

at *20.  Absent allegations that a professional controlled the affairs of the RICO

enterprise in a more direct fashion, dismissal is required.  <u>See</u> <u>Feirstein v. Nanbar</u>

<u>Realty Corp.</u>, 963 F. Supp. 254, 258 (S.D.N.Y. 1997) ("The Accounting Defendants

did not participate in the conduct of the enterprise's affairs by preparing monthly

statements, even if fraudulent, by mailing them to the Plaintiffs, or by mailing

fraudulent tax returns. It is well established that professional services by

outsiders is insufficient to satisfy the participation element of RICO.").

Significant for this case, district courts in the Second Circuit have determined that the operation and management test is not met even on facts when an accountant was alleged to have performed services that exceeded normal professional services; those services proved integral to the enterprise; the accountant was alleged to have been aware of the fraudulent activities; and the accountant enjoyed substantial persuasive power sufficient to influence the RICO enterprise.  See Hayden v. Paul, Weiss, Rifkind, Wharton & Garrison, 955 F. Supp. 248, 254-55 (S.D.N.Y. 1997) (collecting cases).  The plaintiff in Hayden attempted to plead a RICO complaint against an accountant for allegedly performing services that exceeded "traditional accounting services," including by way of "designing and advising [a client] on the alleged unlawful trading activities and reviewing and approving each offering."  See id. at 255.  The District Court dismissed the claim on the weight of "abundant case authority" following Reves.  Id.

Similarly, allegations that an accountant "went beyond the scope of its profession" by engaging in the creation of financial records, and then using them to generate financial statements that the accountant purported to audit, were insufficient to satisfy Reves.  See Arthur Andersen, 924 F. Supp. at 469.  See also Biofeedtrac, Inc. v. Kolinor Optical Enter. & Consultants, 832 F.Supp. 585, 593 (E.D.N.Y.1993) ("[E]ven when professionals go beyond their customary role, they will not be deemed to have participated in the 'operation or management' of the enterprise itself.") (citing Reves, 507 U.S. at 184 n. 9); Chamarac Properties, Inc. v. Pike, 1993 WL 427137, *3 (S.D.N.Y. Oct. 19, 1993) (allegations of "unprofessional conduct" by accounting firm, including by allegedly "knowingly

7

participat[ing] in their client's fraud by obtaining unwarranted and unjustifiable professional fees does not save plaintiff's RICO claim from dismissal"); <u>Peat, Marwick, Main & Co.</u>, 996 F.2d at 1539 (alleged "deficient audits and issu[ance of] unqualified auditor's opinions," as well as performance of a host of "other accounting and consulting services" over time, including in regard to "valuation and sale" of subsidiary entity, did not meet <u>Reves</u> test).  The allegations made against Joe Sparveri here – even taken as alleged – are no different, as discussed further below, and are therefore equally deficient.

While there is no fixed standard to demonstrate "control," courts have found that the operation and management test is met only when the alleged conduct goes well beyond what is alleged by this plaintiff.  <u>See, e.g.</u>, <u>Redtail Leasing, Inc. v. Bellezza</u>, No. 95 Civ. 5191 (JFK), 1997 WL 603496, at *5 (S.D.N.Y. Sept. 30, 1997) ("A defendant does not 'direct' an enterprise's affairs under § 1962(c) merely by engaging in wrongful conduct that assists the enterprise").  For example, a professional whose actions are unrelated to representing a client, and instead demonstrate a direct and independent role in the affairs of a RICO enterprise, has exhibited the high degree of control necessary to incur RICO liability.  <u>See, e.g.</u>, <u>Napoli v. United States</u>, 45 F.3d 680, 681–84 (2d Cir. 1995) (operation and management test met when lawyers and investigators litigated and settled fraudulent lawsuits by procuring false testimony and fabricating evidence in support of counterfeit claims).  Allegations that an accountant used "falsif[ied] accounting statements" and two sets of books to steal hundreds of thousands of dollars through the RICO scheme also reach the level of conduct that <u>Reves</u> contemplates. <u>See</u> <u>Related Companies, L.P. v. Ruthling</u>, No. 17-CV-4175, 2017 WL 6507759, *20

(S.D.N.Y. Dec. 18, 2017) (sufficient allegations of operation when complaint alleged that accountant falsified account statements, stole money, and maintained two different records).  These examples demonstrate the extraordinary conduct necessary to draw a professional within the requirements of the operation and management test.  Nothing like those instances of criminal misconduct is alleged here.

