# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

---

| | | |
|---|---|---|
| JAMES BERMAN, CHAPTER 7 TRUSTEE FOR THE SUBSTANTIVELY CONSOLIDATED ESTATE OF MICHAEL S. GOLDBERG, LLC AND MICHAEL S. GOLDBERG | : | Case No. 3:19-cv-01533-VLB |
| | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | |
| SCOTT A. LABONTE; SALLY A. LABONTE; SCOTT A. LABONTE, TRUSTEE OF THE SCOTT A. LABONTE REVOCABLE TRUST; SALLY A. LABONTE, TRUSTEE OF THE SCOTT A. LABONTE REVOCABLE TRUST; SALLY A. LABONTE, TRUSTEE OF THE SCOTT A. LABONTE DYNASTY TRUST; ROLAND G. LABONTE; ROLAND G. LABONTE, TRUSTEE OF THE SCOTT A. LABONTE DYNASTY TRUST; ROLAND G. LABONTE, TRUSTEE OF THE ROLAND G. LABONTE REVOCABLE TRUST; MARILYN P. LABONTE; MARILYN P. LABONTE, TRUSTEE OF THE MARILYN P. LABONTE 2015 REVOCABLE TRUST; MARILYN P. LABONTE TRUSTEE OF THE MARILYN P. LABONTE REVOCABLE TRUST; JOSEPH W. SPARVERI, JR.; JOSEPH W. SPARVERI, JR., TRUSTEE OF THE SCOTT A. LABONTE DYNASTY TRUST; LAWRENCE J. MARKS; JULIANO & MARKS, LLC; PAUL L. BOURDEAU; and ROBERT A. LANDINO | : : : : : : : : : : : : : : : : : : : : | |
| **Defendants.** | : | December 20, 2019 |

---

## THE GOLDBERG TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO STAY DISCOVERY

1

The plaintiff, James Berman, Chapter 7 Trustee for the substantively consolidated bankruptcy estates of the debtors, Michael S. Goldberg, LLC, d/b/a Acquisitions Unlimited Group, and Michael S. Goldberg (the "Goldberg Trustee"), by and through his undersigned counsel, respectfully submits his Memorandum in Opposition to the Motion to Stay Discovery [Doc. No. 43] (the "Stay Motion") filed by defendants Scott LaBonte ("SAL"), Sally A. LaBonte ("Sally LaBonte"), Marilyn P. LaBonte (Marilyn P. LaBonte"), Roland G. LaBonte ("Roland LaBonte"), Joseph W. Sparveri, Jr., CPA ("J. Sparveri, CPA"), Lawrence J. Marks, Esq. ("L. Marks, Esq."), Juliano & Marks, LLC ("J&M"), Paul Bourdeau, Esq. ("P. Bourdeau, Esq.") and Robert A. Landino ("R. Landino" and collectively the "Defendants").[1]

I.
## PRELIMINARY STATEMENT

The Stay Motion is Defendants' latest delay tactic that is part of a pattern of obstruction that began no later than 2010, when SAL and certain of the other Defendants began serially fraudulently conveying SAL's assets to obstruct the Goldberg Trustee from collecting a debt that has since formed the basis of a judgment exceeding $8 million (the "SAL Judgment").  Defendants have behaved shamelessly at every opportunity. Judge Dabrowski sanctioned SAL for spoliation of evidence, Judge Thompson found that the crime-fraud exception to the attorney-client privilege applied to SAL's communications with his attorneys, and P. Bordeau Esq. has admitted to a business practice of deleting emails and refused to confirm that he ceased that practice even after the Goldberg Trustee

---

[1] SAL, Sally LaBonte, Roland LaBonte, Marilyn LaBonte, and J. Sparveri, CPA, are each named as defendants in their individual capacity and as trustee of one or more trusts. Reference to any of SAL, Sally LaBonte, Roland LaBonte, Marilyn LaBonte, and J. Sparveri, CPA includes all capacities in which they are named as defendants.

sent his counsel a litigation hold letter directing him to do so.  Staying discovery under these circumstances would severely prejudice the Goldberg Trustee and the victims of the Ponzi scheme perpetrated by Michael S. Goldberg (the "Goldberg Victims").

The bankruptcy court has charged the Goldberg Trustee with the duty of maximizing the Goldberg Victims' recovery, who collectively have unpaid claims in the amount of approximately $20 million against the Goldberg Estate.   In furtherance of that duty, the Goldberg Trustee has alleged in detail Defendants' pattern of racketeering that they perpetrated to obstruct and impede the Goldberg Trustee from collecting the SAL Judgment.  This pattern has lasted at least nine years, is ongoing, and has cost the Goldberg Trustee millions of dollars in fees and expenses alone.  By contrast, Defendants have not articulated and cannot articulate substantial arguments in favor of dismissal or that the Goldberg Trustee's arguments are unfounded in the law.  Therefore, the Goldberg Trustee respectfully requests that the Court deny the Stay Motion.

