UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMES BERMAN, Chapter 7 Trustee for the Substantively Consolidated Estate of Michael S. Goldberg, LLC and Michael S. Goldberg,<br><br>Plaintiff,<br><br>v.<br><br>SCOTT A. LABONTE *et al.*,<br><br>Defendants. | Case No. 19-cv-1533 (VLB)<br><br>January 3, 2020 |

**DEFENDANTS' REPLY MEMORANDUM OF LAW
<u>IN SUPPORT OF MOTION TO STAY DISCOVERY</u>**

Defendants respectfully submit this reply memorandum of law in further support of their Motion to Stay Discovery pending adjudication of their motions to dismiss the Complaint, filed on December 13, 2019.

## PRELIMINARY STATEMENT

The Trustee has failed to refute Defendants' showing of good cause for a stay of discovery. The Trustee is unable to rebut the numerous and meritorious grounds for dismissal of the Complaint and cannot dispute that discovery in this case, relating to conduct spanning six years and involving tens of individuals and entities, will be both broad and burdensome. The Trustee also fails to identify any genuine prejudice that he would suffer from the granting of the modest stay requested by Defendants. The Trustee delayed bringing this action for years after learning of his alleged injury, and his protestations of urgency are simply not credible.

**I.   THE TRUSTEE FAILS TO REBUT THE GROUNDS FOR DISMISSAL OF THE COMPLAINT[1]**

    **A.   The Lost Debt Claim Is Unripe**

The pending fraudulent conveyance actions brought by the Trustee render damages in this case indefinite, and the "lost debt" claim is therefore unripe. Dkt. No. 58 ("Joint Br."), at § II. In response to the long line of Second Circuit precedent establishing that "claims for 'lost debt' injuries . . . are unripe when

---

[1] Defendants incorporate herein the arguments contained in their joint (Dkt. No. 58) and individual memoranda of law (Dkt. Nos. 52-1, 54-1, 55-1, 56-1, 57-1) submitted in support of their motions to dismiss. The arguments addressed here are those advanced jointly by all Defendants, but the additional arguments advanced by Defendants individually provide further support for the requested stay.

parallel proceedings to collect the amount owed are ongoing in another forum,"[2] the Trustee asserts that (1) his status as a "duly appointed court officer" distinguishes this case; (2) Defendants have "synthetically generated the need for perpetual litigation by serially transferring and concealing [Scott LaBonte's] assets"; and (3) there is "no potential for recovery" in the pending fraudulent conveyance actions. Dkt. No. 61 ("Opp. Br."), at 5-7. None of these arguments is availing.

The Trustee does not cite any authority for the proposition that claims asserted by a bankruptcy trustee are subject to different rules of accrual than other claims. Nor does the Trustee cite a single case where the court considered whether the defendant "generated the need" for the parallel litigation in assessing whether the RICO claim was ripe. Indeed, the Second Circuit cases establishing that lost debt claims are not ripe while parallel proceedings are ongoing addressed the same type of conduct alleged here—fraudulent conveyances to avoid a creditor.[3] The defendants in those cases were thus alleged to have "generated the need" for the parallel litigation, yet their RICO claims were nonetheless deemed unripe.

The Trustee's speculation that the fraudulent conveyance actions will not result in substantial recovery does not render the lost debt claim ripe. As previously explained, the Complaint itself acknowledges that the defendants in

---

[2] *D'Addario v. D'Addario*, 901 F.3d 80, 93 (2d Cir. 2018).
[3] *See Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1161-1164 (2d Cir. 1993) (dismissing lost debt claim as unripe where plaintiff alleged a pattern of racketeering activity including "bankruptcy fraud" and "wire fraud" "to prevent [the plaintiff] from collecting the amounts it was owed"); *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1099 (2d Cir. 1988) (same).

