UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMES BERMAN, Chapter 7 Trustee for the Substantively Consolidated Estate of Michael S. Goldberg, LLC and Michael S. Goldberg,<br><br>Plaintiff,<br><br>v.<br><br>SCOTT A. LABONTE *et al.*,<br><br>Defendants. | Case No. 19-cv-1533 |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**<u>DEFENDANT PAUL BOURDEAU'S MOTION TO DISMISS THE COMPLAINT</u>**

**TABLE OF CONTENTS**

                                                                               Page

**PRELIMINARY STATEMENT** ................................................................................... 1

      A.     **The Trustee's Argument that He Has Adequately Alleged a RICO Conspiracy Claim against Mr. Bourdeau Relies on an Incorrect Statement of the Governing Standard** ..................................... 2

      B.     **Mr. Bourdeau's Provision of Legal Services to Members of the LaBonte Family in 2010 and 2015 Does Not Support an Inference That He Knew Defendants Were Engaged in the Conduct of an Enterprise Through a Pattern of Racketeering** ............ 3

      C.     **Mr. Bourdeau's Presence at a Single Meeting with His Clients and His Preparation of a Trust Instrument Does Not Support a Plausible Inference that He Agreed to Join a Criminal Racketeering Enterprise** .......................................................................... 8

**CONCLUSION** ........................................................................................................ 11

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Azrielli v. Cohen Law Offices*,
   21 F.3d 512 (2d Cir. 1994) ............................................................................... 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................ 10

*Democratic Nat'l Comm. v. Russian Federation*,
   392 F. Supp.3d 410 (S.D.N.Y. 2019) ............................................................... 3

*Domanus v. Locke Lord LLP*,
   847 F.3d 469 (7th Cir. 2017) .......................................................................... 10

*Gutman v. Equidyne Extractive Indus. 1980*,
   1990 WL 113193 (S.D.N.Y. July 27, 1990) ..................................................... 7

*In re Trilegiant*,
   11 F. Supp.3d 82 (D. Conn. 2014) ................................................................... 3

*Stein v. N.Y. Stair Cushion Co., Inc.*,
   04-cv-4741, 2006 WL 319300 (E.D.N.Y. Feb. 10, 2006) ................................ 4

*Tolliver v. Skinner*,
   No. 12 Civ. 971, 2013 WL 658079 (S.D.N.Y. Feb. 11, 2013) ......................... 5

*United States v. Aleskerova*,
   300 F.3d 286 (2d Cir. 2002) ............................................................................ 9

*United States v. Gordon*,
   987 F.2d 902 (2d Cir. 1993) ............................................................................ 9

*United States v. Mouzone*,
   687 F.3d 207 (4th Cir. 2012) ........................................................................... 2

*United States v. Neopolitan*,
   791 F.2d 489 (7th Cir. 1986) ........................................................................... 3

*United States v. Pedroza*,
   750 F.2d 187 (2d Cir. 1984) ............................................................................ 9

*United States v. Pizzonia*,
   577 F.3d 455 (2d Cir. 2009) ............................................................................ 3

*United States v. Rubin*,
  844 F.2d 979 (2d Cir. 1988) .................................................................................... 2

*United States v. Yannotti*,
  541 F.3d 112 (2d Cir. 2008) .................................................................................... 3

*United States v. Zemlyansky*,
  908 F.3d 1 (2d Cir. 2018) ........................................................................................ 3

**Statutes**

**Conn. Gen. Stat. § 52-552e(b)** ......................................................................................... 6

**Other Authorities**

**Akers, et al.,** *Creating Intentional Grantor Trusts*, **4 REAL PROP. TRUST**
  **& ESTATE L. J. 2, at 211-12** ................................................................................. 5

**PRELIMINARY STATEMENT**

Unable to provide any meritorious responses to the legal points in Mr. Bourdeau's individual Motion to Dismiss, the Trustee resorts (as he did with his Complaint) to dramatic characterizations in an effort to hide the pleading deficiencies in his RICO claim. When stripped of the hyperbole, the Trustee's actual factual allegations reflect nothing more than two isolated instances, five years apart, in which Mr. Bourdeau provided limited legal services to his clients. Pleading with hindsight, the Trustee leaps to the extreme conclusion that Mr. Bourdeau "must have known" everything his clients were doing (and subsequently did) and, therefore, seeks to subject Mr. Bourdeau to tens of millions of dollars in treble damages as an alleged RICO conspirator.

