**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

**JAMES BERMAN, Chapter 7 Trustee for
the Substantively Consolidated Estate of
Michael S. Goldberg, LLC and Michael S.
Goldberg,**

              **Plaintiff,**

                   **v.**

**SCOTT A. LABONTE *et al.*,**

              **Defendants.**

**Case No. 19-cv-1533**

**JOINT REPLY MEMORANDUM OF LAW IN SUPPORT OF
<u>DEFENDANTS' MOTIONS TO DISMISS THE COMPLAINT</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................ 1

ARGUMENT ................................................................................................... 3

A.    The Trustee Fails to Meet His Burden to Establish Standing to
      Bring this Action ................................................................................... 3

B.    The Trustee's Speculative Assertion that the Pending Fraudulent
      Conveyance Actions Are Futile Does Not Render
      the Lost Debt Claim Ripe ...................................................................... 5

C.    The Lost Debt Claim, If Ripe, Is Necessarily Time-Barred under the
      Injury-Discovery Rule ......................................................................... 11

D.    The Trustee Cannot Delay Accrual of the Time-Barred Collection
      Expense Claim by Delaying Application to the Bankruptcy Court for
      Approval of His Fees ........................................................................... 13

E.    The Asset Transfers that Allegedly Caused the Purported
      Lost Debt Injury Are Not Predicate Acts of Racketeering ............... 15

F.    Allegations of Sporadic Conduct by an Accountant and Two Family
      Members to Facilitate Avoidance of a Creditor Do Not Establish a
      Racketeering Enterprise ...................................................................... 23

G.    Avoidance of a Single Creditor through a Set of Discrete and Sporadic
      Asset Transfers Does Not Constitute a Pattern of Continuing Criminal
      Activity .................................................................................................. 24

CONCLUSION .............................................................................................. 26

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*131 Main St. Assoc. v. Manko*,
    897 F. Supp. 1507 (S.D.N.Y. 1995).............................................................. 12, 13, 14

*Bankers Trust Co. v. Rhoades*,
    859 F.2d 1096 (2d Cir. 1988) .......................................................................... 13, 14

*Butala v. Agashiwala*,
    916 F. Supp. 314 (S.D.N.Y. 1996)....................................................................... 14

*Caplin v. Marine Midland Grace Trust Co.*,
    406 U.S. 416 (1972)................................................................................................ 4

*D'Addario v. D'Addario*,
    901 F.3d 80 (2d Cir. 2018) ....................................................................... 7, 8, 9, 14

*Dexia Credit Local v. Cuppy*,
    2010 WL 3257873 (N.D. Ill. Aug. 16, 2010) ......................................................... 21

*DLJ Mortg. Cap., Inc. v. Kontogiannis*,
    726 F. Supp.2d 225 (E.D.N.Y. 2010) .................................................................... 8

*First Cap. Asset Mgmt., Inc. v. Brickellbush, Inc.*,
    219 F. Supp.2d 576 (S.D.N.Y. 2002), aff'd sub nom ........................................... 16

*First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*,
    385 F.3d 159 (2d Cir. 2016) .................................................................................. 16

*First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*,
    218 F. Supp.2d 369 (S.D.N.Y. 2002) ................................................................... 10

*First Nationwide Bank v. Gelt Funding Corp.*,
    27 F.3d 763 (2d Cir. 1994) ........................................................................ 8, 10, 11

*Goldfine v. Sichenzia*,
    118 F. Supp.2d 392 (S.D.N.Y. 2000) ..................................................................... 8

*Gutierrez v. Givens*,
    989 F. Supp. 1033 (S.D. Cal. 1997) ...................................................................... 21

*H.J. Inc. v. Nw. Bell Tel. Co.,*
   492 U.S. 229 (1989) .................................................................. 25

*Harbinger Cap. Partners Master Fund I, Ltd. v. Wachovia Cap.
   Markets, LLC,*
   347 F. App'x 711 (2d Cir. 2009) ............................................... 9

*Hemi Grp., LLC v. City of N.Y., N.Y.,*
   559 U.S. 1 (2010) ...................................................................... 15

*Hirsch v. Arthur Andersen & Co.,*
   178 B.R. 40 (D. Conn. 1994) ...................................................... 4

*Hirsch v. Arthur Andersen & Co.,*
   72 F.3d 1085 (2d Cir. 1995) ....................................................... 4

*ID7D v. Sears Holding Corp.,*
   2012 WL 1247329 (D. Conn. Apr. 13, 2012) ............................ 10

*In re Ahead by a Length, Inc.,*
   100 B.R. 157 (Bankr. S.D.N.Y. 1989) ........................................ 4

*In re Am. Cartage, Inc.,*
   438 B.R. 1 (D. Mass. 2010) ......................................................... 5

*In re Doemling,*
   116 B.R. 48 (Bankr. W.D. Pa. 1990) ........................................... 5

*In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983,*
   731 F.2d 1032 (2d Cir. 1984) ................................................... 17

*In re Ozark Restaurant Equip. Co., Inc.,*
   816 F.2d 1222 (8th Cir. 1987) .................................................... 4

*In re Patterson,*
   2008 WL 2276961 (Bankr. N.D. Ohio June 3, 2008) ................. 5

*JSC Foreign Econ. Ass'n Technostroyexport v. Weiss,*
   2007 WL 1159637 (S.D.N.Y. Apr. 18, 2007) ........................... 24

*Lanza v. Merrill Lynch & Co., Inc.,*
   154 F.3d 56 (2d Cir. 1998) ................................................... 9, 11

*Makarova v. United States,*
   201 F.3d 110 (2d Cir. 2000) ....................................................... 3

*McHale v. Alvarez,*
   397 B.R. 670 (Bankr. S.D.N.Y. 2014) ........................................ 5

ii

*McNally v. United States*,
 483 U.S. 350 (1987)............................................................................ 18, 21

*Mitchell Excavators, Inc. v. Mitchell*,
 734 F.2d 129 (2d Cir. 1984) ..................................................................... 5

*Motorola Credit Corp. v. Uzan*,
 322 F.3d 130 (2d Cir. 2003) ................................................................. 7, 9

*Nye v. United States*,
 137 F.2d 73 (4th Cir. 1943).................................................................... 18

*Shamis v. Ambassador Factors Corp.*,
 1997 WL 473577 (S.D.N.Y. Aug. 18, 1997) ........................................... 24

*Sheperd v. Am. Honda Motor Co. Inc.*,
 822 F. Supp. 625 (N.D. Cal. 1993).......................................................... 11

*Skilling v. United States*,
 561 U.S. 358 (2010)........................................................................ 17, 18

*Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*,
 17 F. Supp. 3d 207 (E.D.N.Y. 2014) ........................................................ 9

*Stegeman v. United States*,
 425 F.2d 984 (9th Cir. 1970) .................................................................. 16

*Stochastic Decisions, Inc. v. DiDomenico*,
 995 F.2d 1158 (2d Cir. 1993) ................................................................. 10

*Town of Islip v. Datre*,
 245 F. Supp. 3d 397 (E.D.N.Y. 2017) .................................................. 5, 6

*United States v. Adler*,
 186 F.3d 574 (4th Cir. 1999)...................................................... 19, 20, 21

*United States v. Boyle*,
 556 U.S. 938 (2009)............................................................................... 23

*United States v. Howard*,
 569 F.2d 1331 (5th Cir. 1978)................................................................ 17

*United States v. Johns*,
 686 F.3d 438 (7th Cir. 2012).................................................................. 16

