UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMES BERMAN, Chapter 7 Trustee for the Substantively Consolidated Estate of Michael S. Goldberg, LLC and Michael S. Goldberg,<br><br>Plaintiff,<br><br>v.<br><br>SCOTT A. LABONTE, et al.<br>Defendants. | No. 3:19-CV-1533(VLB)<br><br>September 1, 2020 |

## MEMORANDUM OF DECISION ON DENYING DEFENDANTS' MOTION FOR A STAY OF DISCOVERY, [DKT. 43]

From 1997 until shortly before his arrest in 2009, Michael S. Goldberg operated a "pure" Ponzi scheme which defrauded investors of $30 million dollars. [Dkt. 1 (Compl.) ¶¶ 3, 25-28, 45-46]. Plaintiff James Berman ("Plaintiff" or the "Trustee") is the appointed Chapter 7 trustee over Mr. Goldberg's and his former investment firm's bankruptcy estates, and the receiver for restitution in the criminal proceeding against Mr. Goldberg. [Compl. ¶¶ 11-14]. The Complaint alleges that Scott LaBonte and members of the LaBonte family, individually and through various private trusts, conspired amongst themselves and with their accountants, lawyers, and a business partner to frustrate Plaintiff's attempts to collect a $7.24 million judgment against Scott based on his role as a "feeder" in the Ponzi scheme.[1] *See generally* [Compl. ¶¶ 2, 52, 283-399]. This case is brought under the private action provision of the Racketeer

---

[1] For ease of reference, the Court will refer to members of the LaBonte family by their first names only.

1

Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c). All the Defendants have now moved to dismiss the Complaint and they jointly seek a stay of discovery pending the Court's ruling on their respective motions. [Dkts. 51-57]. For reasons set forth herein, Defendants' joint Motion for a Stay of Discovery is DENIED.

## Background

The Court endeavors to briefly summarize the one-hundred-page complaint and the culmination of a decade of litigation pre-dating this case. The Complaint alleges that from January 2006 through 2007, Scott invested in the Goldberg Ponzi scheme using sub-investors' capital, structured through six promissory notes that yielded high interest and mandatory loan fees inuring to Scott's benefit. [Compl. ¶¶ 28-44]. Scott knew that Mr. Goldberg was operating a Ponzi scheme when he made the investments. [Compl. ¶¶ 43-44]. When the Ponzi scheme collapsed, Scott was a "net winner" because he recovered his investment, plus unearned income from investment fees. [Compl. ¶ 44]. On September 27, 2017, the Trustee obtained a $7.24 million judgment against Scott in an adversarial proceeding. [Compl. ¶ 52]; *In Re Michael S. Goldberg*, 15-cv-1682-AWT, Dkt. 25 (Order Accepting the bankruptcy judge's Proposed Findings granting judgment, over objection) at 11) (Thompson, J.). This action does not consider the merits of the judgment against Scott, but rather alleged efforts to frustrate the Trustee's ability to collect that judgment.

In May 2010, Scott learnt of a "claw back action" pending against him in bankruptcy court. [Compl. ¶¶ 57-59]. On June 2, 2010, Scott met with his father, Roland LaBonte, his accountant Joseph W. Sparveri, and his attorney Paul Bourdeau, to formulate a plan to place Scott's assets beyond the reach of the bankruptcy Trustee. [Compl. ¶¶ 64-65]. Following the meeting, Scott transferred most of his assets, held individually and through a revocable trust, to the Sally A. LaBonte Dynasty Trust using instruments backdated to June 2, 2010. [Compl. ¶¶ 71-81]. The Complaint alleges that the inter-trust transfers relied on sham promissory notes and false valuations. [Compl. ¶¶ 82-100]. With the approval of other LaBonte family members, Scott continued to exercise control over assets in the dynasty trust and diverted income generated from properties held by the dynasty trust for his personal use. [Compl. ¶¶ 102-134]. Mr. Sparveri and Mr. Bourdeau advised on the fraudulent transfers. [Compl. ¶¶ 81-84, 89-91, 94-97, 100, 103-104, 108, 119]. Mr. Sparveri served as a trustee to the Sally A. LaBonte Dynasty Trust but resigned a day after being served with the Pre-Judgement Remedy that garnished the inter-trust promissory notes. [Compl. ¶ 128].