In the present case, to the contrary, the Complaint fails to allege any facts to show that Joe Sparveri had the requisite control over the alleged RICO enterprise.  Beyond purely conclusory allegations, see, e.g., Complaint [Doc. 1] at ¶ 348, et seq., the Trustee alleges the following actions by Mr. Sparveri:  (1) that as the "decades-long accountant to the LaBonte[s,]" he served as one of the trustees of the Scott A. LaBonte Dynasty Trust ("SALDT"), a trust settled in 2006, years before any of the matters at issue in this case, see Complaint [Doc. # 1] at ¶ 18; (2) that he was one of two professionals — the other being Paul Bourdeau — who attended a meeting on June 2, 2010 with the LaBontes during which the attendees discussed Scott LaBonte's concern about a potential claw-back action by a trustee and the possibility of Scott LaBonte selling additional assets to the SALDT, see id. at ¶¶ 60-66; (3) that he thereafter assisted his client with transferring certain assets to the pre-existing trust, see id.¶ 71; (4) that he was aware that the reason for the transfers was to preserve the client's assets in circumstances in which the client had not yet even been sued, let alone had any judgment been entered against the client, see id.¶ 75; (5) that he assisted his client with preparing the necessary paperwork to accomplish the transfers that the client wished to make, see id.¶¶ 75–77; (6) that he communicated with others

9

about the proposed transfers, see id.¶ 80; (7) that he worked with his client, Scott LaBonte – the person most knowledgeable about the assets being transferred – to value the transferred interests, see id.¶¶ 82–85); (8) that he drafted a promissory note from the client, see id.¶ 89; (9) that he redrafted a prior promissory note from the client to extend its payment terms, see id.¶¶ 94–97; (10) that he oversaw and accepted the asset transfers to the client's preexisting Dynasty Trust, see id.¶ 97; (11) that he prepared a financial statement for Scott LaBonte, see id.¶¶ 97–98; (12) that he coordinated the payment of income from the transferred assets to Scott LaBonte to allow him to track the amounts, see id.¶ 108; (13) that he prepared schedules tracking the payments from the SALDT to Scott LaBonte, see id. ¶¶ 126-127; and (14), in the only factual allegation related to Mr. Sparveri outside the 2010 transfers, that he was involved along with two of the client's attorneys in establishing the MPL 2015 Trust, which thereafter owned 99.99% of DEIPM, see id.¶ 234.[3]

The allegations described above come nowhere close to the kind of allegations required in the above-cited examples holding a professional in as a RICO defendant.  To the contrary, the Trustee's factual allegations reveal that Joe Sparveri performed the functions of an accountant by assisting the client's other professionals in advising, documenting, and finalizing a client's asset-protection plan.  Even reviewing the conduct alleged by the Trustee that is claimed to constitute the predicate acts committed by Mr. Sparveri reveals unremarkable,

---

[3]  Mr. Sparveri vigorously disputes many aspects of the Trustee's allegations against him.  The point for present purposes, however, remains that, even if the allegations are accepted as true in the context of this motion to dismiss, the Trustee has fallen short of the required showing of control needed to impose RICO liability on a professional accountant.

typical accountant activities.  Those actions include: emailing with the client's attorney about the language of a promissory note; discussing the value of transferred assets with their owner, the client; emailing with the client's counsel about documents to accomplish the proposed transfer of assets; emailing to direct payment of distributions from the transferred assets; and emailing with a co-trustee of the SALDT.  <u>See</u> Complaint [Doc. # 1] at ¶ 353.  In assessing the significance of these actions, it is useful to recall that the Trustee has been aware of them now for years, dating back to at least 2011.  <u>See</u> <u>See</u> Defendants' Joint Memorandum at 18-21.