## II.
## ARGUMENT

### a.  Legal Standard

Defendants argue that "[t]o warrant the grant of a stay of discovery, the dispositive motion must *merely* raise substantial issues with the [Goldberg] Trustee's case based on applicable law." (Stay Motion, at 7, emphasis added). Defendants are wrong. Indeed, "[t]he well-established law in [the Second] [C]ircuit [is] that '[a] motion to dismiss does not automatically stay discovery, except in cases covered by the Private Securities Litigation Reform Act.'" *Scinto*

*v. Ocean Link Co.*, Docket No. 3:17-cv-1528 (VLB), 2018 U.S. Dist. LEXIS 79771, at *12 (D. Conn. May 11, 2018), *quoting Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72 (S.D.N.Y. 2013). As a result, "discovery should not be routinely stayed simply on the basis that a motion to dismiss has been filed." *Id.* Indeed, a district court should exercise its discretion to stay discovery "[o]nly upon a party's showing of good cause . . ." *Id. See also*, *Hong Leong Finance Ltd. (Sing.)*, 297 F.R.D. at 72 ("[a]n overly lenient standard for granting motions to stay all discovery is likely to result in unnecessary discovery delay in many cases"). Thus, a motion to stay discovery must "be supported by 'substantial arguments for dismissal,' *...* or—in what we view as an equivalent formulation—that there has been 'a strong showing that the plaintiff's claim is unmeritorious.'" *Id.* (collecting cases, citations omitted).[2]

The party seeking the stay, in this case Defendants, bears the burden of establishing good cause. *Boost Oxygen, LLC v. Rocket Oxygen*, Docket No. 3:16-CV-01992 (VLB), 2017 U.S. Dist. LEXIS 224230, at *9 (D. Conn. Mar. 21, 2017). District courts consider three factors to determine whether a movant has made the required showing of good cause: "(1) whether a defendant has made a *strong showing* that the plaintiff's claim is unmeritorious, (2) the breadth of discovery and the burden of responding to it, and (3) the risk of unfair prejudice to the party opposing the stay." (Hon. Vanessa L. Bryant, Standing Order: Notice Re: Motion to Dismiss (quotations omitted, emphasis added).) A strong showing that a

---

[2] **Against the backdrop of this well-established rule and this Court's Standing Order specially informing parties that discovery is NOT stayed unless and until this Court says it is, Defendants have already unilaterally imposed a stay, refusing to provide initial disclosures as required by Fed. R. Civ. P 26.**

plaintiff's claims lack merit requires more than "[m]erely rais[ing] substantial issues" with a pleading, which is all that Defendants contend they have done via their Stay Motion. (Stay Motion, at 7.) Indeed, as set forth below, Defendants have failed to meet their burden to demonstrate a "strong showing" that the Goldberg Trustee's claims are "unmeritorious," and the Stay Motion should be denied.

### i. The Lost Debt Claim is Ripe

Defendants contend that the Goldberg Trustee's RICO claims, based on his inability to collect on the SAL Judgment as a result of Defendants' racketeering activity, is not ripe because the Goldberg Trustee has other avenues available to enforce the judgment and, therefore, the Trustee's damages are not reasonably ascertainable. *See, e.g.*, D'Addario *v. D'Addario*, 901 F.3d 80, 95 (2d Cir. 2018), *cert. denied* 139 S. Ct. 1331 (2019). Significantly, none of the cases that Defendants cite in support of their ripeness argument involve a duly appointed court officer who is charged with marshalling assets for the benefit of a group of fraud victims, and who Defendants continually, materially, and substantially obstructed from carrying out his official duties by organized and methodical racketeering activity. In this context, the cases cited by Defendants are unavailing.

Furthermore, the Goldberg Trustee's RICO claims are ripe because, as detailed in the Compliant, his damages are reasonably ascertainable. (Complaint, at ¶ 302). The Goldberg Trustee has commenced several fraudulent transfer claims against certain Defendants, but those fraudulent transfer claims do not present the opportunity for recovery, let alone the prospect for substantial

5

recovery as Defendants falsely contend. (*Compare*, Complaint, at ¶¶ 283-301, with Stay Motion, at 10 (arguing that the Complaint alleges that Defendants in the fraudulent transfer claims "retain substantial assets").) Moreover, Roland LaBonte has testified that he would transfer the assets of DEIPM to a new entity if the Trustee sought to attach DEIPM's assets, (Complaint, at ¶ 267), and Marilyn LaBonte has testified that she "would be willing" to do "anything" to help SAL and his family, "which is [her] family too." (*Id.*, at ¶ 266).[3]

The Goldberg Trustee has been "successfully frustrated" in his efforts to satisfy the SAL Judgment,[4] there is no "real possibility that the debt, and therefore the injury, may be eliminated or significantly reduced,"[5] and the outstanding portion of the SAL Judgment is more than "reasonably ascertainable.[6] Indeed, as of December 20, 2019, the SAL Judgment exceeded $8.7 million and, as detailed in the Complaint, there is no real possibility that the stayed fraudulent transfer actions will eliminate or even reduce this figure due to Defendants' conduct.