the pending fraudulent conveyance actions retain substantial assets, Compl.¶¶ 283-99, and the Second Circuit has held that even a parallel proceeding that provides only a "forlorn hope" and the potential to "yield little of value" renders a RICO claim unripe.[4]  *See* Joint Br. at 14-17.  The Trustee's reiteration of the conclusory allegations in the Complaint that the ongoing recovery actions have been "successfully frustrated" is plainly insufficient to overcome the governing Second Circuit precedent.[5]

    **B.**    **The Lost Debt and Collection Expense Claims are Barred by the Statute of Limitations**

Even if the lost debt claim were deemed ripe, the Trustee does not dispute that he was aware of the conduct giving rise to the claim *eight years ago*, and that he had by that time already calculated the exact amount of the estate's claim against Scott LaBonte.  Joint Br. at § III.A.  Because he is unable to deny that he learned of the lost debt injury well outside the limitations period—the only relevant issue under the Second Circuit's injury-discovery rule of accrual—the Trustee instead asserts that the claim is "predicated upon [his] inability to recover on the SAL Judgment," and therefore the claim could not have accrued prior to entry of the judgment in 2017.  Opp. Br. at 7-8.  As Defendants have shown, the Trustee's artifice is contrary to the injury-discovery rule and would render the statute of limitations a nullity.  *See* Joint Br. at 19-21.  Moreover, the

---

[4] *Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 137 (2d Cir. 2003).
[5] Moreover, the Trustee's assertion that the pending actions will be fruitless is simply gamesmanship; the Trustee represented to the Bankruptcy Court that the SALDT Action, one of the four pending fraudulent conveyance actions, "has substantial value."  Status Report, *In re Goldberg*, No. 09-23370, Dkt. No. 1504, at 5 (Bankr. D. Conn. Jan. 26, 2018).  And, tellingly, the Trustee has not abandoned the fraudulent conveyance actions.

Trustee's position that no injury was suffered until 2017 establishes that Defendants' alleged conduct preceding entry of the judgment could not have constituted wire fraud because the estate had no recognizable property interest until 2017.  *See infra* at 6-8; Joint Br. at § V.A.4.

The Trustee also argues that the collection expense claim is timely because, although the fees were incurred by the estate more than four years prior to the filing of the Complaint, his application to the Bankruptcy Court for approval of his fees was not granted until November 2015, within the limitations period. This position is contrary to the injury-discovery rule and Second Circuit precedent.  In *Bankers Trust Co. v. Rhoades*, the Second Circuit held that the RICO plaintiff had a timely claim for those collection expenses "which it *discovered* or should have discovered" within the limitations period.[6]  The Court's statement on which the Trustee relies (*i.e.*, that the collection expense injury was suffered "when [the plaintiff] became obligated to pay that expense") was made in rejecting the plaintiff's attempt to do exactly what the Trustee is attempting to do here—delay accrual of the claim until the collection expenses were actually paid.  The Second Circuit held that a plaintiff cannot "postpone accrual of its claim until it had paid its legal expenses," because it would allow the plaintiff to "keep its claim open indefinitely simply by protracting the litigation."[7]  Likewise here, the Trustee cannot toll the estate's claim by his unilateral decision to delay the application for approval of his fees.

---

[6] 859 F.2d 1096, 1105 (2d Cir. 1988) (emphasis added).
[7] *Id.* (quoting *Bankers Trust Co. v. Feldesman*, 676 F. Supp. 496, 504 (S.D.N.Y. 1987)).