The Trustee's tactic is particularly apparent with respect to the 2010 meeting. While the Trustee dramatically labels the meeting as "the RICO Meeting," the actual allegations relating to the 2010 meeting reflect conduct that is entirely consistent with the normal work of an attorney: Mr. Bourdeau attended a meeting at his client's request, discussed the client's concerns, took notes, and placed the notes in the client's file. The Trustee admits that, when the 2010 meeting occurred, he had not filed or even threatened a claim against Scott LaBonte. In these circumstances, there is no plausible basis to conclude that Mr. Bourdeau thought he was throwing away a lengthy and respected professional career and joining a criminal conspiracy, let alone a racketeering conspiracy.

At most, the Trustee has alleged (with the luxury of hindsight) that Mr. Bourdeau should have recognized at the meeting in 2010, and again five years later when he drafted a trust instrument, that his clients were or planned to be

engaged in transactions that were subject to potential clawback by the Trustee as fraudulent conveyances. But allegations, even if true, that tend to show that an attorney may have failed to spot a potential issue, or even that he aided and abetted a transaction that might later be deemed a fraudulent conveyance, are insufficient as a matter of law to sustain a claim that he knew of, and agreed to join and assist, a criminal racketeering conspiracy.

## ARGUMENT

A. The Trustee's Argument that He Has Adequately Alleged a RICO Conspiracy Claim against Mr. Bourdeau Relies on an Incorrect Statement of the Governing Standard

Apparently recognizing that allegations that Mr. Bourdeau provided legal services to his clients on two occasions, five years apart, cannot sustain a RICO conspiracy claim, the Trustee attempts to minimize the pleading requirements. The Trustee states that "[t]he law does not require the Trustee to allege that Bourdeau knew of or agreed to facilitate the particular acts comprising a pattern of racketeering." Dkt. No. 72 ("Opp. Br.") at 2. Instead, according to the Trustee, he need only "allege[] that Bourdeau *participated in a RICO conspiracy*." *Id.* at 3 (emphasis added). That is simply incorrect.

It is well-established that the RICO conspiracy statute cannot be applied so as to "criminalize mere association with an enterprise."[1] The "fundamental element of a conspiracy is the *unlawful* agreement,"[2] and therefore a RICO conspiracy claim cannot be sustained absent allegations supporting a plausible conclusion that the defendant "agree[d] to conduct or to participate in the

---

[1] *United States v. Mouzone*, 687 F.3d 207, 213 (4th Cir. 2012).
[2] *United States v. Rubin*, 844 F.2d 979, 983 (2d Cir. 1988) (emphasis added).

2

conduct of a charged enterprise's affairs *through a pattern of racketeering*."[3]  A RICO conspiracy is *not*, as the Trustee suggests, "merely an agreement to join in a particular enterprise."[4]

Although a plaintiff need not allege that the defendant agreed to commit predicate racketeering acts *himself*, a defendant necessarily cannot agree to the conduct of an enterprise's affairs "through a pattern of racketeering" unless he at least knew that his co-conspirators were engaged in, or planned to engage in, conduct that constituted a pattern of racketeering activity—*i.e.*, the commission of "at least two predicate acts [of racketeering]" that are "related" and that "amount to, or pose a threat of, continuing criminal activity."[5]  The Trustee's allegations utterly fail to support a plausible conclusion that Mr. Bourdeau possessed such knowledge or agreed to further such conduct.[6]

**B.     Mr. Bourdeau's Provision of Legal Services to Members of the LaBonte Family in 2010 and 2015 Does Not Support an Inference That He Knew Defendants Were Engaged in the Conduct of an Enterprise Through a Pattern of Racketeering**