*United States v. Khashoggi*,
 1990 WL 31874 (S.D.N.Y. Mar. 13, 1990)............................................. 20

*United States v. Mazzei*,
    700 F.2d 85 (2d Cir. 1983) ........................................................ 24

*United States v. Miller*,
    997 F.2d 1010 (2d Cir. 1993) ................................................... 21

*United States v. Neal*,
    951 F.2d 630 (5th Cir. 1992) .................................................... 18

*United States v. Newton*,
    452 F. App'x 288 (4th Cir. 2011) .............................................. 18

*United States v. Reifler*,
    446 F.3d 65 (2d Cir. 2006) ....................................................... 22

*United States v. Turkette*,
    452 U.S. 576 (1981) ......................................................... 23, 24

*Waste Conversion, Inc. v. Rollins Environmental Servs. (NJ), Inc.*,
    1989 WL 79768 (E.D. Pa. July 7, 1989) ................................... 10

*Weizmann Institute of Science v. Neschis*,
    229 F. Supp.2d 234 (S.D.N.Y. 2002) ....................................... 25

*World Wrestling Entm't, Inc. v. Jakks Pacific, Inc.*,
    530 F. Supp.2d 486 (S.D.N.Y. 2007) ....................................... 12

*Yelverton v. Marm*,
    2014 WL 7141938 (Bankr. D.C. Dec. 12, 2014) ......................... 5

## Statutes

11 U.S.C. § 541(a)(7) ................................................................. 4, 5

18 U.S.C. § 1956 ........................................................................ 15

18 U.S.C. § 152(7) ................................................................. 15-17

18 U.S.C. § 1503 .................................................................. 17-18

**PRELIMINARY STATEMENT**

After requesting leave from the Court to file a 60-page opposition brief to Defendants' Motions to Dismiss, the Trustee spent 24 of those 60 pages simply reiterating the self-serving allegations in his Complaint.  But with respect to the numerous and clear *legal* bars to this RICO action, the Trustee has offered only cursory and often inapposite arguments:  (1) the Trustee fails to meet his burden to establish his standing to bring a RICO claim premised on post-petition conduct that did not injure the debtor; (2) the Trustee's speculation that the pending fraudulent conveyance actions will not result in significant recovery does not ripen his lost debt claim under well-established Second Circuit law; (3) the Trustee does not dispute that he has been aware since 2011 of the economic injury (and its precise amount) that forms the basis of the lost debt claim, barring his claim under the Second Circuit's injury-discovery rule; and (4) the Trustee's attempt to delay accrual of his collection expense claim until the Bankruptcy Court approved *payment* of the fees is legally baseless and contrary to the injury-discovery rule.

Even if the Trustee offered a meritorious basis to overcome these threshold bars to this entire action (he has not), the case must be dismissed because the Trustee has alleged nothing more than a set of fraudulent conveyances, and a fraudulent conveyance is indisputably not a predicate act of racketeering.  The Trustee attempts to overcome this fatal defect by characterizing the asset transfers as bankruptcy fraud, obstruction of justice, or wire fraud.  But he offers *no* legal support or precedent for these novel theories, which are contradicted by overwhelming precedent.  In particular, the Trustee has

no legal basis to assert that Scott LaBonte's transfer of unattached property in exchange for a promissory note in 2010—when he was not a party to any bankruptcy or adversary proceeding and had no duty of disclosure to any court or the Trustee—constituted a criminal act.  Since these transfers are not predicate acts of racketeering, dismissal of the lost debt claim necessarily follows because, as the Trustee admits, these transfers are the only conduct alleged that could proximately cause the Trustee's claimed inability to collect the judgment he obtained against Scott LaBonte.[1]

At bottom, the Trustee has only alleged that Scott LaBonte, with occasional assistance or facilitation by his accountant, wife, and father, endeavored to shelter his assets from a single claim by the Trustee by means of a set of sporadic and discrete asset transfers.  In addition to not alleging any predicate acts, these allegations do not support a conclusion that these four individuals functioned as an "enterprise," *i.e.*, a "continuing unit" with a "common purpose," or that the alleged scheme constitutes a pattern of "continuing criminal activity."

The Trustee chose to delay bringing the lost debt RICO claim for *eight years* after he learned that Scott LaBonte had executed the allegedly fraudulent transfers that rendered him insolvent and unable to satisfy any judgment.  Then, after waiting eight years, the Trustee chose to bring the lost debt claim while

---

[1] As explained in detail in the Joint Brief, *none* of the conduct alleged in the Complaint constitutes bankruptcy fraud, obstruction of justice, wire fraud, or money laundering.  Joint Br. at § V.A.  The Defendants focus on the 2010 transfers herein because they are the only acts relevant to the alleged lost debt injury, and the collection expense injury is plainly time-barred.  The Court's adjudication of these two issues in Defendants' favor disposes of this case in its entirety.

continuing to prosecute four fraudulent conveyance actions that seek to recover assets in satisfaction of the very same purportedly lost debt.  Now, after reaping years' worth of legal fees for his law firm in litigating numerous fraudulent conveyance actions and before receiving potentially adverse rulings in the ongoing actions, he wants to change tack and seek treble damages on a contingency fee basis for conduct of which he has been aware for eight years. The law does not permit this gamesmanship, and the Court should not permit the Trustee to subject the Defendants to the reputational harm and threat of treble damages of a civil RICO claim without legal basis.

<u>ARGUMENT</u>

A.     **The Trustee Fails to Meet His Burden to Establish Standing to Bring this Action**

The burden rests on the Trustee, not the Defendants, to establish by a preponderance of the evidence that the Court has subject matter jurisdiction over this case.[2]  Yet the Trustee cites no authority for the proposition that a bankruptcy trustee has standing to convert fraudulent conveyance actions into a RICO claim against third parties for treble damages on behalf of creditors to address post-petition conduct that allegedly hindered his ability to collect a judgment.  Dkt. No. 70 ("Opp. Br.") at 27.  The Trustee fails to appreciate the difference between standing to bring avoidance and fraudulent conveyance actions—which is conferred on him by statute—and standing to bring other actions against third parties:  "*unless [the Trustee] is exercising h[is] statutory avoidance powers*, [he] stands in the shoes of the debtor and may only institute

---

[2] *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

whatever actions the debtor could have brought itself."[3]  "[The trustee's] task is simply to collect and reduce to money the property of the estates for which [he serves].'"[4]  Therefore, "the bankruptcy code precludes a trustee from seeking to collect money not owed to the bankruptcy estate,"[5] and "no trustee . . . has power . . . to assert general causes of action . . . on behalf of the bankrupt estate's creditors."[6]

This action does *not* seek money owed to the estate (*i.e.*, the SAL Judgment itself), but rather seeks treble damages for post-petition conduct that has allegedly "deprived [the estate's creditors] of monies that are rightfully theirs."  Compl. ¶ 328.  An "injury" to the debtor consisting of "the unpaid obligations of the debtor[] to the creditors" does not confer standing on the Trustee.[7]

The Trustee's reliance on 11 U.S.C. § 541(a)(7), which provides that a bankruptcy estate includes "property that the estate acquires after the commencement of a case," is unavailing.  "[A] property interest acquired postpetition during the pendency of a Chapter 11 case qualifies as property of the estate, for purposes of § 541(a)(7), only if said property interest is traceable to (or arises out of) some *prepetition property interest* which already is included in the

---

[3] *In re Ahead by a Length, Inc.*, 100 B.R. 157, 173 (Bankr. S.D.N.Y. 1989) (emphasis added).