Scott also invested in a series of joint ventures with his long-time business partner, Robert Landino. [Compl. ¶¶ 135-213]. Mr. Landino knew of the pending adversarial action and Scott's efforts to transfer assets beyond the reach of the Trustee in the fall of 2011. [Compl. ¶ 146]. Thereafter, in April 2012, Mr. Landino, through his joint venture entity, sued Scott and other LaBonte family entities over the distribution of proceeds from a development project. [Compl. ¶¶ 140-153]. After suit was filed, Scott transferred his interest in their various joint ventures to Mr.

Landino, who in turn "washed" the assets by further transferring them through several multi-level transactions. [Compl. ¶¶ 158-159, 195-213].

Finally, the Complaint alleges that Scott and Roland rendered Devon Enterprises, Inc., a property management firm that provided administrative services to LaBonte family owned real estate, illiquid by restructuring the company and its contracts with LaBonte family properties. [Compl. ¶¶ 214-281]. The new entity, DEIPM, was created to "park" Devcon for Scott until the Trustee litigation concluded while simultaneously increasing the amount of cash being extracted from LaBonte family owned real estate. [Compl. ¶¶ 234-256, 273-280]. Scott continues to freely access funds generated by former Devcon assets through the MPL 2015 Revocable Trust, which was settled by his mother, Marilyn. [Compl. ¶¶ 257-267]. The LaBontes were assisted by Attorney Lawrence Marks in restructuring Devcon, who knew that the purpose of the transactions was to obstruct the Trustee's collection efforts. [Compl. ¶¶ 247, 249, 252-256, 261].

## Legal Standard

Federal Rule of Civil Procedure 26(c)(1)(A) allows a court, for "good cause" and in favor of "any person from whom discovery is sought," to "…issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its own docket with economy of time and effort for itself, for counsel, and for litigants. It follows that the decision whether to issue a stay is 'firmly within a district court's

discretion.'" *LaSala v. Needham & Co.*, 399 F. Supp. 2d 421, 427 (S.D.N.Y. 2005)(internal citations and quotation marks omitted). The filing of a dispositive motion does not automatically constitute good cause for a stay of discovery. D. Conn. Standing Order on Scheduling in Civ. Cases (Am. Jul. 30, 2018*); see also Chesney v. Valley Stream Union Free Sch. Dist. No*. 24, 236 F.R.D. 113, 115 (E.D.N.Y. 2006) ("It, of course, is black letter law that the mere filing of a motion to dismiss the complaint does not constitute "good cause" for the issuance of a discovery stay.")(citing *In re Currency Conversion Fee Antitrust Litig.*, No. M21-95, 2002 WL 88278, at *1 (S.D.N.Y. Jan. 22, 2002)). [2]

Factors that courts have considered when determining whether or not a stay is appropriate include: (1) whether the defendant has made a strong showing that the plaintiff's claim is unmeritorious; (2) the breadth of discovery and the burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay. *Chesney*, 236 F.R.D. at 115. A discovery stay *may* be appropriate pending resolution of a potentially dispositive motion where the motion articulates substantial grounds for dismissal. *Id*. at 115-116 (staying discovery in an employment case where Defendants' motion to dismiss was based on two "bright line" issues and several pleading and service defects for a plethora of claims

---

[2] The default rule is, of course, subject to statutory exceptions. For example, the filing of a motion to dismiss under the Private Securities Litigation Reform Act automatically stays discovery. 15 U.S.C. § 78u-4(b)(3)(B). Notably, RICO contains no statutory provision for automatically staying discovery upon the filing of a motion to dismiss.

5

against sixteen entities or individuals*); see also Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 653 (S.D.N.Y. 1996), *aff'd sub nom. Katzman v. Victoria's Secret Catalogue,* 113 F.3d 1229 (2d Cir. 1997)(staying discovery where the sole basis for Plaintiff's RICO claim was an alleged discriminatory pricing structure that differentiated between targeted male and female catalog customers, Rule 11 sanctions imposed).