The Court will search the Complaint in vain for an allegation that the Trustee had a judgment against Scott LaBonte at the time of these actions described above.  Indeed, at the time of the 2010 conduct, the Trustee had not yet even sued Mr. LaBonte.  On such a record, the Trustee has reached much too far in trying to press a RICO claim against a respected accountant performing quintessential professional services.  As a consequence, the Court should additionally dismiss the Complaint against Mr. Sparveri for failure to state a claim for having failed to meet the "operation and management" test of <u>Reves</u> and its progeny.

IV.     <u>The RICO Conspiracy Fails</u>

As is more fully described in the Defendants' Joint Memorandum, there are multiple reasons why the plaintiff's substantive RICO claim against Joe Sparveri must fail, including: (1) that the Trustee lacks standing to bring the claim; (2) that the lost-debt claim is not ripe, and is, in any event, brought outside the statute of limitations; and (3) that the Trustee has failed to allege critical elements of a

11

substantive RICO claim, as there are no valid predicate acts alleged, nor is a valid enterprise or pattern of racketeering activity asserted.  Beyond those flaws noted in the Defendants' Joint Memorandum, the Trustee's RICO claim against Mr. Sparveri also must be dismissed for failure to satisfy the <u>Reves</u> "operation or management" test.  In short, for a host of reasons, the plaintiff has not pleaded a valid substantive RICO claim against Joe Sparveri.

That reality, in turn, means that the RICO conspiracy alleged against Mr. Sparveri, <u>see</u> Complaint [Doc. # 1] at ¶ 383, <u>et seq.</u>, must necessarily fail, too. This Court confronted this very issue in <u>In re Trilegiant Corp., Inc.</u>, 11 F.Supp.3d 82 (D. Conn. 2014), aff'd sub nom., <u>Williams v. Affinion Grp., LLC</u>, 889 F.3d 116 (2d Cir. 2018), noting that, "[i]n this circuit, analysis of any RICO conspiracy claim begins with the premise that it necessarily fails where the underlying substantive claim is insufficiently pled."  <u>Id.</u> at 108.  <u>See also</u> <u>Lightning Lube, Inc. v. Witco Corp.</u>, 4 F.3d 1153, 1191 (3d Cir. 1993).  That is the case here for all the reasons listed above, and thus the RICO conspiracy against Joe Sparveri must likewise be dismissed.

V.     **Joseph Sparveri May Not Be Sued As A Trustee of the Scott A. LaBonte Dynasty Trust**

Even if the Trustee has standing to sue Mr. Sparveri at all, he may not sue him both individually and as a "Trustee of the Scott A. LaBonte Dynasty Trust." <u>See</u> Complaint [Doc. # 1] at caption & ¶ 18.  At the time the plaintiff filed his Complaint, Mr. Sparveri had not been a trustee of that trust since October 2013 – nearly six years earlier.  As such, to the extent the Complaint seeks to hold Mr. Sparveri liable in the capacity of a trustee of the Scott A. LaBonte Dynasty Trust

("SALDT"), it must be dismissed.  Mr. Sparveri does not occupy that capacity, and cannot be sued as if he does.

A.    <u>Factual Background to the Trustee Issue</u>

In his role as an accountant assisting other professionals in advising the LaBontes, the Trustee alleges that Mr. Sparveri was involved in 2006 when Scott A. LaBonte created the SALDT.  That timing is important, as it demonstrates that the SALDT predated any allegations of wrongdoing by Mr. Sparveri with the LaBontes.

At the creation of the SALDT in 2006, Mr. Sparveri agreed to serve as one of its trustees.  By October 2013, however, Mr. Sparveri resigned that role, a fact that the plaintiff acknowledges.  <u>See</u> Complaint [Doc. # 1] at ¶ 128.