It is inconsistent with this Circuit's jurisprudence, and defies all notions of fairness and justice, to require the Goldberg Trustee to engage in perpetual fraudulent transfer litigation with no potential for recovery at the expense of the

---

[3] The Goldberg Trustee has every reason to believe that Roland LaBonte would transfer the assets of DEIPM if the Goldberg Trustee sought to attach them inasmuch as it was the prejudgment remedy application against Devcon that caused certain Defendants to transfer Devcon's assets to DEIPM knowing that the purpose of the transfer was to obstruct the Goldberg Trustee.

[4]*Stochastic Decisions, Inc.* v. *DiDomenico*, 995 F.2d 1158, 1166 (2d Cir. 1993).

[5] *Lanza* v. *Merrill Lynch & Co.*, 154 F.3d 56, 59 (2d Cir. 1998).

[6] *D'Addario*, 901 F.3d at 95.

Goldberg Victims before the Goldberg Trustee can hold Defendants accountable for their racketeering activity that rendered SAL judgment proof and the SAL Judgment uncollectable. Indeed, as the Supreme Court stated, "the RICO statute provides that its terms are to be liberally construed to effectuate its remedial purposes." *Boyle v. United States*, 556 U.S. 938, 944 (2009) (internal quotation omitted). Under the circumstances alleged in the Complaint, the remedial purpose of RICO mandates that the Goldberg Trustee pursue his RICO claims now.

Lastly, to the extent the lost debt claims could be deemed unripe, it is only because Defendants have synthetically generated the need for perpetual litigation by serially transferring and concealing SAL's assets for nearly a decade to obstruct and impede the Goldberg Trustee. The Court should not require or expect the Goldberg Trustee to exhaust the estate's resources by prosecuting fraudulent transfer claims against ever more removed transferees in hopes of obtaining some nominal recovery before holding Defendants accountable for the harm caused by their racketeering activity. The Goldberg Trustee's RICO claims are ripe and the Stay Motion should be denied.

### ii. The Lost Debt Claim is Not Barred by the Statute of Limitations

Defendants argue that if the Goldberg Trustee's RICO claims are ripe then they are barred by RICO's four-year statute of limitations because the Goldberg Trustee knew of the SALDT transfers by 2011. Defendants' argument is nonsensical, and assumes that the Goldberg Trustee's RICO claims—which are predicated upon the Goldberg Trustee's inability to recover on the SAL Judgment—accrued before the SAL Judgment became enforceable on October

27, 2017 (thirty days after Judge Thompson issued it on September 27, 2017). (*See* Fed. R. Civ. P. 62(a) ("Aᴜᴛᴏᴍᴀᴛɪᴄ Sᴛᴀʏ. Except as provided in Rule 62(c) and (d), execution on a judgment and proceedings to enforce it are stayed for 30 days after its entry, unless the court orders otherwise."). The Goldberg Trustee commenced this action on September 27, 2019, less than two years after the SAL Judgment became enforceable, and well within the four-year statute of limitations under RICO. Thus, the Stay Motion should be denied.

### iii. The Collection Expenses Claim is Not Time Barred

Defendants also argue that the Goldberg Trustee's claim to recover as RICO trebled damages the costs and attorney's fees (jointly, "Collection Expenses") incurred by the Debtor's estate as a result of Defendants' racketeering activity is *largely* time barred. (Stay Motion, at 13). In doing so, Defendants implicitly concede that even if their statute of limitations argument prevailed, which it cannot, the Goldberg Trustee would still have a timely claim to recover certain Collection Expenses that are not subject to dismissal on ripeness grounds. *See D'Addario*, 901 F.3d at 96 ("a plaintiff may recover legal fees, including expenses incurred in one or more attempts to combat a defendant's RICO violations through the legal system, as damages in a civil RICO action"); Ntc. Re: Mtn to Dismiss (relevant factors in weighing whether to stay discovery "include… whether dismissal will resolve the case").

Moreover, Defendants are wrong as a matter of law that a portion of the Collection Expenses are time barred. Defendants erroneously assert that the statute of limitations began to run on each date that the Goldberg Trustee's

professionals expended time. (Stay Motion, at 13). However, the statute of limitations on the Goldberg Trustee's claim for Collection Expenses did not begin to run until the Goldberg Trustee "became obligated to pay th[e] expense[s]." *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1105 (2d Cir. 1988). Thus, any Collection Expenses that the Goldberg Trustee became obligated to pay within four years of September 27, 2019 – the date the Complaint was filed – are not barred by the statute of limitations.