4

The Bankruptcy Court's responsibility to ensure that any fee award is "reasonable," 11 U.S.C. § 330(a)(1)(A), did not prevent the estate's collection expense injury from accruing. "*Bankers Trust* does not say that a potential plaintiff must be able to calculate his loss down to the penny before his RICO injury can be said to exist; all that is required is that the injury not be 'speculative.'"[8] The alleged collection expense injury was clear and definite when the fees were incurred, even if the precise amount of the claim was subject to Bankruptcy Court approval and, in that limited respect, not yet "fully quantifiable."[9] Unlike the alleged lost debt injury, there are no pending collateral proceedings that affect whether the collection expense injury was incurred.[10]

### C. The Trustee Fails to Allege Predicate Acts of Racketeering Bankruptcy Fraud.

The Trustee does not address, and apparently concedes, that he has failed to allege any violation of 18 U.S.C. § 152(1) because the property involved in the contested transactions did not belong to the debtor's estate. Regarding his claims under 18 U.S.C. § 152(7), the Trustee simply notes that individuals other than a debtor in bankruptcy may violate Section 152(7). Opp. Br. at 11-12. Defendants concede as much, *see* Dkt. No. 43, at 16-17, and the Trustee completely ignores Defendants' actual argument—"an intention to engage in a transfer for the purpose of hindering potential creditors does not

---

[8] *131 Main St. Assoc. v. Manko*, 897 F. Supp. 1507, 1517 (S.D.N.Y. 1995).
[9] *Butala v. Agashiwala*, 916 F. Supp. 314, 317 (S.D.N.Y. 1996).
[10] *See D'Addario*, 901 F.3d at 96 (holding that collection expense injury was "clear" and "definite," even though the amount of the claim could change, because the pending collateral proceedings regarding distribution of the estate at issue did not affect the collection expense injury).

alone rise to the level of bankruptcy fraud,"[11] and there is *no* precedent for application of Section 152(7) to the transfer of assets by a transferor who is not a debtor, an insider or agent of a debtor, or even contemplating bankruptcy, merely because the creditor happens to be a trustee in bankruptcy. A civil RICO action is not the proper venue for an unprecedented expansion of the scope of federal criminal law.[12]

**Obstruction of Justice.** Like his argument with respect to bankruptcy fraud, the Trustee asserts that his status as a bankruptcy trustee renders criminal acts that otherwise plainly do not constitute obstruction of justice. Opp. Br. at 13-14. As Defendants have explained, the obstruction of justice statutes prohibit "interferences with the 'administration of justice,' which means *judicial procedure.*"[13] Joint Br. at § V.A.3. The Trustee concedes that the Complaint does not allege any such interference with judicial proceedings, yet alleges that any conduct to avoid a claim by the Trustee, because he is a "judicial officer," is criminal obstruction of justice. Opp. Br. at 13. As recognized by the Second Circuit, there is no precedent for such an expansion of the statute,[14] and adopting it here would violate the rule of lenity.

**Wire Fraud.** The Trustee's allegations of mail and wire fraud fail as a matter of law because, *inter alia*, all of the conduct alleged in the Complaint occurred

---

[11] *First Cap. Asset Mgmt., Inc. v. Brickellbush, Inc.*, 219 F. Supp.2d 576, 582 (S.D.N.Y. 2002).
[12] *See Skilling v. United States*, 561 U.S. 358, 411 (2010) (the rule of lenity "is especially appropriate in construing . . . predicate offenses under [RICO]") (internal quotation marks and alterations omitted).
[13] *United States v. Howard*, 569 F.2d 1331, 1337 (5th Cir. 1978).
[14] *See In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1035-36 (2d Cir. 1984).

prior to the entry of the SAL Judgment in 2017, and prior to that time the Trustee had no recognizable property interest that was implicated by Defendants' alleged conduct.[15] The Trustee characterizes Defendants' argument as "quibbl[ing] with the timing of the mail and wire fraud allegations vis-à-vis the entry of the SAL Judgment." Opp. Br. at 15. But pointing out the fundamental legal flaw in the Trustee's allegations is hardly "quibbling."