The Trustee's opposition brief confirms that his claim is premised entirely on allegations that (i) in 2010, Mr. Bourdeau met with his clients, Scott and

---

[3] *United States v. Pizzonia*, 577 F.3d 455, 464 (2d Cir. 2009) (emphasis added).
[4] *Id.* at 465.  See also, e.g., *United States v. Neopolitan*, 791 F.2d 489, 499 (7th Cir. 1986) ("[A] defendant who did not agree to the commission of crimes constituting a pattern of racketeering activity is not in violation of section 1962(d), *even though he is somehow affiliated with a RICO enterprise.*") (emphasis added).
[5] *Democratic Nat'l Comm. v. Russian Federation*, 392 F. Supp.3d 410, 442 (S.D.N.Y. 2019) (citing *H.J. Inc. v. Nw. Bell. Tel. Co.*, 492 U.S. 229, 239 (1989)).
[6] *See also United States v. Yannotti*, 541 F.3d 112, 121-22 (2d Cir. 2008) (a RICO conspiracy claim must establish that the defendant "kn[e]w of, and agree[d] to, the general *criminal* objective of [the] jointly undertaken scheme").  The cases cited by the Trustee actually support Mr. Bourdeau's description of the standard governing a RICO conspiracy claim.  *See In re Trilegiant*, 11 F. Supp.3d 82, 108 (D. Conn. 2014); *United States v. Zemlyansky*, 908 F.3d 1, 11 (2d Cir. 2018).

3

Roland LaBonte, and their accountant, and reviewed a promissory note shortly thereafter; and (ii) in 2015, he prepared a trust instrument for Marilyn LaBonte. Opp. Br. at 4-8. Allegations that Mr. Bourdeau provided discrete legal services in 2010 and 2015 do not support a plausible conclusion that he knew that Defendants were engaged in a years-long racketeering conspiracy, involving tens of financial transactions (all of which were purportedly criminal) and numerous parties and entities, to avoid payment of a judgment the Trustee obtained against Scott LaBonte in 2017.

1.  **Mr. Bourdeau's Participation in the 2010 Meeting Does Not Establish His Knowledge of a Pattern of Predicate Acts of Racketeering**

The Trustee asserts that the June 2010 meeting attended by Mr. Bourdeau was held "solely to coordinate . . . efforts to obstruct the Trustee." Opp. Br. at 5.[7] But at the time of his meeting with his clients in 2010, Mr. Bourdeau is only alleged to have known that Scott LaBonte was concerned about a *potential* claw-back action by a trustee. At that time, by the Trustee's own admission, a claim against Scott LaBonte had *neither been threatened nor filed*. Mr. Bourdeau is not alleged to have known the nature of Scott LaBonte's pre-petition interactions with Michael Goldberg or the circumstances of his alleged receipt of investment proceeds from Goldberg, and he is not alleged to have had any basis to assess the merit, or likelihood, of any potential claw-back action against Scott LaBonte.

---

[7] As explained in the Defendants' Joint Briefs, one of the many fundamental flaws in the Trustee's RICO claim is that "a fraudulent conveyance does not constitute an act of racketeering." *Stein v. N.Y. Stair Cushion Co., Inc.*, 04-cv-4741, 2006 WL 319300, at 5 n.1 (E.D.N.Y. Feb. 10, 2006). Therefore, even if Mr. Bourdeau had been aware that Scott LaBonte intended to make fraudulent conveyances, such knowledge would not support a RICO conspiracy claim.