[4] *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 428-29 (1972).

[5] *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1093 (2d Cir. 1995).

[6] *In re Ozark Restaurant Equip. Co., Inc.*, 816 F.2d 1222, 1228 (8th Cir. 1987).  *See also, e.g.*, *Caplin*, 406 U.S. at 428 ("'[N]owhere in the statutory scheme is there any suggestion that the trustee in reorganization is to assume the responsibility of suing third parties on behalf of debenture holders.'").

[7] *Hirsch v. Arthur Andersen & Co.*, 178 B.R. 40, 43 (D. Conn. 1994), *aff'd*, 72 F.3d 1085 (2d Cir. 1995).

bankruptcy estate."[8]  Section 541(a)(7) thus "does not serve as an independent basis for the creation of estate property."[9]  Here, the alleged conduct forming the basis of the Trustee's claim occurred entirely post-petition, and the alleged injury is not to any "prepetition property interest" held by the debtor, but rather to the estate's creditors.  Accordingly, the Trustee lacks standing to bring the claim.[10]

**B.    The Trustee's Speculative Assertion that the Pending Fraudulent Conveyance Actions Are Futile Does Not Render the Lost Debt Claim Ripe**

The Trustee argues that his lost debt claim is ripe because "[t]here is no requirement that the Trustee 'exhaust' every potential avenue of recovery and pursue every fraudulent transfer before he can assert a RICO lost debt claim." Opp. Br. at 30.  The Trustee's position is contrary to well-established Second Circuit authority governing lost debt claims, and the sole case cited by the Trustee in support of his argument, *Town of Islip v. Datre*, 245 F. Supp. 3d 397 (E.D.N.Y. 2017), is inapposite.

In *Datre*, the defendants argued that the plaintiff's RICO claim for injuries caused by a "conspiracy to fraudulently conceal the disposal of hazardous

---

[8] *In re Doemling*, 116 B.R. 48, 50 (Bankr. W.D. Pa. 1990) (emphasis added).

[9] *In re Patterson*, 2008 WL 2276961, at *6 (Bankr. N.D. Ohio June 3, 2008).

[10] The cases cited by the Trustee, *see* Opp. Br. at 27,  are not analogous to this case:  (1) *Mitchell Excavators, Inc. v. Mitchell* held that the trustee, rather than an individual shareholder, had standing to assert a derivative action against the debtor's officers and directors for *pre-petition* mismanagement of the debtor's business, 734 F.2d 129, 131-32 (2d Cir. 1984); (2) *McHale v. Alvarez* addressed trustee standing to bring claims based on *pre-petition* conduct, 397 B.R. 670 (Bankr. S.D.N.Y. 2014); (3) *In re Am. Cartage, Inc.* held that the trustee, rather than an individual creditor, had standing to bring claims for business torts committed post-petition against the debtor corporation's business (*i.e.*, an injury traceable to the debtor's pre-petition property), 438 B.R. 1, 14 (D. Mass. 2010); and (4) *Yelverton v. Marm* held that a debtor lacked standing to assert claims for violation of the automatic stay and "looting [of] the estate" because the debtor had not alleged any individualized injury, 2014 WL 7141938, at *4 (Bankr. D.C. Dec. 12, 2014).

substances" was unripe because the plaintiff had also asserted CERCLA and state-law claims for the clean-up costs in the same proceeding.[11]  The court rejected this argument because there is no requirement that "all plaintiffs must exhaust every alternative means of recovery" before bringing a RICO claim, as evidenced by "the common practice of bringing RICO claims alongside other federal and state claims."[12]  The court noted the long line of Second Circuit cases addressing *lost debt claims* and correctly stated that such claims are unripe "where the amount of damages suffered was directly dependent on . . . a separate, ongoing proceeding[,] the results of which would determine whether or to what extent the plaintiff suffered an injury."[13]  But the court recognized that, because the plaintiff's RICO claims in *Datre* were "*not dependent on an unpaid debt or ongoing proceedings in other forums*," the plaintiff's assertion of other state and federal law theories of recovery alongside its RICO claim did not render the RICO claim unripe.[14]  This holding has no relevance to this case, where the Trustee's lost debt injury *is* "dependent on an unpaid debt" and may be reduced or eliminated by "ongoing proceedings in other forums."

The Trustee's assertion that the Court should ignore the pending fraudulent conveyance actions because his collection efforts have been "successfully frustrated" is belied by the Trustee's conduct to date and his own allegations that defendants in the pending actions possess significant assets. Dkt. No. 58 ("Joint Br.") at 14-16.  The Trustee has been prosecuting the

---

[11] *Datre,* 245 F. Supp. 3d at 404.
[12] *Id.* at 409-10 & n.3.
[13] *Id.* at 409-10.
[14] *Id.* at 409-10, 412 (emphasis added).

fraudulent conveyance actions for years without any indication that doing so was a frolic.[15]  Now, only when his standing is challenged, he claims that judgments on these claims are unlikely to result in a recovery that exceeds the cost of continuing to prosecute them.  This speculation does not render his lost debt claim ripe.[16]  For example, the Trustee alleges that the SALDT owns interests in three shopping centers but that they are "worthless" because one of the shopping centers lost an anchor tenant and the others allegedly do not "generate any meaningful cash flow."  Opp Br. at 29; Compl. ¶ 294.  Even if true, these allegations do not establish that the assets are "worthless."  Because "RICO [treble] damages are netted against recovery obtained from collateral and other sources," the Trustee's ability to recover these and other assets "could significantly affect the total amount owed in the case at bar, and . . . this fundamental uncertainty renders the claim not ready for adjudication."[17]  Accordingly, the Second Circuit consistently rejects attempts to ripen a claim through speculative assertions of futility.  *See, e.g.*, *Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 136 (2d Cir. 2003) (pending arbitration proceedings, even if representing only a "*forlorn hope*," rendered the plaintiff's lost debt claim unripe because the plaintiff could realize value on its collateral, recover on its claims in the arbitration, or a ruling in the arbitration could affect "the size of the debt on

---

[15] The Trustee's current position is particularly dubious given that he claims the fraudulent conveyance actions against Scott LaBonte and Landino are futile, but nonetheless seeks recovery from those same individuals in this action.
[16] The Trustee cites no support for the proposition that the Court should consider the *cost* of seeking to recover the purportedly lost debt in assessing the ripeness of the claim.  *See* Opp Br. at 29-30.
[17] *D'Addario*, 901 F.3d at 93 (quoting Motorola, 322 F.3d at 135-36) (alteration in original).

the underlying contracts, or the obligation to pay it") (emphasis added); *D'Addario v. D'Addario*, 901 F.3d 80, 95 (2d Cir. 2018) (holding that where assets may be "returned to the Estate," even if such recovery is "not . . . easy to accomplish," such "conceivable contingencies" render the lost debt claim unripe," and rejecting the relevance of plaintiff's speculation that she may never recover her share of the estate);[18] *see also First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768 (2d Cir. 1994) (holding that the lost debt claim was unripe until the plaintiff pursued its available contractual remedies to reduce the debt owed, as a "defendant is not liable for all losses that *may occur*, but only for those *actually suffered*") (emphasis added).[19]

The Trustee attempts to distinguish this clear Second Circuit precedent by arguing that the cases are inapplicable because the Trustee "is not a secured creditor of [Scott LaBonte]," and "the Trustee has no independent contractual relationship with any of the Defendants." Opp Br. at 32. This argument is not

---

[18] The Trustee attempts to distinguish *D'Addario* on the ground that the court there noted that the Estate's assets were subject to the "unpredictability of the market forces at play." Opp. Br. at 31-32. Of course, market forces are also "at play" here with respect to, for example, the value of the assets (like the SALDT's shopping centers) that are sought in the Trustee's fraudulent conveyance actions. Regardless, the holding in *D'Addario* was primarily premised on the "conceivable contingency" that the estate would recover assets, *i.e.*, the exact situation presented here.