The party seeking to stay discovery bears the burden of showing good cause. *Morien v. Munich Reinsurance Am., Inc.*, 270 F.R.D. 65, 66 (D. Conn. 2010).

## Analysis

1. **Parties' Arguments**

The Defendants argue that their motions to dismiss will raise three substantive arguments for dismissing the Trustee's claims. First, Defendants argue that the Trustee's "lost debt" claim arising from the inability to collect the judgment is either unripe or barred by the statute of limitations. [Dkt. 43 (Defs. Mem. in Supp. Mot. for Stay) at 8-12]. Next, Defendants argue that the Trustee's claim for collection expenses is largely barred by the statute of limitations. [*Id.* at 13-14]. Then, Defendants argue that the Trustee has failed to allege a RICO violation because the Complaint fails to allege any predicate acts of racketeering, fails to allege an enterprise distinct from the alleged acts of racketeering, and has failed to allege any threat of continuing criminal activity. Lastly, Defendants argue that discovery will be particularly onerous and the Trustee will not be prejudiced by a stay.

In opposition, the Trustee argues that the creditors' "lost debt" claim is ripe because there are no other avenues for recovery and therefore the creditors' damages are reasonably ascertainable. [Dkt. 61 (Pl. Mem. in Opp'n.) at 5-7]. Next, the Trustee argues that the creditors' "lost debt" claim is not barred by the statute of limitations because the action was commenced less than two years after the judgement against Scott became enforceable. [*Id.* at 7-8]. The Trustee further argues that Defendants conceded that the Trustee's claim for costs and attorneys fees would be "largely" time barred and therefore not wholly dispositive. [*Id.* at 8-10]. The Trustee argues that he has sufficiently alleged predicate acts of racketeering based primarily on alleged efforts to hinder the Trustee in his capacity as a court appointed officer charged with marshalling assets for the estate. [*Id.* at 10-17]. The Trustee argues that he has adequately alleged an "association-in-fact" based on the U.S. Supreme Court's decision in *Boyle v. United States*, 556 U.S. 938 (2009)(holding that an association-in-fact must have an ascertainable structure, but need not be hierarchical or "businesslike" under RICO). [*Id.* at 18-20]. The Trustee argues that he alleges at least "closed-end" continuity based on the temporal connection between the predicate acts. [*Id.* at 19-21]. Finally, the Trustee argues that discovery would not be unduly burdensome because substantial discovery has already been obtained from the preceding litigation and the Trustee would be prejudiced by the risk of the destruction of evidence and the lapse of time. [*Id.* at 22-24].

In reply, the Defendants argue the Trustee's maintenance of parallel litigation renders the "lost debt" claim unripe and there is no support for distinguishing the

7

role of a bankruptcy trustee from other litigants. [Dkt. 62 (Def. Repl. Br.) at 1-3](citing *D'Addario v. D'Addario*, 901 F.3d 80, 93 (2d Cir. 2018) as to ripeness for the "lost debt" claim"). Compared to a "lost debt" claim, a RICO claim for collection expense injury can be "clear" and "definite" while the ultimate amount of the recovery could change. [*Id.* at 5](citing *D'Addario*, 901 F.3d at 96). Therefore, the Defendants argue, the statute of limitations began to run under the injury-discovery rule at the time that the expenses were incurred, not when the expenses are approved by the bankruptcy court. [Dkt. 62 at 4-5].

The Defendants argue that Plaintiff seeks to impermissibly expand the scope of criminal law based on the Trustee's status as a "judicial officer." [*Id.* at 5-9]. The Defendants argue that the Trustee's lack of a cognizable property interest in the res at the time of the transfer is fatal to his claims of wire fraud. [*Id.* at 6-8] ("Simply stated, the Trustee has not cited any case holding that the mere transfer of unattached property, in the absence of any property interest in the plaintiff or any scheme involving misrepresentation or deceit, constitutes wire or mail fraud."). The Defendants argue that the "alleged enterprise consists of individuals who have a variety of personal and legitimate business ties that long pre-dated the alleged racketeering activity and whose alleged interests and participation varied widely across the alleged racketeering period," and thus the allegations of predicate acts themselves are insufficient to establish and enterprise. [*Id.* at 9]. The Defendants maintain that the Trustee would not be prejudiced by the stay because the Trustee already has access to extensive discovery materials and may obtain further discovery from the pending parallel proceedings. [Dkt. 10-13].