B.    <u>Mr. Sparveri Cannot Be Sued in a Capacity He No Longer Holds</u>

The plaintiff's Complaint concedes that Mr. Sparveri has not been a trustee of the SALDT since October 2013.  <u>See id.</u>  Yet, in addition to suing him in his individual capacity, the plaintiff purports to sue him "in his capacity as a trustee of the SALDT."  <u>Id.</u> at ¶ 18.  There being no dispute that Mr. Sparveri has not occupied that capacity for nearly six years, he necessarily cannot be sued as if he were still a trustee.  To the extent the Court concludes that the plaintiff's case should survive the numerous arguments presented for dismissal, the plaintiff may well be entitled to put on evidence of Mr. Sparveri's former role as a trustee of the SALDT.  But, he does not occupy that capacity now, and thus cannot be sued as if he does.

C.    Mr. Sparveri's Mispleaded Former Capacity is Outside the Statute of Limitations

The plaintiff's effort to sue Joseph W. Sparveri, Jr. "in his capacity as a trustee of the SALDT" is not just flawed as a matter of formality.  The allegation is, on its face, outside the applicable statute of limitations.

The plaintiff's Complaint acknowledges that Mr. Sparveri resigned as a trustee of the SALDT in October 2013.  See Complaint [Doc. # 1] at ¶ 128.  Judicial notice of the Court's own docket establishes that the plaintiff's Complaint was filed on September 27, 2019, almost exactly six years after Mr. Sparveri last served as a trustee of the SALDT.  Moreover, the Complaint further alleges that Mr. Sparveri's resignation as trustee occurred when the plaintiff attempted to serve him in relation to the plaintiff's PJR against Scott LaBonte.  See id. at ¶ 128.  The combination of those allegations demonstrates conclusively that by October 2013, the plaintiff was on inquiry notice of his claims against the SALDT.  Thus, to the extent the plaintiff ever had any RICO claim against Mr. Sparveri for his former role as a trustee of the SALDT, it expired, at the latest, four years after his resignation as trustee, or by October 2017.  In other words, even if the plaintiff had sued Mr. Sparveri in his capacity as a *former* trustee of the SALDT, his claims in that regard would fail as outside the four-year statute of limitations applicable to RICO.  See Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143, 156 (1987).

VI.    Conclusion

Joseph W. Sparveri, Jr. maintains that, for all the reasons set forth in the Defendants' Joint Memorandum as well as here, the plaintiff's entire case against

14

him should be dismissed.  This regrettable lawsuit is the product of a late-in-the-day effort to grab onto perceived deep-pocketed professionals whose involvement in providing services to the LaBontes has been known to the Trustee since 2011.  The Trustee's dispute with the LaBontes should be returned to what it is: a dispute over alleged fraudulent transfers.

As for these individual arguments, the Trustee has failed to allege that Joe Sparveri operated or controlled the enterprise alleged, as opposed to simply providing accounting services to it.  As such, the plaintiff has failed to satisfy the <u>Reves</u> operation or management test.  Moreover, where the plaintiff purports to sue Mr. Sparveri in both his individual capacity "and in his capacity as a trustee of the SALDT," Compl. ¶ 18, there is an additional need to dismiss.  Mr. Sparveri is not sued as a former trustee of the SALDT, but rather (and improperly) as a purported current trustee of that trust.  Because he is not a trustee of that trust, and in fact has not been for over six years now, that allegation must be dismissed as both false on its face and, in any event, beyond the statute of limitations.[4]

---

[4]  **Mr. Sparveri respectfully adopts any arguments made by his co-defendants, to the extent any such arguments would also warrant dismissal of the Trustee's claims against him.**

Respectfully submitted,

THE DEFENDANT,
JOSEPH W. SPARVERI, JR.;
JOSEPH W. SPARVERI, JR.,
TRUSTEE OF THE SCOTT A.
LABONTE DYNASTY TRUST

By: //s// Thomas J. Murphy (ct07959)
     Thomas J. Murphy
     James J. Healy
     Cowdery & Murphy, LLC
     280 Trumbull Street
     Hartford, CT 06103
     (860) 278-5555 Office
     tmurphy@cowderymurphy.com
     jhealy@cowderymurphy.com

<u>**CERTIFICATE OF SERVICE**</u>

**I hereby certify that on December 13, 2019, a copy of the foregoing Appearance was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.**

<u>  /s//</u> **Thomas J. Murphy (ct07959)**
**Thomas J. Murphy**

17