The Goldberg Trustee is a court appointed chapter 7 trustee.  As a result, the bankruptcy court must review and approve his professional's fees and expenses before the Goldberg Trustee is permitted (much less obligated) to pay them. *See* 11 U.S.C. §§ 330, 331. On October 21, 2015, the Goldberg Trustee submitted his Interim Fee Application of Zeisler & Zeisler, P.C., Counsel to James Berman, the Chapter 7 Trustee, Seeking Compensation and Reimbursement of Disbursements for the Period January 1, 2014 Through August 31, 2015 [Doc. No. 1382] (the "October 2015 Fee Application") in *In re Michael S. Goldberg, LLC, et al.*, Case No. 09-23370. The Court (*Shiff, J.*) granted the October 2015 Fee Application on November 12, 2015, at which point the Goldberg Trustee became obligated to pay to Zeisler & Zeisler, P.C. the fees and expenses related to time expended between January 1, 2014, and August 31, 2015. *See In re Michael S. Goldberg, LLC, et al.*, Case No. 09-23370, Doc. No. 1395. Thus, the Trustee's claim for the recovery of Collection Expenses from January 1, 2014 through the Complaint's filing is timely. *See Bankers Trust Co.*, 859 F.2d at 1105.

Finally, assuming, *arguendo*, that any of the Collection Expenses are

9

untimely, that result would not limit the scope of permissible discovery in this action concerning the Defendants' predicate acts and underlying RICO violations. The Collection Expenses are part of the Goldberg Trustee's damages. Regardless of whether recoverable Collection Expenses began to accrue in 2014 or 2015, the Goldberg Trustee must also prove the Defendants' pattern of racketeering that began no later than the RICO Meeting in June of 2010, at which P. Bourdeau, Esq. took notes about, *inter alia*, the participants agreement to transfer SAL's assets beyond the Goldberg Trustee's reach.  The date on which the Goldberg Trustee incurred Collection Expenses is irrelevant to the scope of discovery concerning Defendants' RICO violations.   Therefore, the Court should deny the Stay Motion.

    iv.  **The Goldberg Trustee States a Cognizable RICO Claim**

        a.  **The Goldberg Trustee Sufficiently Alleges Defendants' Commission of Predicate Acts**

The Complaint alleges numerous violations of federal law, all of which constitute RICO predicate acts as enumerated in 18 U.S.C. § 1961(1). (*See* Complaint, ¶¶ 311-399). Defendants attempt to distract attention from the seriousness of their respective conduct by characterizing the Goldberg Trustee's allegations as, "at most, a series of voidable fraudulent conveyances." The Complaint alleges substantially more than a series of fraudulent conveyances; Defendants efforts to recast the allegations in a more favorable light does not make their conduct less outrageous, less criminal, or less violative of RICO, and certainly does not provide a basis to stay discovery.

        A.  **18 U.S.C. § 152**

"Section 152(7) makes it a crime for a person to transfer or conceal knowingly and fraudulently either (1) his property; (2) the property of another person; or (3) the property of a corporation" with intent to defeat the provisions of title 11. *United States v. Sabbeth*, 262 F.3d 207, 212-13 (2d Cir. 2001). "[T]o make out a violation of [Section] 152(7) … plaintiffs must allege specific facts demonstrating that [defendant] made the transfer in contemplation of bankruptcy or otherwise with an intent to defraud a United State bankruptcy court or defeat the bankruptcy laws." *First Capital Asset Mgmt. v. Brickellbush, Inc.*, 219 F. Sup. 2d 576, 582 (S.D.N.Y. 2002).

Defendants do not meaningfully challenge the fact that the transfers alleged in the Complaint were made for the purpose of obstructing the Goldberg Trustee. (*See* Stay Motion, at 17). Instead, Defendants claim that "[a]pplying Section 152(7) to the transfer of assets by a transferor who is not a debtor, an insider or agent of a debtor, or even contemplating bankruptcy, merely because the creditor happens to be a trustee in bankruptcy, would constitute an unprecedented expansion of the scope of" Section 152(7). (Stay Motion, at 18). Defendants are wrong and Section 152(7) applies to precisely the circumstances now before this Court.

Before the year 1926, what is now Section 152 criminalized certain enumerated acts *only if* committed by the debtor.  However, when congress passed section 152, it changed the language referring to "a bankrupt 'while a bankrupt'" to "a person" to make clear that the statute is not limited in scope to debtors or those contemplating bankruptcy. *United States v. Joyner*, 23 F.2d 884

(W.D. La. 1927). Indeed, courts have recognized that Section 152 "attempts to cover all the possible methods by which a bankrupt *or any other person* may attempt to defeat the Bankruptcy Act through an effort to keep assets from being equitably distributed among creditors." *Stegeman v. U.S.*, 425 F.2d 984, 986 (9th Cir. 1970), *quoting 2* Collier on Bankruptcy 1151 (14th ed. 1968) (emphasis in original); *see also U.S. v. Johns*, 686 F.3d 438 (7th Cir. 2012). Thus, the law does not support Defendants' claim that Section 152 does not apply to non-debtors.

Pursuant to 11 U.S.C. § 704(a)(1), the Goldberg Trustee is charged with "collect[ing] and reduc[ing] to money the property of the estate for which such trustee serves." Such property includes the claims against SAL. Defendants intended to defeat the provisions of Title 11 including, *inter alia*, Section 704(a)(1), by transferring and knowingly and fraudulently concealing SAL's assets, as alleged in the Complaint. Thus, Defendants violated and conspired to violate 18 U.S.C. § 152.