The cases cited by the Trustee to support the proposition that a defendant may be convicted of mail or wire fraud for "concealing money from creditors even before a judgment enters" are inapposite. Opp. Br. at 15-16. Defendants do not argue that a creditor must have a judgment to be a victim of wire fraud, but rather that the creditor must have a *recognizable property interest*. *See* Joint Br. at § V.A.4. For example, in *Stein v. New York Stair Cushion Co., Inc.*, cited by the Trustee, the plaintiff creditor did not have a judgment at the time of the alleged wire fraud, but he did have *a promissory note*, *i.e.*, a recognizable property interest that was implicated by the defendants' alleged fraudulent conveyances.[16] Likewise, in *Gutierrez v. Givens*, the other case relied upon by the Trustee, the Court held that the funds fraudulently conveyed by the defendants could arguably be traced to funds *fraudulently obtained* from the plaintiffs in the defendants' fraudulent scheme, and therefore the "[m]isuse of these funds would

---

[15] As noted above, the Trustee himself takes the position that he did not suffer any injury until entry of the SAL Judgment in 2017. Opp. Br. at 7-8.
[16] No. 04-cv-4741, 2006 WL 319300, at *1 (E.D.N.Y. Feb. 10, 2006). The Trustee's reason for citing *United States v. Feldman*, 853 F.2d 648 (9th Cir. 1988), is unclear. There, the Court held that the mailings were "part of a scheme to defraud, in this case a scheme to keep the ill-gotten gains from [an arson] concealed from creditors." *Id.* at 654. Unlike this case, the plaintiff in *Feldman* already had a judgment at the time of the alleged transactions constituting mail fraud.

7

constitute actionable fraud against Plaintiffs' property rights at the time that the actions in question occurred."[17]  Simply stated, the Trustee has not cited any case holding that the mere transfer of unattached property, in the absence of any property interest in the plaintiff or any scheme involving misrepresentation or deceit, constitutes wire or mail fraud.

**Money Laundering.**  The Trustee concedes that the transfers of Scott LaBonte's assets in 2010 cannot constitute money laundering.  *See* Opp. Br. at 16.  Because the 2010 asset transfers did not violate any federal criminal statute, *see* Joint Br. at § V.A, the subsequent transactions could not have "involved the proceeds of specified unlawful activity," 18 U.S.C. § 1956, and, like the 2010 transfers, cannot constitute money laundering.

### D.   The Trustee Has Failed to Allege the Existence of an Enterprise

The Trustee's reliance on *United States v. Boyle*, 556 U.S. 938 (2009), to support his argument that he has adequately alleged the existence of an "enterprise" is misplaced.  In *Boyle*, the Supreme Court rejected the argument that an association-in-fact enterprise must have "structural attributes" in addition to those that "can be fairly inferred from the language of the statute," such as a "hierarchy," "role differentiation," a "unique modus operandi," and a "chain of

---

[17] 989 F. Supp. 1033, 1040 (S.D. Cal. 1997).  The *Gutierrez* Court also rejected the defendants' more general argument that wire fraud requires the existence of "vested property rights." *Id.* at 1040.  This general statement is contrary to the strong weight of authority, *see* Joint Br. at § V.A.4, and even if it were controlling here, it does not address the fact that the conduct alleged in the Complaint not only does not involve a recognizable property interest, but, unlike *Gutierrez*, does not involve any scheme involving misrepresentation or deceit, the second required element of a claim for wire fraud.  *See* Joint Br. at 39-41.

command."[18]  Defendants have made no such argument here, and the Court in *Boyle* did not disturb, and in fact repeatedly reaffirmed, the definition of an association-in-fact enterprise set forth in *United States v. Turkette*:  "a group of persons associated together for *a common purpose* of engaging in a course of conduct," "proved by evidence of an *ongoing organization*, formal or informal, and by evidence that the various associates function as a *continuing unit*."[19]  The allegations in the Complaint do not establish a "continuing unit" with a "common purpose."  *See* Joint Br. at § V.C.  Although "proof used to establish the[] separate elements [of a RICO enterprise and a pattern of racketeering activity] may *in particular cases coalesce*, proof of one does not necessarily establish the other."[20]  The alleged enterprise consists of individuals who have a variety of personal and legitimate business ties that long pre-dated the alleged racketeering activity and whose alleged interests and participation varied widely across the alleged racketeering period.  In these circumstances, the mere allegation of predicate acts is inadequate.[21]