4

It was not until 2017, *seven years later*, that Scott LaBonte was adjudged to have received assets recoverable by the Goldberg estate. Under these circumstances, it is baseless to assert that Mr. Bourdeau could have known, at the time of the meeting in June 2010, that Scott LaBonte intended to engage in a years-long conspiracy to "obstruct" the Trustee.[8]

Mr. Bourdeau is only alleged to have known that Scott LaBonte intended to transfer assets to the SALDT—a pre-existing trust to which he had transferred assets in the past—in exchange for a promissory note. Such installment sales to a trust in exchange for a promissory note are a common estate-planning device.[9] Mr. Bourdeau is not alleged to have known which assets Scott LaBonte intended to transfer to the SALDT, or to what extent he intended to retain assets to satisfy future claims of creditors.[10] Mr. Bourdeau is also not alleged to have been

---

[8] The Trustee implies that Mr. Bourdeau refused to produce his notes of the 2010 meeting until ordered to do so by Judge Thompson. Opp. Br. at 5 n.2. But Mr. Bourdeau and his firm, Cummings & Lockwood, were not free to simply turn over privileged communications without the client's consent or court order. It was their ethical obligation to object to the Trustee's subpoenas until one of those two conditions was met. Moreover, Mr. Bourdeau's taking of notes and retention of them in his client's file are hardly consistent with conspiratorial intent. And Judge Thompson made no finding that Mr. Bourdeau had engaged in a crime or a fraud. His ruling expressly noted that the crime-fraud exception applies "even if the attorney has no inkling that the matter he or she is working on involves any improper conduct." No. 15-cv-1687 (D. Conn. 2018), at 10 (Dkt. No. 74) (citation omitted).
[9] *See, e.g.*, Akers, et al., *Creating Intentional Grantor Trusts*, 4 REAL PROP. TRUST & ESTATE L. J. 2, at 211-12.
[10] A copy of the promissory note issued by the SALDT to Scott LaBonte, which Mr. Bourdeau reviewed, is attached hereto as Exhibit 1. *See, e.g., Tolliver v. Skinner*, No. 12 Civ. 971, 2013 WL 658079, at *11 (S.D.N.Y. Feb. 11, 2013) ("Documents that are . . . incorporated in [the complaint] by reference are deemed part of the pleading and may be considered."). The promissory note—as is typical of notes issued by trusts in installment sale transactions—indicates

5

involved in the alleged undervaluation of the transferred assets.  There is no basis to conclude that Mr. Bourdeau had any reason to believe in June 2010 that, as alleged, Scott LaBonte would render himself insolvent through subsequent transfers, undervalue the assets transferred, or maintain access or control over the assets after the transfers.[11]  Lastly, he had no reason to know that the SALDT would, as alleged, dissipate its assets to the point that the promissory note issued by it to Scott LaBonte was rendered worthless to Scott LaBonte's creditors.[12]

The Trustee cannot sustain a RICO conspiracy claim by simply labeling the June 2010 meeting the "RICO Meeting," absent factual allegations supporting an inference that Mr. Bourdeau was actually aware of racketeering activity.  Mr. Bourdeau's participation in the meeting does not provide any plausible basis to infer that Mr. Bourdeau knew that the other Defendants would engage in any of the allegedly criminal conduct over the following years.

> 2. **Mr. Bourdeau's Mere Preparation of a Trust Instrument in 2015 Does Not Provide a Basis to Impute to Him Knowledge of Conduct by Defendants with which He Was Not Involved**

Unable to credibly argue that Mr. Bourdeau could have known of a years-long conspiracy based on a single meeting in 2010, the Trustee argues that Mr. Bourdeau's preparation of a trust instrument in February 2015, which revised the

---

nothing about the assets that would be transferred, or the valuation of those assets.
[11] All of these issues, of which Mr. Bourdeau is not alleged to have had knowledge, are relevant to determining whether a transaction constitutes a fraudulent conveyance.  *See* Conn. Gen. Stat. § 52-552e(b).
[12] Under typical circumstances, the promissory note is a valuable asset, and a creditor who obtained a judgment against Scott LaBonte could recover the note and enforce it against the SALDT.

6

inheritance provisions of Marilyn LaBonte's trust, establishes that he "knew that the [alleged RICO conspiracy] continued for years" after Scott LaBonte's 2010 asset transfers to the SALDT.  Opp. Br. at 6.  This argument is baseless.