[19] *See also, e.g., DLJ Mortg. Cap., Inc. v. Kontogiannis*, 726 F. Supp.2d 225, 238 (E.D.N.Y. 2010) ("[The plaintiff's] assumption that pursuit of relief in more traditional legal proceedings would be futile does not permit it to skip over those proceedings and head straight for treble damages in a RICO action."); *Goldfine v. Sichenzia*, 118 F. Supp.2d 392, 398 (S.D.N.Y. 2000) ("The Plaintiffs' conclusory allegations . . . that the debts are . . . uncollectible, are, simply put, legal conclusions that must be reached by a court of competent jurisdiction before they will suffer any RICO injury.").

only flatly contrary to the express holdings of *Uzan* and *D'Addario*,[20] but has been rejected by the Second Circuit itself:  "Appellants argue that *Uzan* is limited to cases where a plaintiff has failed to exhaust its contractual remedies, but *Uzan*'s reasoning broadly extends to non-contractual remedies as well."[21]

Recognizing that the pending fraudulent conveyance actions render his lost debt claim unripe, the Trustee now seeks to manufacture his standing by moving in the Bankruptcy Court for permission to seek to dismiss three of the four pending actions.[22]  However, even if the Trustee is successful in obtaining dismissal of the pending actions,[23] doing so will not cause his RICO claim to ripen.  "[A] debt is 'lost' and thereby becomes a basis for RICO trebling only if the

---

[20] In *Uzan*, the court held that the claim was unripe not only because the plaintiffs may "realize value on the collateral," but because the plaintiffs may "recover in the [pending] arbitrations," *or* "the size of the debt on the underlying contracts, or the obligation to pay it, [may be] affected by . . .  the [pending] arbitration." Likewise, in *D'Addario*, the court did not base its holding on any contractual right of the plaintiff, but rather on the uncertainty regarding the plaintiff's distributional share of the estate's assets. **901 F.3d at 95.**

[21] *Harbinger Cap. Partners Master Fund I, Ltd. v. Wachovia Cap. Markets, LLC*, 347 F. App'x 711, 713 (2d Cir. 2009).  *See also Lanza v. Merrill Lynch & Co., Inc.*, 154 F.3d 56, 59 (2d Cir. 1998) (holding that a RICO claim is ripe where the plaintiff has "no contractual *or other legal remedies* which could assuage the injury") (emphasis added); *Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, 17 F. Supp. 3d 207, 232 (E.D.N.Y. 2014) ("*[S]eparate and apart from the issue of plaintiff's status as a secured creditor*, *Uzan* holds that a plaintiff's damages are not 'clear and definite' so long as that plaintiff's damages could be mitigated or abated in pending litigation.") (emphasis added).

[22] It is unclear why the Trustee believes that dismissing only three of the four pending actions would render his claim ripe.  Regardless, even voluntary dismissals of all of the pending actions would be unavailing, as discussed below.

[23] The defendants in the fraudulent conveyance actions will oppose any attempt by the Trustee to dismiss the pending cases without prejudice, particularly where there are pending dispositive motions.  The Trustee's argument ignores the collateral effect on these proceedings of a dismissal of the pending actions *with prejudice*.

debt (1) cannot be collected (2) '*by reason of*' a RICO violation."[24]  Therefore, the Trustee must not only establish that his collection efforts have been "successfully frustrated," but "*how any such ultimate frustration was a proximate consequence of any of defendants' predicate acts*."[25]  Moreover, courts do not favor tactical maneuverings to create standing where there is none,[26] and the Court should not tolerate the Trustee's similar effort here.

　　　If the Trustee *chooses* not to utilize available means to recover assets in satisfaction of the SAL Judgment, the Trustee cannot show that any allegedly wrongful acts of Defendants proximately caused his inability to collect.   It is a well-established principle, applied in the civil RICO context, that "the plaintiff cannot recover if he . . . could have avoided th[e] harm by the use of reasonable effort, and intentionally . . . failed to protect his own interests,"[27] and therefore "when factors other than the defendant's [conduct] are an intervening direct cause of a plaintiff's injury, that same injury cannot be said to have occurred *by reason of* the defendant's actions."[28]  By seeking to dismiss the pending fraudulent conveyance actions before his right to recover is adjudicated, the Trustee would ask the Court or jury to speculate as to which fraudulent conveyance actions would have led to a judgment, and the extent to which those

---

[24] *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1165 (2d Cir. 1993) (emphasis added).
[25] *First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*, 218 F. Supp.2d 369, 381 (S.D.N.Y. 2002) (emphasis added).
[26] *ID7D v. Sears Holding Corp.*, 2012 WL 1247329, at *4 (D. Conn. Apr. 13, 2012) (Bryant, J.) (dismissing patent infringement suit where the plaintiff tried to cure lack of standing by effecting assignment of a patent after the suit was filed).
[27] *Waste Conversion, Inc. v. Rollins Environmental Servs. (NJ), Inc.*, 1989 WL 79768, at *8 (E.D. Pa. July 7, 1989) (citing Restatement (Second) of Torts § 918).
[28] *See also First Nationwide*, 27 F.3d at 763 (emphasis added).

judgments would have been satisfied by the judgment debtors.  Courts refuse to engage in such speculation in civil RICO cases, where the lure of treble damages invites the type of gamesmanship in which the Trustee is engaged.[29]  If the Trustee fails to exhaust his available means of recovering the purportedly lost debt, his injuries are necessarily "indefinite and unprovable."[30]

C.  **The Lost Debt Claim, If Ripe, Is Necessarily Time-Barred under the Injury-Discovery Rule**

The Trustee contends that his purported RICO injury is Scott LaBonte's "inability to repay fraudulent transfers he received from the Goldberg Debtors." Opp. Br. at 36.  The Trustee acknowledges that the Second Circuit applies the injury-discovery rule in determining when a civil RICO claim accrues, and does not dispute that *eight years ago* he (i) calculated the exact amount he could recover from Scott LaBonte and (ii) learned that Scott LaBonte had executed a series of allegedly fraudulent transfers that allegedly rendered him insolvent and unable to satisfy any judgment.  *See id.*; Joint Br. at 18-21.  Therefore, the statute of limitations on the lost debt claim began to run in 2011, at the latest, when the Trustee indisputably "discovered the RICO injury" to his ability to collect the judgment.[31]

---

[29] *See Sheperd v. Am. Honda Motor Co. Inc.*, 822 F. Supp. 625, 630 (N.D. Cal. 1993) ("For this Court, or a jury, to assess what portion of the [plaintiff's financial losses] were attributable to the defendants' wrongful conduct, apart from other factors, would be an exercise in sheer speculation.  Although courts may be willing to permit such speculation in other contexts, Supreme Court . . . precedent indicate[s] that it is not tolerable in the context of RICO with its provision for treble damages.").

[30] *First Nationwide*, 27 F.3d at  768 .