## 2. Discussion

The Court concludes that the Defendants have not presented such a strong showing that the Trustee's claim is unmeritorious as to warrant a stay of discovery. The Defendants have presented no bright-line pleading deficiency that is so clear as to warrant the disruption of the orderly process of civil litigation. Assuming *in arguendo* that Defendants are right and that the Trustee's "lost debt" claim is either unripe or barred by the statute of limitations, neither outcome would be dispositive of the Trustee's collection expenses claim. In *D'Addario*, 901 F.3d at 93-95, the Second Circuit held that an heiress's "lost debt" claim for the lost value of her inheritance was unripe where the probate estate remained open and the value of her interest (and corresponding loss) may fluctuate. In contrast, the heiress's claim for collection expenses was ripe because the past loss was "clear" and "definite" because collection expenses could not disappear when the estate closes. *Id.* at 95-97. Hence, the "loss debt" claim and the collection expense claim are distinct legal injuries.

In the Second Circuit, a civil RICO action begins to accrue when Plaintiff discovers or should have discovered the injury and runs through a four-year statute of limitations. *Bankers Tr. Co. v. Rhoades*, 859 F.2d 1096, 1102 (2d Cir. 1988)(citing *Agency Holding Corp. v. Malley-Duff & Assocs.*, Inc., 483 U.S. 143, 156, (1987) for the proposition that civil RICO actions are subject to a four-year statute of limitations). *Bankers Tr. Co.* recognized that civil RICO actions are subject to the rule of separate accrual: "[e]ach time plaintiff discovers or should have discovered an injury caused by defendant's violation of § 1962, a new cause of action arises

9

as to that injury, regardless of when the actual violation occurred." 859 F.2d at 1105. The Defendants have failed to show that Plaintiff has not alleged at *least one* separate and independent legal injury within four years of the filing of the complaint. It appears unlikely that ripeness or the statute of limitations are wholly dispositive as to warrant staying discovery.

As to the legal sufficiency of Plaintiff's allegations, the statutory definition of an enterprise is quite broad: "[an] enterprise includes *any* individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4)(emphasis added). In *Boyle*, the U.S. Supreme Court held that an "association-in-fact" must have at least three structural features: "…a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." 556 U.S. at 946 (2009). A RICO enterprise must be established as an element of the claim, but the term is broadly defined and is not limited to "businesslike entities." *Id.* at 945-49. The existence of an enterprise may be inferred from an agreement to commit RICO predicate acts but does not necessarily establish an enterprise because an enterprise requires longevity and the actual commission of the predicate offense, whereas conspiracy is an inchoate offense. *Id.* at 950; *see also id.* at n. 4 (explaining where proof of the predicate offense would be insufficient to show an enterprise).

Here, it is overall unlikely that all the Defendants will prevail on this issue. The crux of Plaintiff's claim is that all of the Defendants knowingly committed various predicate acts in furtherance of a common objective to frustrate the Trustee's

10

collection efforts and benefited in some way from their contributions to the scheme and that they acted collectively in furtherance of this objective.

Similarly, as to the predicate acts, Defendants' argument that the Trustee did not have a property interest in the transferred assets prior to the judgment is complicated by the entry of the prejudgment remedy on February 10, 2011. [Compl. ¶ 111]. The Complaint alleges that various fraudulent conveyances took place *after* February 2011. *See, e.g.* [Compl. ¶¶ 264-266](alleging that between March 2015 and October 2017, Scott paid $623,876 in credit card bills alone from the MPL 2015 Rev. Trust using Marilyn's signature stamp). RICO is a remedial statute an is to be read broadly. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 498 (1985) ("The statute's "remedial purposes" are nowhere more evident than in the provision of a private action for those injured by racketeering activity."). With this in mind, it is unlikely that the Court will dismiss the Complaint based on the sufficiency of the predicate acts alleged as to all of the Defendants.