### B.   18 U.S.C. § 1503

18 U.S.C. § 1503 provides, in relevant part:

> Whoever corruptly… endeavors to… impede any … officer in or of any court of the United States… in the discharge of his duty… or corruptly… obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be punished….

A private bankruptcy trustee, such as the Goldberg Trustee, is an "officer of the court" for purposes of Section 1503. *U.S. v. Crispo*, 306 F.3d 71, 81 (2d Cir. 2002) ("a trustee in bankruptcy is also a conventional court officer protected by the court-officer prong of § 1503").

The Complaint clearly alleges that Defendants "corruptly… endeavor[ed] to… impede" the Goldberg Trustee "in the discharge of his duty," including among other duties "collect[ing] and reduc[ing] to money the property of the estate for which such trustee serves" pursuant to 11 U.S.C. § 704(a)(1). Defendants have pointed to no case demonstrating that impeding the Goldberg Trustee in the manner detailed in the Complaint is not a violation of Section 1503. On the contrary, the court in *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1040 (2d Cir. 1984), quoted by Defendants, stated that Section 1503 "appears to be directed toward attempts to deflect jurors, witnesses, or judicial officials from the proper *performance of their duties…*." (Emphasis added.)

Likewise, the Complaint clearly alleges that Defendants "corruptly… obstruct[ed], or impede[d], or endeavor[ed] to… obstruct or impede, the due administration of justice…" under Section 1503. Such a violation requires a demonstration:

> 1) that there is a pending judicial or grand jury proceeding constituting the administration of justice, (2) that the defendant knew or had notice of the proceeding, and (3) that the defendant acted with the wrongful intent or improper purpose to influence the judicial or grand jury proceeding, whether or not the defendant is successful in doing so -- that is, 'that the defendant corruptly intended to impede the administration of that judicial proceeding.'

*U.S. v. Quattrone*, 441 F.3d 153, 170 (2d Cir. 2006) (citations and quotations omitted). The Goldberg Trustee alleges that there was a pending judicial proceeding (the Goldberg bankruptcy, among others), Defendants knew of the proceeding, and Defendants acted with wrongful intent and/or improper purpose

13

to influence the proceeding. Specifically, as a result of the egregious conduct meticulously detailed in the Complaint, Defendants needlessly prolonged the Goldberg bankruptcy, which caused the Goldberg Trustee, the Court and ultimately the Goldberg Victims to incur significant and otherwise unnecessary costs as a direct result. *See generally Nye v. U.S.*, 137 F.2d 73, 75 (4th Cir. 1943) (affirming conviction of individual under the predecessor to Section 1503 whose conduct caused a "delay in the trial of the action and great expense in connection therewith"); *United States v. Neal*, 951 F.2d 630, 632 (5th Cir. 1992) (affirming conviction under Section 1503 actions that "interrupted and delayed the criminal appeal").

## C.    18 U.S.C. § 1512

18 U.S.C. § 1512(c)(2) provides that "[w]hoever corruptly… otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so…" has committed a crime. Section 1503 and Section 1512 contain similar elements, *see generally U.S. v. Friske*, 640 F.3d 1288, 1291 n.3 (11th Cir. 2011) ("the elements of § 1503 are analogous to the elements of § 1512(c)(2)"). To the extent there are differences between the two statutes, those differences are immaterial to the analysis of the Goldberg Trustee's claims.

The Complaint sufficiently alleges that Defendants obstructed or impeded an official proceeding – the Goldberg bankruptcy – through the acts alleged in the Complaint, which prolonged the Goldberg bankruptcy and imposed unnecessary cost and expense on the Court, the Goldberg estate, and the Goldberg Victims. Thus, the Goldberg Trustee has adequately alleged violations of Section 1512.

### D.   18 U.S.C. §§ 1341 and 1343[7]

"A complaint alleging mail [Section 1341] and wire [Section 1343] fraud must show (1) the existence of a scheme to defraud, (2) defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme." *S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996). Defendants appear to quibble with the timing of the mail and wire fraud allegations vis-à-vis the entry of the SAL Judgment. The fact that Defendants committed certain acts prior to the entry of the SAL Judgment, but in furtherance of the Enterprise to Obstruct the Goldberg Trustee, does not make those acts any less violative of federal law. Indeed, "fraud at common law included a scheme to deprive a victim of his entitlement to money. For instance, a debtor who concealed his assets when settling debts with his creditors thereby committed common-law fraud." *Pasquantino v. U.S.*, 544 U.S. 349, 356 (2005); *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Sup. 2d 282, 300 (S.D.N.Y. 2000) ("mail and wire fraud statutes are broader than common law fraud"); *see also U.S. v. Van Doren*, 800 F.3d 998, 1002 (8th Cir. 2015) (citing *Pasquantino* and noting that "wire fraud under § 1343 can be established by a fraudulent scheme involving concealment").