---

[18] *United States v. Boyle*, 556 U.S. 938, 948 (2009).
[19] 452 U.S. 576, 580, 583 (1981) (emphasis added).
[20] *Id.* at 583 (emphasis added); *Boyle*, 556 U.S. at 947 (same).
[21] *C.f., e.g., United States v. Mazzei*, 700 F.2d 85, 89 (2d Cir. 1983) (holding the government satisfied the enterprise requirement by presenting evidence that the defendants "shared a common purpose [in] illegally shaving points on [basketball] games to maximize their chances of betting successfully on those games," and that "they functioned as a continuing unit . . . during the 1978-79 [Boston College] basketball season"); *JSC Foreign Econ. Ass'n Technostroyexport v. Weiss*, No. 06 Civ. 6095, 2007 WL 1159637 (S.D.N.Y. Apr. 18, 2007) (involving a scheme in which each of the members of the enterprise participated throughout the scheme and personally profited from the various transactions).

### E. The Conduct Alleged in the Complaint Does Not Constitute Continuing Criminal Activity

The Trustee apparently concedes that he is unable to establish open-ended continuity, *see* Opp. Br. at 20, and his argument that the Complaint satisfies the various factors considered in assessing closed-ended continuity fails. The Trustee has alleged a single scheme, targeting a single victim, consisting of only a four-member alleged enterprise, and involving only a single type of conduct— allegedly fraudulent conveyances of property. *See* Joint Br. at § V.D.2. The Trustee's attempt to fracture the alleged effort to avoid a single creditor into a "series of smaller schemes," and his erroneous assertion that the asset transfers violated "seven discrete criminal statutes," Opp. Br. at 20-21, do not support the conclusion that the conduct alleged in the Complaint constituted "continuing criminal activity."

## II. DISCOVERY IN THIS MATTER WILL BE BURDENSOME

The Trustee asserts that discovery in this matter will not be particularly burdensome because he has already obtained substantial discovery in the pending fraudulent conveyance actions. Opp. Br. at 22. Yet the Trustee has also stated that "[a] *significant amount* of relevant information remains exclusively in the Defendants' possession," and that "*meaningful discovery* still needs to be taken . . . ." Dkt. No. 18, at 2, 56 n.2 (emphasis added). Regardless, the Trustee's access to substantial discovery does not change the fact that this RICO action will require Defendants to seek extensive discovery from the Trustee regarding numerous issues that were not raised in the pending fraudulent conveyance actions, including the Trustee's knowledge of the conduct giving rise to his

10

claims, his purported efforts to satisfy the SAL Judgment in numerous litigations over the course of years, and the basis for the years of attorneys' fees for which he seeks to hold Defendants liable.[22] Moreover, all Defendants, most of whom are alleged to have been individually involved in only a fraction of the conduct alleged in the Complaint, would need to seek discovery relating to the entirety of an alleged conspiracy that purportedly spans six years and involves tens of individuals, entities, and transactions. Subjecting Defendants to this burden while potentially dispositive motions to dismiss are pending is unwarranted and inefficient.[23]

## III.   A TEMPORARY STAY PRESENTS NO RISK OF PREJUDICE TO THE TRUSTEE

To support his argument that a temporary stay will cause him a "severe risk of unfair prejudice," the Trustee cites a ruling four years ago that granted an adverse inference against Scott LaBonte due to his spoliation, in 2011, of evidence relating to transactions with the debtor that are not at issue in this

---

[22] The Trustee's attorneys at Zeisler & Zeisler, P.C. are likely to be fact witnesses on these issues due to their representation of the Trustee in the fraudulent conveyance actions. Therefore, if the firm does not withdraw, Defendants will likely have to file a motion for disqualification of Zeisler & Zeisler, P.C. pursuant to Local Rule 83.13 prior to the commencement of discovery.