There is no dispute that Mr. Bourdeau is not alleged to have been involved in or even aware of *any* of the Defendants' alleged conduct between 2010 and February 2015.  Nor is Mr. Bourdeau alleged to have been aware of or involved in any of the conduct that purportedly renders the 2015 Devcon/DEIPM transaction wrongful—Mr. Bourdeau is not alleged to have been involved in (i) the decision to establish DEIPM or to transfer Devcon's assets, *see* Compl. ¶ 227, (ii) the alleged payments to DEIPM from certain limited liability companies owned by the SALDT, *see id.* at ¶¶ 268-82, or (iii) the alleged payments to Scott LaBonte by the Marilyn P. LaBonte Trust and DEIPM after the Devcon transaction, *see id.* at ¶¶ 257-265. According to the Trustee, his speculation that Mr. Bourdeau "must have known that the Trustee had sued the SALDT and sought a PJR against Devcon," Opp. Br. at 7, is sufficient to establish Mr. Bourdeau's knowledge that, by preparing a trust instrument for Marilyn LaBonte, he was furthering a pattern of racketeering activity.[13]

But "plaintiffs must specify the events that are alleged to give rise to an inference of knowledge."[14]  To support an inference of Mr. Bourdeau's knowledge

---

[13] As explained above and in the Joint Briefs, such knowledge would only tend to show awareness that the transaction may constitute a voidable fraudulent conveyance; it does not establish knowledge of a predicate act of racketeering. *See supra* n.7.

[14] *Gutman v. Equidyne Extractive Indus. 1980*, 1990 WL 113193, at *2 (S.D.N.Y. July 27, 1990).

7

that the Defendants were engaged in a pattern of racketeering activity, the Trustee alleges only that Mr. Bourdeau (1) had a "lengthy relationship with the LaBonte Family and Sparveri"; (2) participated in the June 2010 meeting five years earlier; and (3) received an email from Roland LaBonte that referenced Scott LaBonte's "current situation." Opp. Br. at 7. None of these allegations supports an inference that Mr. Bourdeau had any knowledge of the particular circumstances that purportedly rendered the Devcon/DEIPM transaction a fraudulent transfer. In any event, Mr. Bourdeau's knowledge of a discrete transaction five years after the purported "RICO Meeting," even if it constituted a voidable fraudulent conveyance, does not support an inference that he was aware of a *pattern* of racketeering activity.[15]

C.  **Mr. Bourdeau's Presence at a Single Meeting with His Clients and His Preparation of a Trust Instrument Does Not Support a Plausible Inference that He Agreed to Join a Criminal Racketeering Enterprise**

The Trustee argues that his allegations support an inference that Mr. Bourdeau agreed to join a criminal racketeering enterprise because (i) Mr. Bourdeau's presence at the meeting in June 2010 was not "happenstance," and (ii) he "expressed no surprise" when Roland LaBonte told him in 2015 that he planned to transfer an interest in DEIPM to Scott LaBonte when his "current situation allows." Opp. Br. at 8. But the line of cases relied upon by the Trustee in support of this argument stand only for the proposition that a defendant's presence at critical events or other conduct may support an inference of criminal

---

[15] *See, e.g., Azrielli v. Cohen Law Offices*, 21 F.3d 512, 520 (2d Cir. 1994) ("A pattern is not formed by sporadic activity," such as "two widely separated and isolated criminal offenses") (quotation marks and alterations omitted).

intent where there is *no innocent explanation* for the defendant's conduct.  *See, e.g.*, *United States v. Pedroza*, 750 F.2d 187, 198-99 (2d Cir. 1984) (holding that defendant's cross-country travel to location of kidnapping, location of the purchase of a van used in the kidnapping, and location where the victim was being held and ransom was demanded, was not "happenstance" and supported an inference of intent to further the goals of the conspiracy, as there was no other "purpose in these long trips and timely appearances");  *United States v. Aleskerova*, 300 F.3d 286, 293-94 (2d Cir. 2002) (holding that defendant's last-minute travel from Azerbaijan to New York, possession of stolen art, and phone calls to a co-conspirator with whom she had no relationship, among other things, supported an inference of conspiratorial intent); *United States v. Gordon*, 987 F.2d 902, 907 (2d Cir. 1993) (affirming conviction for drug conspiracy where, *inter alia*, the defendant "did not refuse to accept the drugs or profess any surprise or lack of understanding" when he was presented with the drugs and was asked for money).  There is no basis to draw a conclusion of nefarious intent from an attorney meeting with his clients and preparing a trust instrument—as the Trustee admits, Mr. Bourdeau provided legal services to the LaBontes "for many years" and "regularly advise[d] . . . on matters related to various LaBonte Family trusts."  Compl. ¶ 21.[16]