[31] *Lanza*, 154 F.3d at 58.

The Trustee argues that his lost debt claim "could not have matured until the Court fixed the amount of [Scott LaBonte's] indebtedness to the Trustee." Opp. Br. at 36. But the amount of the SAL Judgment is the exact same amount that the Trustee identified as recoverable from him *in 2010*. Joint Br. at 20. A RICO claim accrues when the plaintiff discovers an injury to his property of a "provable amount."[32] The reduction of the injury to judgment is irrelevant to the Trustee's knowledge of the injury, which is the only inquiry relevant to the statute of limitations analysis.

The Trustee's argument is further undermined by his assertion that he had a property interest—his interest in the "chose in action" to recover assets from Scott LaBonte—that was injured in 2010 when Scott LaBonte transferred assets to the SALDT and rendered himself insolvent, seven years before entry of the SAL Judgment in 2017. Opp. Br. at 47-48. The Trustee's alleged inability to collect the SAL Judgment from Scott LaBonte is "derivative" of any purported injury to the Trustee's chose in action, and therefore not a "new and independent" injury giving rise to a new limitations period.[33] The Trustee cannot cause accrual of a new claim, and effectively toll the limitations period for years, by simply characterizing his injury in reference to the SAL Judgment rather than the transfers that rendered Scott LaBonte judgment-proof.[34]

---

[32] *131 Main St. Assoc. v. Manko*, 897 F. Supp. 1507, 1516 (S.D.N.Y. 1995).
[33] *World Wrestling Entm't, Inc. v. Jakks Pacific, Inc.*, 530 F. Supp.2d 486, 524 (S.D.N.Y. 2007) ("[A]llegations of 'new and independent' injuries cannot depend on injuries that are derivative of the core injury sustained.").
[34] *See* Joint Br. at 22 (collecting cases).

**D.    The Trustee Cannot Delay Accrual of the Time-Barred Collection Expense Claim by Delaying Application to the Bankruptcy Court for Approval of His Fees**

Despite acknowledging the applicability of the injury-discovery rule, the Trustee argues paradoxically that "[t]he four-year statute of limitations began to run on the Collection Expenses claim" not when the injury was discovered, but "when the Trustee became obligated to pay [the expenses]," which did not occur "until the Bankruptcy Court approved them."  Opp. Br. at 37.  The Trustee cites no authority that supports his strained position.

In *Bankers Trust Co. v. Rhoades*, the Second Circuit held that the RICO plaintiff had a timely claim for those collection expenses "which it *discovered* or should have discovered" within the limitations period.[35]  The Court's statement on which the Trustee apparently is attempting to rely (*i.e.*, that the collection expense injury was suffered "when [the plaintiff] became obligated to pay that expense") was made in rejecting the plaintiff's attempt to do exactly what the Trustee is attempting to do here—delay accrual of the claim until the collection expenses were actually paid.  The Second Circuit held that a plaintiff *cannot* "postpone accrual of its claim until it had paid its legal expenses" because it would allow the plaintiff to "keep its claim open indefinitely simply by protracting the litigation."[36]  Likewise here, the Trustee cannot toll the estate's claim by his unilateral decision to delay application for approval of the incurred fees.

The Trustee's reliance on *131 Main St. Assoc. v. Manko* is equally misplaced, as the court there again rejected the plaintiffs' attempt, like the

---

[35] 859 F.2d 1096, 1105 (2d Cir. 1988) (emphasis added).
[36] *Id.*

Trustee, to delay accrual of their claim.  The court held in *Manko* that it was the plaintiffs' discovery that they had "incurred tax-related expenses of a provable amount[,] . . . not the actual payment as such, that counted as an economic injury for purposes of the accrual of RICO's statute of limitations."[37]  The court specifically rejected the plaintiffs' attempt to toll accrual of their claim until further events that "would arguably have had an impact on the amount of a given partner's tax liability," because "[w]hatever the sum of money that hung in the balance[,] . . . it did not render plaintiffs' injuries incalculable."[38]  The court in *Manko* correctly recognized the distinction between injuries that are speculative and uncertain, and injuries for which the precise measure of damages may be influenced by future events:  "*Bankers Trust* does not say that a potential plaintiff must be able to calculate his loss down to the penny before his RICO injury can be said to exist; all that is required is that the injury not be 'speculative.'"[39]

Here, the alleged collection expense injury was clear and definite when fees "of a provable amount" were incurred, even if the precise amount to be paid by the estate was subject to the Bankruptcy Court's review for reasonableness and, in that limited respect, not yet "fully quantifiable."[40]  Unlike the alleged lost debt injury, there were no pending collateral proceedings that affected whether the collection expense injury was incurred.[41]  Thus, the fact that the precise

---

[37] 897 F. Supp. 1507, 1516 (S.D.N.Y. 1995).
[38] *Id.* at 1517.
[39] *Id.*
[40] *Butala v. Agashiwala*, 916 F. Supp. 314, 317 (S.D.N.Y. 1996).
[41] *See D'Addario*, 901 F.3d at 95 (holding that collection expense injury was 'clear' and 'definite,' even though the amount of the claim could change, because the

amount of the fees could have been modified by the Bankruptcy Court did not render the injury "incalculable," and is irrelevant to the statute of limitations analysis under the Second Circuit's injury-discovery rule.

**E.     The Asset Transfers that Allegedly Caused the Purported Lost Debt Injury Are Not Predicate Acts of Racketeering**

The Trustee acknowledges that the only alleged predicate acts that could conceivably have caused his alleged lost debt injury are the 2010 asset transfers by Scott LaBonte to the SALDT.  *See* **Opp. Br. at 54 ("If [Defendants] had not effectuated the Dynasty Trust Transfers to the SALDT the Trustee could have . . . ultimately enforce[d] the SAL Judgment in 2017.").**[42]  But the Trustee has failed to allege that these 2010 transfers violated any federal criminal law,[43] and therefore the lost debt claim must be dismissed.[44]

**Bankruptcy Fraud.**  The Trustee asserts that it is "baseless[]" for Defendants to claim that the Trustee's interpretation of Section 152(7)—which renders criminal any action to shelter assets by a target (or a potential target) of a trustee's avoidance action—would constitute "an unprecedented expansion of the scope of the criminal statute," Opp. Br. at 41, and notes (as Defendants acknowledged) that Section 152(7) may be applied to individuals other than the

---

pending collateral proceedings regarding distribution of the estate at issue did not affect the collection expense injury).

[42] As explained in the Joint Brief, Scott LaBonte is the *only* individual or entity from whom the Trustee has established any right of recovery.  Joint Br. at 44-45.

[43] The Trustee concedes, *see* Opp. Br. at 52, that Scott LaBonte's asset transfers to the SALDT in 2010 cannot constitute money laundering because the transfers did not "involve the proceeds of specified unlawful activity."  18 U.S.C. § 1956. The claims of money laundering are thus irrelevant to the lost debt injury.