On the final pleading issue, "[t]o allege a RICO violation, the plaintiff must plead at least two predicate acts, show that the predicate acts are related, and that they amount to, or pose a threat of, continuing criminal activity." *Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 442 (S.D.N.Y. 2019). The "continued criminal activity" requirement can be established through "closed end continuity," meaning evidence of predicate acts extending over a substantial period. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989). "To establish closed-ended continuity, "a plaintiff must provide some basis for a court to conclude that defendants' activities were 'neither isolated or sporadic.'" *DeFalco v. Bernas*, 244 F.3d 286, 321

11

(2d Cir. 2001)(quoting *GICC Capital Corp. v. Technology Finance Group, Inc.*, 67 F.3d 463, 467 (2d Cir.1995)). The Second Circuit has held that predicate acts spanning two years is sufficient to establish "closed-ended continuity," but that a year and a half was insufficient. *DeFalco*, 244 F.3d at 322. Here, the Complaint alleges predicate acts from June 2010 through 2017. *See, e.g.* [Compl. ¶ 338(a)-(f)]. Moreover, the Complaint alleges that Roland testified that "if the Goldberg Trustee tried to attach DEIPM's assets, he and his family would transfer DEIPM's business to a new entity, just as they had transferred Devcon's business to DEIPM." [Compl. ¶ 267]. Consequently, it is unlikely that the Complaint will be dismissed as to all Defendants on the continuity requirement.

Finally, the Court finds that the risk of prejudice to the Plaintiff outweighs the Defendants' discovery burdens. The Defendants' burden in this matter is far from extraordinary. As evidenced by the Complaint, this case was preceded by years of litigation against many of the Defendants and they had the same interest in opposing the Trustee then. In some cases, third-party discovery was taken from Defendants who are now parties to this action.

The Defendants argue that the RICO allegations have a stigmatizing effect. However, the Defendants' assertions are belied by the fact that many of the allegations contained in the Complaint have been previously litigated and are a matter of public record. For example, in September 2018, Judge Thompson ruled that the crime-fraud exception to attorney client privilege applied to communications concerning the June 2010 inter-trust transfers and ordered the production of privileged records between Scott and his accountant and lawyer,

who are now parties to this action. *In re Michael S. Goldberg, LLC*, 595 B.R. 119, 125 (D. Conn. 2018). In his ruling, Judge Thompson found probable cause to believe that Scott acted with actual intent to hinder, delay, or defraud the Trustee, that professionals' services were used in furtherance of the fraud, and that Sally's explanation for the transfers was pretextual. *Id*. at 125-26. The true impact of the "thermonuclear" allegations of racketeering activities are a remedies issue viz. treble damages and the award of attorneys fees. See [Dkt. 43 (Defs. Mem. in Supp. Mot. for Stay) at 2](citing *Katzman*, 167 F.R.D. at 655 for the proposition that "Civil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device.").

Nothing in the Defendants' memorandum suggests that early discovery during the pendency of the motions to dismiss will be particularly onerous. In contrast, the Trustee bears a significant risk that evidence will be lost if discovery is stayed. Although much of the discovery may be duplicative of materials previously obtained, this litigation includes some new parties and new claims. Stated differently, the allegations in the Complaint span a decade and memories fade. If the claim is meritorious, a stay would only further delay repayment of restitution to the Ponzi scheme's victims.

## Conclusion

For the aforementioned reasons, the Court DENIES Defendants' motion for a Stay of Discovery.

                          **IT IS SO ORDERED.**

                          Vanessa Bryant  *Digitally signed by Vanessa Bryant Date: 2020.09.01 18:32:12 -04'00'*
                          **Hon. Vanessa L. Bryant**
                          **United States District Judge**

**Dated at Hartford, Connecticut: September 1, 2020**