Moreover, and significantly, courts have held that "concealing money from creditors" even before a judgment enters "can support a conviction for mail fraud" as well as wire fraud "when it is part of a scheme to defraud" *Gutierrez v.*

---

[7] The Stay Motion, at pages 20-21, seemingly challenges the Goldberg Trustee's wire fraud claims (under Section 1343) and mail fraud claims (under Section 1341) on the same basis. As such, the Goldberg Trustee jointly addresses these statutory sections.

*Givens*, 989 F. Sup. 1033, 1040 (S.D. Cal. 1997). Likewise, "transfer[s] [of] cash and assets… to execute portions of [Defendants'] fraudulent scheme to prevent [p]laintiff from enforcing his judgment" are RICO predicate acts under 18 U.S.C. §§ 1343 and 1341. *Stein v. New York Stair Cushion Co.*, Docket No. 04-CV-4741 (DRH)(ETB), 2006 U.S. Dist. LEXIS 8410, at *16 (E.D.N.Y. Feb. 10, 2006); *see also U.S. v. Feldman*, 853 F.2d 648, 654-55 (9th Cir. 1988) (affirming conviction for mail fraud under Section 1341 when defendant concealed certain funds from his creditors with the assistance of interstate mailing).

### E.      18 U.S.C. §§ 1956 and 1957

Defendants argue that they have a meritorious argument for dismissal of the Goldberg Trustee's predicate of money laundering pursuant to 18 U.S.C. §§ 1956 and 1957 because "the [Goldberg] Trustee has failed to allege that the 2010 asset transfers [from SAL and the SAL Rev. Trust to the SALDT] were criminal, [and thus] there is no basis to find that subsequent transactions involving the property transferred in 2010 constituted money laundering." (Stay Motion, at 23). Even if none of the funds or other assets transferred to the SALDT in 2010 are traceable to SAL's investments in the Goldberg Ponzi scheme, whether individually or as a feeder, the subsequent transfer of funds and other assets *does* constitute money laundering under 18 U.S.C. §§ 1956 and 1957.

18 U.S.C. § 1956(a)(1) provides in relevant part:

> Whoever, knowing that the property involved in a financial transaction[8] represents the proceeds of some

---

[8] The term "financial transaction" is defined in Section 1956(c)(4) as: "a transaction which in any way or degree affects interstate or foreign commerce (i) involving the movement of funds by wire or other means or (ii) involving one or more monetary instruments, or (iii) involving the transfer of title to any real property, vehicle, vessel, or

> form of unlawful activity, conducts or attempts to
> conduct such a financial transaction which in fact
> involves the proceeds of specified unlawful activity[9]--
> (A) (i) with the intent to promote the carrying on of
> specified unlawful activity; or …
> (B) knowing that the transaction is designed in whole or
> in part (i) to conceal or disguise the nature, the location,
> the source, the ownership, or the control of the
> proceeds of specified unlawful activity; …

The term "proceeds" means any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity." 18 U.S.C. § 1956(c)(9).

The Complaint alleges that Defendants (1) engaged in financial transactions as that term is defined in Section 1956(c)(4); (2) knew that the property being transferred as part of those financial transactions was the proceeds of specified unlawful activity as that term is defined in Section 1956(c)(7) (in that it was property "retained, directly or indirectly through" the commission of 18 U.S.C. §§ 152, 1341, 1343, 1503, and/or 1512); (3) "with the intent to promote the carrying on" of such specified unlawful activity; and/or (4) "knowing that the transaction was designed in whole or in part (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity." Thus, Defendants violated, or conspired to violate, 18 U.S.C. § 1956, and for the same reason also violated 18 U.S.C. §

---

aircraft, or (B) a transaction involving the use of a financial institution which is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree."

[9] The term "specified unlawful activity" is defined in Section 1956(c)(7) and includes a wide array of conduct, such as any activity that can be a RICO predicate act under 18 USC § 1961(1), such as violations of 18 U.S.C. §§ 152, 1341, 1343, 1503, and 1512.

1957(a).[10]

### F.  The Goldberg Trustee Sufficiently Alleges an Enterprise

Defendants argue that the Goldberg Trustee has failed to adequately allege a RICO enterprise. In fact, it is Defendants who have failed to adequately appraise this Court of the most recent and controlling United States Supreme Court authority on the issue of what constitutes a RICO association-in-fact enterprise: *Boyle v. U.S.*, 556 U.S. 938 (2009). Indeed, *every single decision* cited by Defendants in support of their argument concerning the enterprise alleged in the Complaint pre-dates *Boyle*, despite the fact that Defendants are fully aware of *Boyle* inasmuch as they cite it in the December 13, 2019, Joint Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint. The fact that Defendants rely exclusively on pre-*Boyle* decisions to argue that the Goldberg Trustee has not alleged an association-in-fact enterprise shows (i) Defendants' desperation to evade the Goldberg Trustee's investigation of his claims through discovery, and (2) the absence of any legitimate basis to stay discovery.