[23] As an example of the unfair burden and inefficiency that would follow from proceeding with discovery in this case, fact discovery in the Landino Action, which involves identical allegations, is complete, and Mr. Landino has already moved for summary judgment. The granting of this motion would refute the fundamental premise of the Trustee's claims against several Defendants here (*i.e.*, that the transactions involving Scott LaBonte, Landino, and Marks were fraudulent conveyances), and even if it is denied, the case is close to trial-ready. Judicial efficiency is not served by allowing discovery to proceed while there are both pending motions to dismiss in this case and potentially preclusive motions pending in the parallel proceedings.

matter.[24]  The assertion that the Trustee is anxious to engage in discovery to prevent spoliation of evidence is belied by the fact that he delayed initiating this action for almost four years after the conclusion of the purported racketeering scheme (in January 2016), and over eight years after becoming aware that Scott LaBonte had rendered himself insolvent while allegedly retaining the benefit of the transferred assets.  *See* Joint Br. at § III.A.  During that time, the Trustee obtained "tens of thousands of pages of documents produced during discovery" and "elicited more than one hundred hours of testimony" in ongoing fraudulent conveyance actions relating to the exact same transactions at issue here.  Compl. ¶ 286.

Moreover, the Trustee continues to have the ability to seek any discovery and remedies he deems appropriate in the pending fraudulent conveyance actions, one of which was filed in 2017, well after the completion of the purported racketeering conspiracy.  The Trustee asserts that stays entered in certain of the ongoing actions prevent him from engaging in discovery.  But the stay orders provided that any party could seek to lift the stay for cause, and the Trustee is free to do so.  Instead, the Trustee is currently *opposing* Defendants' motions to

---

[24] The Trustee also strains to characterize Mr. Bourdeau's practice of deleting emails from his inbox and printing hard copies for retention in his client files as "similar[]" to spoliation of evidence.  This claim is nonsensical on its face and also irrelevant, as Mr. Bourdeau and his firm have already produced all responsive documents in their possession in response to a subpoena served by the Trustee on January 29, 2015, in one of the pending fraudulent conveyance actions.  Given that the Trustee did not serve a litigation hold notice on Mr. Bourdeau's law firm until June 2014, the Trustee was only able to obtain Mr. Bourdeau's 2010 emails *because* of his practice of maintaining hard copies of emails in the client files.  Indeed, Mr. Bourdeau and his firm produced his handwritten notes from the June 2010 meeting on which the Trustee so heavily relies.  This is hardly the conduct of someone seeking to destroy evidence.

12

lift the stays.[25]  The Trustee cannot be heard to argue that he is prejudiced by a modest stay of discovery in this action while he simultaneously seeks to prevent the pending actions from proceeding.

## CONCLUSION

For the foregoing reasons, Defendants have demonstrated good cause for a stay of discovery pending resolution of their motions to dismiss.

Dated:  January 3, 2020

                **FINN DIXON & HERLING LLP**

                By: /s/ Alfred U. Pavlis
                    Alfred U. Pavlis (ct08603)
                    David R. Allen (ct30827)
                    Finn Dixon & Herling LLP
                    Six Landmark Square
                    Stamford, CT 06901-2704
                    Tel: (203) 325-5000
                    Fax: (203) 325-5001
                    apavlis@fdh.com
                    dallen@fdh.com