---

[16] As explained above, there are no allegations that Mr. Bourdeau was aware of the circumstances that allegedly rendered the Devcon/DEIPM transaction a fraudulent transfer.  Therefore, his lack of "surprise" that Roland LaBonte intended Scott LaBonte to regain an ownership interest in DEIPM is not probative of any conspiratorial intent, and is certainly not analogous to showing a lack of surprise when being presented with a shipment of cocaine, which, along with a host of other evidence, was found to support a conspiracy conviction in *Gordon*.

9

As explained in Mr. Bourdeau's initial brief, Dkt. No. 52-1 ("Bourdeau Br."), at 12-13, a conspiratorial agreement cannot be inferred from conduct that is "equally well explained by legitimate economic incentives,"[17] and therefore "[c]laims that lawyers have conspired with their clients are insufficient in the absence of allegations that the arrangement involves more than standard legal representation."[18]  The Trustee's argument that the allegations against Mr. Bourdeau are analogous to those cases where RICO conspiracy claims against attorneys have survived a motion to dismiss is wholly unpersuasive.  *See* Opp. Br. at 12-13.  Unlike in *Handeen*, *Madanes*, and *JSC*, there is *no allegation* that Mr. Bourdeau himself engaged in any conduct that was fraudulent or criminal,[19] and he is not alleged to have been involved in or even aware of the overwhelming majority of the alleged conduct comprising the purported conspiracy.  *See* Bourdeau Br. at 16-18.  Merely alleging that Mr. Bourdeau provided standard legal services to his clients, and that one of those clients "was a referral source for high-net worth individuals," Opp. Br. at 10, does not support a plausible inference that Mr. Bourdeau, a successful partner at an established law firm, agreed to join a criminal racketeering conspiracy.

---

[17] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007).
[18] *Domanus v. Locke Lord LLP*, 847 F.3d 469, 482 (7th Cir. 2017).
[19] The Trustee inexplicably asserts that Mr. Bourdeau "concedes . . . that [he] committed various predicate acts that directly and proximately caused the Trustee's damages."  Opp. Br. at 11-12.  As is clear from the Joint Briefs and the Bourdeau Brief, Mr. Bourdeau in fact disputes that *any* of the Defendants committed a predicate act of racketeering, and certainly has never conceded that he committed any criminal act.  It is unclear why the Trustee believes he has a basis to make this statement.

## **CONCLUSION**

For the reasons set forth above, in the Bourdeau Brief, and in the Defendants' Joint Briefs, Mr. Bourdeau's motion to dismiss should be granted.

**Dated:      March 20, 2020**

        **FINN DIXON & HERLING LLP**

        **By: /s/ Alfred U. Pavlis**
            Alfred U. Pavlis (ct08603)
            David R. Allen (ct30827)
            Finn Dixon & Herling LLP
            Six Landmark Square
            Stamford, CT 06901-2704
            Tel: (203) 325-5000
            Fax: (203) 325-5001
            apavlis@fdh.com
            dallen@fdh.com

        *Attorneys for Paul Bourdeau, Esq.*

**CERTIFICATION**

I hereby certify that on March 20, 2020 a copy of the foregoing Reply Memorandum of Law in Support of Defendant Paul Bourdeau's Motion to Dismiss the Complaint was filed electronically through the Court's electronic filing system and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's CM/ECF System.

/s/ Alfred U. Pavlis
Alfred U. Pavlis (ct08603)
FINN DIXON & HERLING LLP
Six Landmark Square
Stamford, CT  06901-2704
Tel: (203) 325-5000
Fax: (203) 325-5001
E-mail: apavlis@fdh.com