[44] *See Hemi Grp., LLC v. City of N.Y., N.Y.*, 559 U.S. 1, 9 (2010) ("[T]o state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense not only was a 'but for' cause of his injury, but was the proximate cause as well.") (internal quotation marks omitted).

debtor and need not involve property of a debtor's estate.  Opp. Br. at 39-40.  Yet the Trustee is unable to point to a *single case* where someone who was not a debtor, an insider or agent of a debtor, or an individual contemplating filing for bankruptcy, was convicted *or even charged* with violating Section 152(7).[45]

It is well-established that a transfer to hinder potential creditors does not violate Section 152(7) absent some *fraud* arising from an existing duty or misrepresentation to the bankruptcy court.[46]  The fact Section 152(7) may reach individuals who are not currently debtors in bankruptcy (*i.e.*, insiders or agents of a debtor in bankruptcy, or an individual contemplating filing for bankruptcy) does not support the Trustee's entirely novel position that Scott LaBonte—who at the time of the allegedly fraudulent transfers (i) was not a party to any bankruptcy or adversary proceeding, (ii) had made no representations and had no duty of disclosure to a bankruptcy court, and (iii) transferred unattached property to which he held legal title—committed *bankruptcy fraud* simply because the Trustee *subsequently* filed an avoidance action against him.  The Trustee argues

---

[45] Neither of the cases cited by the Trustee is remotely analogous to the circumstances alleged here.  In *Stegeman v. United States*, the court affirmed a conviction of individuals who fraudulently transferred property in contemplation of their forthcoming bankruptcy petitions and, following the petitions, fraudulently concealed from the trustee property belonging to the estate.  425 F.2d 984, 985 (9th Cir. 1970).  In *United States v. Johns*, the court affirmed the conviction of a defendant who created a fraudulent mortgage agreement with a debtor and made fraudulent representations to the debtor's bankruptcy trustee regarding the purported mortgage, all in a scheme to obtain property belonging to the debtor's estate.  686 F.3d 438, 441-42 (7th Cir. 2012).

[46] *See, e.g.*, *First Cap. Asset Mgmt., Inc. v. Brickellbush, Inc.*, 219 F. Supp.2d 576, 582 (S.D.N.Y. 2002) ("An intention to engage in a transfer for the purpose of hindering potential creditors does not alone rise to the level of bankruptcy fraud.") (emphasis in original), aff'd sub nom., *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2016).

in response that his mere status as a bankruptcy trustee renders Scott LaBonte's asset transfers criminal.  Established precedent flatly contradicts the Trustee's theory, and a civil RICO action is not the proper venue to adjudicate a novel and unprecedented interpretation of a criminal statute.[47]

**Obstruction of Justice.**  As with his claims of bankruptcy fraud, the Trustee is unable to cite a single case in support of the proposition that simply transferring assets subject to a future claim by a bankruptcy trustee constitutes criminal obstruction of justice.  This is not surprising because, as explained in the Joint Brief, the obstruction of justice statutes protect the integrity of *judicial proceedings.*[48]  The Trustee does not cite any precedent to the contrary, but simply asserts that because a bankruptcy trustee is considered a "judicial officer" under Section 1503, any conduct that impairs the Trustee's efforts to recover assets for the estate is criminal.  Opp. Br. at 45.  The Trustee's theory would criminalize every potential fraudulent conveyance by a target (or potential target) of the innumerable claims filed by trustees to recover estate property, yet the Trustee cannot identify a single criminal prosecution for such conduct.

---

[47] *See Skilling v. United States*, 561 U.S. 358, 411 (2010) (holding that the rule of lenity is "especially appropriate" in construing RICO predicate acts).

[48] *See, e.g., United States v. Howard*, 569 F.2d 1331, 1337 (5th Cir. 1978) ("Section 1503 does not forbid interferences with doing 'justice,' in the sense of 'fairness' and 'rightness[]' . . . . Instead, it forbids interferences with the 'administration of justice,' which means *judicial procedure.*") (citations omitted) (emphasis in original); *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1040 (2d Cir. 1984) (Section 1503 is "directed toward attempts to deflect jurors, witnesses, or judicial officials from the proper performance of their duties, rather than generally to reach efforts to frustrate the intended effect of an already rendered judgment," and the Second Circuit's "research . . . disclosed no case upholding a conviction for violation of § 1503 based on conduct intended to remove an unattached asset from the jurisdiction of the court but not to sway a judicial officer, juror, or witness by threat, promise, or deception.").

17

The Trustee alleges that Scott LaBonte's asset transfers to the SALDT in 2010 hindered his ability to collect the SAL Judgment he obtained seven years later.  But at the time of the transfers, Scott LaBonte was not a party to any judicial proceeding, had no duty of disclosure to either the Trustee or any court, and is not alleged to have done anything to compromise the integrity of any judicial proceeding.  He is simply alleged to have transferred unattached property to which he held legal title, and which could have allegedly been used to satisfy a claim that had not even been asserted at the time of the transfers.  There is no basis to deem this alleged conduct, even if true, criminal obstruction of justice.[49] Again, this novel and unprecedented theory cannot sustain a civil RICO claim.[50]

**Wire Fraud.**  It is well-established that a requisite element of wire fraud is that one be injured "in his property rights."[51]  The Trustee alleges an injury to his ability to collect the SAL Judgment, a property interest which was not obtained until 2017—seven years after Scott LaBonte's alleged asset transfers to the SALDT.  Acknowledging this fundamental flaw in his wire fraud claims, the

---

[49] The Trustee also asserts that the conduct alleged in the Complaint constitutes obstruction of justice because it "extended the duration of the Debtors' Bankruptcy cases by many years."  Opp. Br. at 44.  But the cases cited by the Trustee to support this proposition actually show just the opposite—that only conduct intended to undermine the integrity of judicial *proceedings* falls within the scope of the statute:  In *Nye v. United States*, the court affirmed a conviction of the defendant for filing fraudulent letters and affidavits to the trial court to secure dismissal of a case, 137 F.2d 73, 75 (4th Cir. 1943); in *United States v. Neal*, the court affirmed a conviction for submitting a fraudulent letter (purportedly from a juror) in an effort to secure a new trial, 951 F.2d 630, 632 (5th Cir. 1992); and in *United States v. Newton*, the court affirmed a conviction of the defendant for tipping off targets of forthcoming arrest and search warrants, 452 F. App'x 288, 291 (4th Cir. 2011).

[50] *See Skilling*, 561 U.S. at 411.

[51] *McNally v. United States*, 483 U.S. 350, 358 (1987).

Trustee now argues that the 2010 asset transfers by Scott LaBonte constitute wire fraud because they injured the Trustee's separate property interest in a "chose in action," *i.e.*, his property interest in his claim to recover from Scott LaBonte property allegedly fraudulently conveyed to him by the debtor.  The Trustee is correct that a chose in action is property, but that fact does not save his wire fraud claims because (i) the 2010 asset transfers *did not injure his interest in the claim*, and (ii) a property interest in a *claim* does not give rise to a property interest in property that could conceivably be used to satisfy a judgment on that claim.