The Complaint alleges an association-in-fact enterprise comprised of SAL, Roland LaBonte, Sally LaBonte, and J. Sparveri, CPA. Under *Boyle*, "an

---

[10] 18 U.S.C. § 1957(a) provides in pertinent part:

> Whoever, in any of the circumstances set forth in subsection (d), knowingly engages or attempts to engage in a monetary transaction in criminally derived property that is of a value greater than $ 10,000 and is derived from specified unlawful activity, shall be punished…

The term "criminally derived property means any property constituting, or derived from, proceeds obtained from a criminal offense," such as 18 U.S.C. §§ 152, 1341, 1343, 1503, and/or 1512. 18 U.S.C. § 1957(f)(1). The term "proceeds" has the same definition as that used in Section 1956. 18 U.S.C. § 1957(f)(3).

association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle*, 556 U.S. at 946. As alleged in the Complaint, the purpose of the Enterprise to Obstruct the Goldberg Trustee is to impede and obstruct the Goldberg Trustee's efforts to secure and satisfy the SAL Judgment. Likewise, the Complaint alleges numerous relationships among those associated with the enterprise, from familial to business to professional, who all shared a common interest in achieving the enterprise's purpose. Finally, the Enterprise to Obstruct the Goldberg Trustee began in 2010 at the RICO Meeting and continues to this day, which is more than sufficient time to permit the members of the enterprise and their conspirators to pursue the enterprise's purpose.

With respect to racketeering activity in which an enterprise engages, *Boyle* made clear that "the evidence used to prove the pattern of racketeering activity and the evidence establishing an enterprise may in particular cases coalesce." *Boyle*, 556 U.S. at 947 (quotations omitted). While an enterprise "is a separate element that must be established as part of the RICO offense… it does not need to be ascertainably distinct from the pattern of racketeering activity." *Allstate Ins. Co. v. Etienne*, Docket No. 09-CV-3582 (SLT)(RLM), 2010 U.S. Dist. LEXIS 113995, at *22 (E.D.N.Y. Oct. 22, 2010) (rejecting an argument identical to that made by Defendants). Indeed, an "enterprise may be formed 'solely for the purpose of carrying out a pattern of racketeering acts,' so long as it embodies the requisite structure to make it an enterprise." *Hemmerdinger Corp. v. Ruocco*, 976 F. Sup.

2d 401, 414 (E.D.N.Y. 2013) (quoting *Boyle*). Thus, the Complaint more than adequately alleges an association-in-fact enterprise.

### G.   The Goldberg Trustee Sufficiently Alleges Continuity

The Defendants have not raised a "substantial argument[] for dismissal" with respect to the Goldberg Trustee's assertion of closed-ended continuity.[11] *Hong Leong Finance Ltd. (Sing.)*, 297 F.R.D. at 72.

"To satisfy closed-ended continuity, the plaintiff must prove a series of related predicates extending over a substantial period of time. Although [relatedness] factors such as the number and variety of predicate acts and the number of participants may be germane to this showing, closed-ended continuity is primarily a temporal concept." *Spool v. World Child Intern'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008). Generally, courts in this Circuit require "that the crimes extend over at least two years" to satisfy the closed-ended continuity requirement. *Reich v. Lopez*, 858 F.3d 55, 60 (2d Cir. 2017).

With respect to the primary, temporal inquiry relative to the closed-ended continuity analysis, the Goldberg Trustee alleges predicate acts that span well over two years. Indeed, from the inception of the Enterprise to Obstruct the Goldberg Trustee in June of 2010 to the most recent series of alleged predicate acts related to the DEIPM refinance transactions culminating in January of 2016, the Complaint succinctly alleges that Defendants engaged in multiple predicate acts in furtherance of the Enterprise to Obstruct the Goldberg Trustee over approximately six years. Thus, the Complaint adequately alleges the primary

---

[11] The Goldberg Trustee does not concede that open ended continuity does not exist in this matter. However, in the context of the Stay Motion, it is needlessly duplicative to address both open and closed-ended continuity.

temporal component of closed-ended continuity.

Beyond this temporal concept, "other factors such as the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes are also relevant in determining whether closed-ended continuity exists." *DeFalco v. Bernas*, 244 F.3d 286, 321 (2d Cir. 2001). These additional factors all demonstrate that closed-ended continuity exists. First, the Goldberg Trustee alleges violations of seven discrete criminal statutes that Defendants violated in many ways – from transferring assets to the SALDT to liquidating certain assets held by the SALDT to transferring and transforming Devcon into DEIPM – over the course of approximately six years. Second, Defendants' racketeering activity has harmed not only the Goldberg Trustee but also the hundreds of victim/creditors of the Goldberg Ponzi scheme (in the form of smaller distributions to satisfy their restitution and bankruptcy claims).

Likewise, the Complaint alleges that seventeen separate Defendants committed predicate acts in furtherance of the Enterprise to Obstruct the Goldberg Trustee. Finally, while the Enterprise to Obstruct the Goldberg Trustee had one overarching purpose (impeding the Goldberg Trustee's efforts to protect and collect the SAL Judgment), Defendants sought to achieve this purpose through a series of smaller schemes (such as the transfer of assets to the SALDT, the sale of certain assets to R. Landino, the shuttering of Devcon and the creation of DEIPM, and DEIPM's efforts in refinancing debt to strip equity from certain property and distribute those proceeds to SAL and the LaBonte family, who quickly dissipated them), as alleged in the Complaint.  (Complaint, ¶¶ 57-310).