                *Attorneys for Paul Bourdeau, Esq.*

---

[25] *See* Joint Br. at 17 n.8 & 9.  After expiration of the most recent stay in the Landino Action (to which Mr. Landino had not consented), Mr. Landino objected to the Trustee's motion for a permanent stay, as did Scott LaBonte and the LLCs managed by him, to allow adjudication of the pending motion for summary judgment.  *See Berman v. Landino*, Adv. Proc. No. 16-02042 (Bankr. D. Conn.), Dkt. Nos. 170, 173, 177; *supra* n.23.  A hearing on the Trustee's motion to maintain the stay in the Landino Action is scheduled for January 14, 2020.  Scott and Sally LaBonte have also filed a notice with the court withdrawing their consent to a stay in the SALDT Action.  *Berman v. LaBonte et al.*, No. 15-cv-1687 (D. Conn.), Dkt. No. 115.

| | |
|---|---|
| **PULLMAN & COMLEY LLC** | **MARK H. DEAN, PC** |
| By: /s/ James T. Shearin<br>    James T. Shearin (ct01326)<br>    Thomas S. Lambert (ct29561)<br>    Pullman & Comley LLC<br>    850 Main Street<br>    P.O. Box 7006<br>    Bridgeport, CT 06601-7006<br>    jtshearin@pullcom.com | By: /s/ Mark Dean<br>    Mark Dean (ct01935)<br>    Mark H. Dean, PC<br>    241 Main Street, Suite 501<br>    Hartford, CT 06106<br>    mdean@mhdpc.net |
| Of Counsel<br>    David M.S. Shaiken (ct02297)<br>    Shipman, Shaiken & Schwefel, LLC<br>    433 South Main Street<br>    West Hartford, CT 06110<br>    david@shipmanlawct.com | *Attorneys for Roland G. LaBonte, individually and as Trustee of the Roland G. LaBonte Revocable Trust and the Scott A. LaBonte Dynasty Trust, and Marilyn P. LaBonte, individually and as Trustee of the Marilyn P. LaBonte 2015 Revocable Trust and Trustee of the Marilyn P. LaBonte Revocable Trust* |
| *Attorneys for Scott A. LaBonte, individually and as Trustee of the Scott A. LaBonte Revocable Trust, and Sally A. LaBonte, individually and as Trustee of the Scott A. LaBonte Revocable Trust and Trustee of the Scott A. LaBonte Dynasty Trust* | |

| | |
|---|---|
| **CARMODY TORRANCE SANDAK HENNESSEY LLP** | **COWDERY & MURPHY LLC** |
| By: /s/ Thomas J. Sansone<br>    Thomas J. Sansone (ct00671)<br>    David T. Grudberg (ct01186)<br>    Carmody Torrance Sandak Hennessey LLP<br>    195 Church Street<br>    New Haven, CT 06509<br>    tsansone@carmodylaw.com<br>    dgrudberg@carmodylaw.com | By: /s/ Thomas J. Murphy<br>    Thomas J. Murphy (ct07959)<br>    James J. Healy<br>    Cowdery & Murphy LLC<br>    280 Trumbull Street, 22nd Floor<br>    Hartford, CT 06103<br>    tmurphy@cowderymurphy.com<br>    jhealy@cowderymurphy.com |
| *Attorneys for Robert A. Landino* | *Attorneys for Joseph W. Sparveri, Jr.* |

**NATALE & WOLINETZ**

**By:  /s/ Anthony Natale**
      **Anthony Natale (ct08451)**
      **Natale & Wolinetz**
      **116 Oak Street**
      **Glastonbury, CT 06033**
      **anatale@natalelawfirm.com**

*Attorneys for Lawrence J. Marks, Esq.*
*and Juliano & Marks, LLC*

15

**CERTIFICATION**

I hereby certify that on January 3, 2020 a copy of the foregoing Defendants' Reply Memorandum of Law in Support of Motion to Stay Discovery was filed electronically through the Court's electronic filing system and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Alfred U. Pavlis
Alfred U. Pavlis (ct08603)
FINN DIXON & HERLING LLP
Six Landmark Square
Stamford, CT  06901-2704
Tel: (203) 325-5000
Fax: (203) 325-5001
E-mail: apavlis@fdh.com