The Fourth Circuit's decision in *United States v. Adler* illustrates clearly that the Trustee's position is untenable.  In *Adler*, the defendant assured his vendor that an outstanding unsecured debt would be paid once the defendant received a payment from the defendant's client.  When the defendant received the money from his client, however, he used it to pay himself and his partner rather than the vendor, made false representations to the vendor regarding the defendant's ability to pay the outstanding debt going forward, and provided a false accounting of his use of the money received from the client.[52]

The Fourth Circuit reversed the defendant's conviction for wire fraud.  The court first noted that "the *sine qua non* of a conviction under the federal wire fraud statute is the deprivation of another's money or property through fraudulent means," and that there were only "two kinds of property of which [the vendor] could have been deprived—its chose in action on [the defendant's] debt or the

---

[52] **186 F.3d 574, 575 (4th Cir. 1999).**

particular money itself that [the defendant] received" from the client.[53]  The court rejected the precise argument made by the Trustee here, holding that transfers of property that could be used to satisfy a claim do *not* injure a property interest in the claim itself:  "Although [the vendor] clearly had a property interest in the chose in action, it was not deprived of that property; in fact, [the vendor] exercised its right to sue on that interest and secured a default judgment in the court of law."[54]  The court further rejected the argument that a "property right in the chose in action on the unsecured debt created an *additional* property right in any funds needed to satisfy that debt," as the argument "blurs the distinction between two distinct types of property, one of which (a right to sue for payment of a debt) an unsecured creditor undoubtedly does own, and the other of which (the debtor's money) the unsecured creditor, equally undoubtedly, does not own."[55]

Likewise here, Scott LaBonte's transfer of his assets to the SALDT did not deprive the Trustee of his ability to sue Scott LaBonte to recover property allegedly fraudulently conveyed by the debtor, as evidenced by the fact that the Trustee *did* sue and obtained a judgment.  As in *Adler*, while Scott LaBonte's asset transfers may have "made it harder for [the Trustee] to obtain payment following [the] judgment," the transfers "did not deprive [the Trustee] of anything

---

[53] *Id.* at 576.
[54] *Id.*  A property interest in a chose in action is injured when the defendant's conduct impaired the ability to *assert* the claim in court.  *See, e.g., United States v. Khashoggi*, 1990 WL 31874, at *13 (S.D.N.Y. Mar. 13, 1990) (declining to dismiss mail fraud charge alleging that the defendant fraudulently attempted to rebut the victim's claim of ownership to certain properties by falsifying documents and submitting a variety of false testimony and affidavits to the court).
[55] *Adler*, 186 F.3d at 579.

20

that [the Trustee] actually owned," and therefore do not support a claim of wire fraud.[56]

The Trustee also cites two district court decisions which, he asserts, sustained wire fraud allegations on the basis of pre-judgment asset transfers.  In *Gutierrez v. Givens*, however, the court held that the funds fraudulently conveyed by the defendants could arguably be traced to funds *fraudulently obtained* from the plaintiffs in the defendants' fraudulent scheme, and therefore the "[m]isuse of these funds would constitute actionable fraud against Plaintiffs' property rights at the time that the actions in question occurred."[57]  The court's rejection of the defendants' more general argument that wire fraud requires the existence of "vested property rights" is contrary to the overwhelming weight of authority, including the Supreme Court's decision in *McNally*.

The Trustee's reliance on *Dexia Credit Local v. Cuppy*, 2010 WL 3257873 (N.D. Ill. Aug. 16, 2010), is also misplaced.  The Trustee asserts that the plaintiff in *Dexia* "alleged that the defendants engaged in a 'scheme[] to defraud' a defendant's 'creditors and potential creditors' that began well before the plaintiff obtained a judgment."  Opp. Br. at 49.  But the alleged wire fraud predicates in

---

[56] *Id.* at 580.  As the Second Circuit has noted, a property interest in a chose in action cannot be extended so as to expand the scope of the wire fraud statute beyond the parameters set by the Supreme Court in *McNally*.  *See United States v. Miller*, 997 F.2d 1010, 1021 (2d Cir. 1993) (rejecting the argument that the defendants failure to disclose certain apartment sale proceeds injured the co-op members' property interest in a claim for a constructive trust on the sale proceeds, as "the upshot of extending the 'chose in action' rationale to such situations would be to convert every breach of a fiduciary duty that is not openly confessed into a deprivation of 1341 'property,'" and "[s]uch an extension is plainly inconsistent with the dictates of *McNally* and *Carpenter*").
[57] 989 F. Supp. 1033, 1040 (S.D. Cal. 1997).

*Dexia* occurred *after* the defendant had fraudulently induced the plaintiff into issuing a letter of credit secured by collateral, and the plaintiff had paid $56 million on the letter of credit.[58]  Although the alleged wire fraud predicates in *Dexia* occurred prior to the plaintiff's judgment, unlike here they injured *other* unambiguous property interests of the plaintiff.

The absence of a property interest injured by the asset transfers is sufficient to dispose of the Trustee's wire fraud claims.  But the Trustee also fails to address the absence of allegations satisfying the second element of a wire fraud claim—a "scheme to defraud."  The Trustee argues that to sustain a claim for wire fraud he is not required to plead that the wires themselves were misleading or that the Trustee himself relied on any misrepresentation.  Opp. Br. at 50-51.  Defendants never argued to the contrary, but rather noted that the "scheme to defraud" element encompasses conduct "designed to defraud by representations as to the past or present, or suggestions and promises as to the future,"[59] and that "[n]one of the parties to the asset transfers is alleged to have had a duty of disclosure to the Trustee or the bankruptcy court, or to have made any misrepresentation of fact to the Trustee *or anyone else.*"  Joint Br. at 39 (emphasis added).  While the wires themselves need not be fraudulent, they must be a component of a scheme involving misrepresentation or deceit.  The Trustee

---

[58] The plaintiff alleged predicate acts of wire fraud occurring between May 2005 and April 2007, *see* Complaint, *Dexia Credit Local v. Cuppy*, 2010 WL 11208585 (N.D. Ill. Mar. 9, 2010), at ¶¶ 183-185, which was *after* the plaintiff was fraudulently induced to issue the secured letter of credit in 1998 and paid $56 million on the letter of credit in 2001, *see* Answer, *Dexia Credit Local v. Rogan*, No. 02-8288 (Dkt. No. 248), at ¶¶ 5-6, 206.

[59] *United States v. Reifler*, 446 F.3d 65, 95 (2d Cir. 2006) (citation omitted).

fails to address this argument and cites no case law in support of the proposition that mere fraudulent transfers to avoid a creditor constitute a "scheme to defraud."[60]

**F.    Allegations of Sporadic Conduct by an Accountant and Two Family Members to Facilitate Avoidance of a Creditor Do Not Establish a Racketeering Enterprise**

The Trustee's reliance on *United States v. Boyle* to support his argument that he has adequately alleged the existence of an "enterprise" is misplaced.  In *Boyle*, the Supreme Court rejected the argument that an association-in-fact enterprise must have "structural attributes" in addition to those that "can be fairly inferred from the language of the statute," such as a "hierarchy," "role differentiation," a "unique modus operandi," and a "chain of command."[61] Defendants made no such argument here, and the Court in *Boyle* did not disturb, and in fact repeatedly reaffirmed, the definition of an association-in-fact enterprise set forth in *United States v. Turkette*: "a group of persons associated together for a *common purpose* of engaging in a course of conduct," "proved by evidence of an *ongoing organization*, formal or informal, and by evidence that the various associates function as a *continuing unit*."[62]

The allegations in the Complaint do not establish a "continuing unit" with a "common purpose."  *See* Joint Br. at § V.C.  Although "proof used to establish

---

[60] As noted in the Joint Brief, the cases in which courts have held that plaintiffs adequately pleaded wire or mail fraud in connection with a scheme to put assets beyond the reach of creditors do not involve mere alleged fraudulent transfers of unattached property, like this case, but *misrepresentation or deceit*, and *property interests* that were *injured* at the time of the alleged racketeering activity.  Joint Br. at 40 (collecting cases).
[61] 556 U.S. 938, 948 (2009).
[62] 452 U.S. 576, 580 (1981) (emphasis added).

the[] separate elements [of a RICO enterprise and a pattern of racketeering activity] may in particular cases coalesce, proof of one does not necessarily establish the other."[63]  As explained in the Joint Brief, the alleged enterprise consists of individuals who have a variety of personal and legitimate business ties that long pre-dated the alleged racketeering activity and whose alleged interests and participation varied widely across the alleged racketeering period. In these circumstances, the mere allegation of predicate acts is inadequate.[64]

G.   **Avoidance of a Single Creditor through a Set of Discrete and Sporadic Asset Transfers Does Not Constitute a Pattern of Continuing Criminal Activity[65]**

The Trustee cannot satisfy the requirements for closed-ended continuity by fracturing the alleged effort to avoid a single creditor into a "series of discrete schemes."  Opp. Br. at 57.  "[A]cts . . . [that] are unrelated to the predicate acts which allegedly injured [the] plaintiff . . . cannot be considered as part of the purported racketeering activity to extend the scope of the pattern."[66]  The only acts that allegedly caused the lost debt injury are the single set of asset transfers in 2010 from Scott LaBonte to the SALDT, and the only acts relevant to expenses

---

[63] *Id.* at 583.