Thus, the Trustee has sufficiently alleged closed-ended continuity.

      **v.**    **The Breadth and Burden of Discovery does not Mandate a Stay**

Defendants claim that the Goldberg Trustee's "discovery requests undoubtedly will be expansive given the scope of the allegations in the Complaint." (Stay Motion, at 29). At the same time, and in effort to have it both ways, Defendants argue that the Goldberg Trustee will not be prejudiced by a stay of discovery because he has already obtained substantial discovery via previously filed actions. The Goldberg Trustee has obtained discovery in other actions, and in an effort to ensure that discovery in this action is not duplicative of discovery previously obtained, he advocated for the inclusion of certain provisions in the parties' Rule 26(f) report to permit the use of discovery obtained from prior actions in this action. In addition, and as set forth in the 26(f) report, the parties agreed that the standard twenty-five (25) interrogatories per party is sufficient and the Goldberg Trustee estimated that he will require a total of 15 fact witness depositions as compared to the 20 fact witness depositions that Defendants intend to seek. (26(f) Report, at 21.)

Discovery in this matter is unlikely to be any more burdensome than a typical case and, given the prior discovery conducted between the Goldberg Trustee and certain Defendants, may in fact be less onerous. Moreover, the Trustee will need to respond to discovery from multiple parties, whereas Defendants will only need to respond to discovery from the Trustee. Thus, the discovery burdens will likely be much greater on the Trustee than they are on Defendants.  The Trustee is prepared to proceed with discovery and adamantly

opposes a stay.

   vi.   <u>There is a Severe Risk of Unfair Prejudice to the Goldberg Trustee</u>

   There is a severe risk of unfair prejudice to the Goldberg Trustee if discovery is stayed. Some Defendants have a well-established track record of destroying documents. Indeed, Judge Dabrowski sanctioned SAL for such conduct in 2015. (Complaint, ¶¶ 54-56).

   Similarly, P. Bourdeau, Esq. testified that he regularly deletes his emails and relies on an assistant to print out and save copies of the same. P. Bourdeau, Esq. admitted during a deposition that his business practice of printing and deleting email is not perfect and there could be emails that are not printed before he deletes them. To ensure that all relevant and responsive documents were retained, in April 2019, counsel for the Goldberg Trustee sent a letter to P. Bourdeau, Esq.'s counsel asking for confirmation that P. Bourdeau, Esq. had ceased his business practice of deleting emails and that all electronic data was being preserved. The Goldberg Trustee did not receive a response to his letter, further underscoring the risk of unfair prejudice from a stay of discovery.

   In addition, Defendants' racketeering activities began over nine years ago. It is axiomatic that, as time passes, memories fade and the likelihood that documents will be genuinely lost increases.

   Lastly, Defendants falsely contend that the "the [Goldberg] Trustee… continues to have the ability to seek information and move for discovery in the pending fraudulent conveyance actions." (Stay Motion, at 31.) First, the Goldberg Trustee cannot obtain discovery in the fraudulent transfer actions because the

bankruptcy and district courts stayed two and a stay in the third, *James Berman, Trustee v. Robert A. Landino, et. al.*, Adv. Pro. No. 16-02042(JAM), is presently being litigated. Second, any discovery that the Trustee could obtain in those actions would be limited to the allegations therein, not the broader RICO allegations in this action involving far more heinous conduct than the allegations in the fraudulent transfer actions. Indeed, if Defendants honestly believed that discovery in the fraudulent transfer action was available and adequate to cover the issues in this action, they would not have wasted the Court's, the Goldberg Trustee's and their own time and money seeking a stay of discovery in this action, because that stay would be substantively meaningless.   For these reasons, the Goldberg Trustee is entitled to take discovery in this action regarding the allegations of the Complaint.

      **vii.**    <u>**Conclusion**</u>

For all of the foregoing reasons, the Goldberg Trustee respectfully requests that the Court deny Defendants' Motion to Stay Discovery and grant Plaintiff such other and further relief that this Court deems just and proper.

**JAMES BERMAN, CHAPTER 7 TRUSTEE**
**FOR THE SUBSTANTIVELY CONSOLIDATED**
**ESTATE OF MICHAEL S. GOLDBERG, LLC**
**AND MICHAEL S. GOLDBERG**

**By:  _/s/ Christopher H. Blau_**
**Aaron A. Romney (ct28144)**
**James M. Moriarty (ct21876)**
**Christopher H. Blau (ct30120)**
**ZEISLER & ZEISLER, P.C.**
**10 Middle Street, 15th Floor**
**Bridgeport, Connecticut 06604**
**Tele: (203) 368-4234**
**Fax: (203) 367-9678**
**Email: aromney@zeislaw.com**
**jmoriarty@zeislaw.com**
**cblau@zeislaw.com**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 20, 2019, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Christopher H. Blau*
Christopher H. Blau (ct30120)