[64] The cases where allegations of predicate acts alone have been held to be sufficient to allege an association-in-fact enterprise involve, unlike here, wholly illegitimate associations formed for the specific purpose of committing predicate acts, in which each defendant participated.  *See, e.g.*, *United States v. Mazzei*, 700 F.2d 85, 89 (2d Cir. 1983) (involving a "continuing unit" with a common purpose of shaving points during the Boston College basketball season); *JSC Foreign Econ. Ass'n Technostroyexport v. Weiss*, 2007 WL 1159637 (S.D.N.Y. Apr. 18, 2007), at *9-10 (each party personally profited from the various transactions, all of which were illegitimate and involved each of the alleged members of the enterprise).

[65] The Trustee concedes that he is unable to establish open-ended continuity. *See* Opp. Br. at 52.

[66] *Shamis v. Ambassador Factors Corp.*, 1997 WL 473577, at *15 (S.D.N.Y. Aug. 18, 1997).

incurred in pursuing additional fraudulent conveyance actions are the sales of joint venture interests to Landino in 2012 and 2013, and Devcon's alleged transfer of assets to DEIPM in 2015.  Joint Br. at § V.D.2.  These are discrete asset transfers, years apart.  Such sporadic activity is insufficient to establish closed-ended continuity.[67]

The Trustee's allegations that Defendants violated "seven discreet criminal statutes," Opp. Br. at 57, are all legally deficient, and are all premised on the exact same type of conduct—the transfer of assets that could allegedly be used to satisfy the SAL Judgment.  Therefore, even if these allegations were not legally baseless, they do not establish the "variety" of predicate acts relevant to the assessment of closed-ended continuity.[68]  There is also indisputably only one alleged victim; the Trustee offers no support for the proposition that the Court should consider the number of a singular victim's constituents (*i.e.*, Goldberg's creditors) in assessing closed-ended continuity, and doing so would make no sense where the relevant question is whether there is a *pattern* of criminal conduct.

At best, the Trustee has alleged a single scheme, consisting of a discrete set of sporadic asset transfers, targeting a single victim, involving only a four-member alleged enterprise.  See Joint Br. at § V.D.2.  These allegations do not support a finding of closed-ended continuity.

---

[67] *See, e.g.*, *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989) (predicate acts that are "isolated events" do not establish continuity).
[68] *See Weizmann Institute of Science v. Neschis*, 229 F. Supp.2d 234, 257 (S.D.N.Y. 2002).

## CONCLUSION

For the reasons set forth above and in the Joint Brief, the Defendants' respective motions to dismiss should be granted.


Dated:        March 20, 2020

                                  FINN DIXON & HERLING LLP

                                  By: /s/ Alfred U. Pavlis
                                      Alfred U. Pavlis (ct08603)
                                      David R. Allen (ct30827)
                                      Finn Dixon & Herling LLP
                                      Six Landmark Square
                                      Stamford, CT 06901-2704
                                      Tel: (203) 325-5000
                                      Fax: (203) 325-5001
                                      apavlis@fdh.com
                                      dallen@fdh.com


                                  *Attorneys for Paul Bourdeau, Esq.*

**PULLMAN & COMLEY LLC**

By: **/s/ James T. Shearin**
     **James T. Shearin (ct01326)**
     **Thomas S. Lambert (ct29561)**
     **Pullman & Comley LLC**
     **850 Main Street**
     **P.O. Box 7006**
     **Bridgeport,   CT   06601-7006**
     **jtshearin@pullcom.com**
     **tlambert@pullcom.com**

**Of Counsel**
     **David M.S. Shaiken (ct02297)**
     **Shipman, Shaiken & Schwefel, LLC**
     **433 South Main Street**
     **West Hartford, CT 06110**
     **david@shipmanlawct.com**

*Attorneys for Scott A. LaBonte, individually and as Trustee of the Scott A. LaBonte Revocable Trust, and Sally A. LaBonte, individually and as Trustee of the Scott A. LaBonte Revocable Trust and Trustee of the Scott A. LaBonte Dynasty Trust*

**MARK H. DEAN, PC**

By: **/s/ Mark Dean**
     **Mark Dean (ct01935)**
     **Mark H. Dean, PC**
     **241 Main Street, Suite 501**
     **Hartford, CT 06106**
     **mdean@mhdpc.net**

*Attorneys for Roland G. LaBonte, individually and as Trustee of the Roland G. LaBonte Revocable Trust and the Scott A. LaBonte Dynasty Trust, and Marilyn P. LaBonte, individually and as Trustee of the Marilyn P. LaBonte 2015 Revocable Trust and Trustee of the Marilyn P. LaBonte Revocable Trust*

**CARMODY TORRANCE SANDAK HENNESSEY LLP**

By: **/s/ Thomas J. Sansone**
     **Thomas J. Sansone (ct00671)**
     **David T. Grudberg (ct01186)**
     **Carmody Torrance Sandak Hennessey LLP**
     **195 Church Street**
     **New Haven, CT 06509**
     **tsansone@carmodylaw.com**
     **dgrudberg@carmodylaw.com**

*Attorneys for Robert A. Landino*

**COWDERY & MURPHY LLC**

By: **/s/ Thomas J. Murphy**
     **Thomas J. Murphy (ct07959)**
     **James J. Healy**
     **Cowdery & Murphy LLC**
     **280 Trumbull Street, 22nd Floor**
     **Hartford, CT 06103**
     **tmurphy@cowderymurphy.com**
     **jhealy@cowderymurphy.com**

*Attorneys for Joseph W. Sparveri, Jr.*

**NATALE & WOLINETZ**

**By:  /s/ Anthony Natale**
      **Anthony Natale (ct08451)**
      **Natale & Wolinetz**
      **116 Oak Street**
      **Glastonbury, CT 06033**
      **anatale@natalelawfirm.com**

***Attorneys for Lawrence J. Marks, Esq.***
***and Juliano & Marks, LLC***

## CERTIFICATION

I hereby certify that on March 20, 2020 a copy of the foregoing Defendants' Reply Memorandum of Law in Support of Defendants' Motions to Dismiss the Complaint was filed electronically through the Court's electronic filing system and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's CM/ECF System.

/s/ Alfred U. Pavlis
Alfred U. Pavlis (ct08603)
FINN DIXON & HERLING LLP
Six Landmark Square
Stamford, CT  06901-2704
Tel: (203) 325-5000
Fax: (203) 325-5001
E-mail: apavlis@fdh.com